USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/2/18

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**JASON FARINA; JOMO WILLIAMS;**

**THOSE SIMILIARILY SITUATED**

Write the full name of each plaintiff or petitioner.

Case No.   1:2018 CV 01433 (NRB)

-against-

METROPOLITAN TRANSPORTATION AUTHORITY; TRIBOROUGH
BRIDGE & TUNNEL AUTHORITY; TRANSWORLD SYSTEM INC, &
CONDUENTINC.,EZ PASS; INTERAGENCY GROUP; NYS THRU-
WAY AUTHORITY; JOHN DOES

Write the full name of each defendant or respondent.

**NOTICE OF MOTION**

**PERMISSIVE INTERVENTION**

PLEASE TAKE NOTICE that      **PLANTIFF/PETITIONER**      # JOMO WILLIAMS

plaintiff or defendant          name of party who is making the motion

requests that the Court:
(1) PERMISSION TO INTERVENE AS PLAINTIFF (R.24(B));  (2) GRANT PRIOR REQUEST BY
EXISTING COUNSEL/S IN ACTION TO MAKE MATTER A CLASS ACTION, AND MAKE THE MOVANT
PART OF THE PLAINTIFF CLASS (R.23); (3) GRANT THE MOVANT PERMISSION TO JOINDER
PARTIES & CLAIMS INTO ACTION (R.20 & R.18); (4) REMOVE OR REMAND THE ATTACHED
PAPERS FROM/TO THE PROPER COURT (R.21; 28USC1446; 28USC1447).
RULES 65 & 62.
STAY RESPONDENTS, FROM SUSPENDING REGISTRATIONS & DAMAGE CREDIT

Briefly describe what you want the court to do. You should also include the Federal Rule(s) of Civil Procedure or
the statute under which you are making the motion, if you know.

In support of this motion, I submit the following documents (check all that apply):

☐ a memorandum of law

☒ my own declaration, affirmation, or affidavit

☒ the following additional documents: NY CPLR 78 ORDER TO SHOW CAUSE WITH

SUPPORTING PAPERS (32 PLUS PAPERS) 42 PLUS PAPERS) ( 28USC 1652)

## 3/30/2018
Dated

## JOMO WILLIAMS
Name

Signature

## 3333 BROADWAY D10G    NY      NY      10031
Address                 City    State   Zip Code

## 6463778066                    JOMOWILLIAMS@YMAIL.COM
Telephone Number (if available)    E-mail Address (if available)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### JASON FARINA; JOMO WILLIAMS;

### THOSE SIMILIARILY SITUATED

Fill in above the full name of each plaintiff or petitioner.

Case No. <u>1:2018</u> CV <u>01433 (NRB)</u>

-against-

METROPOLITAN TRANSPORTATION AUTHORITY; NYS THRU-
WAY AUTHORITY;
TRANSWORLD SYSTEM,INC & CONDUENT INC;

### E-Z PASS; INTERAGENCY GROUP;

TRIBOROUGH BRIDGE & TUNNEL AUTHORITY; JOHN DOES

Fill in above the full name of each defendant or
respondent.

## DECLARATION

FOR PERMISSIVE INTERVENTION; IN SUPPORT OF CLASS ACTION CERT. REQUEST;

JOINDER OF PARTIES & CLAIMS; REMOVE OR REMAND ANNEXATIONS.

Briefly explain above the purpose of the declaration, for example, "in Opposition to Defendant's
Motion for Summary Judgment."

I, **JOMO WILLIAMS** , declare under penalty of perjury that the

following facts are true and correct:

In the space below, describe any facts that are relevant to the motion or that respond to a court
order. You may also refer to and attach any relevant documents.

(1) THE ATTACHED PAPERS HAVE SAME/SIMILIAR FACTS; CLAIMS & PARTIES WHICH HAVE BEEN MADE IN
THIS INSTANT ACTION & DOCKET # 18CV01433.
(2) ACCORDING TO REPORTS, STEPHEN FEARON, ESQ, HAD MADE REQUESTS FOR THIS LAWSUIT TO BE
DESIGNATED AS A CLASS ACTION; THESE PAPERS ARE IN SUPPORT OF THAT SAME REQUEST.(SEE

EXHIBIT B OF THE ATTACHED CPLR 78 PAPERS).

(3) THE MOVANT INTEND TO SERVE & FILE THESE PAPERS AND THEIR ANNEXATIONS ON THE SAME DAY
IN BOTH STATE & FEDERAL COURT. FOR THE COURTS
TO DECIDE TO TRANSFER, REMAND OR REMOVE, OR HAVE THEM HEARD IN BOTH COURTS
COLLATERALLY AS THE COURTS DEEM JUST AND FIT.

Rev. 6/30/16

(4) I incorporate herein Paragraph all
facts, claims, etc, stated Above, below and
in Attached Papers.

Ad interim, I request that the respondents-
defendants be stayed from suspending
my registration & privacy; & Freedom of
movement; AND DAMAGING CREDIT.
(CPLR 7805; TRUTH IN LENDING ACT; FAIR &
ACCURATE CREDIT TRANSACTION ACT; FAIR DEBT
COLLECTION PRACTICE ACT; FAIR CREDIT REPORTING
ACT.)

NOTE: FROM EXHIBIT H, This matter
appears to be a 17 state issue.

Attach additional pages and documents if necessary.

3/30/2018
Executed on (date)

Signature

JOMO WILLIAMS
Name

Prison Identification # (if incarcerated)

3333 BROADWAY D10G          NY          NY          10031
Address                     City        State       Zip Code

6463778066                  JOMOWILLIAMS@YMAIL.COM
Telephone Number (if available)    E-mail Address (if available)

N.Y.S. SUPREME COURT

Civil Court of ~~the City of~~ New York

County of NEW YORK _____

Part _____

Index Number _____

In the Matter of the Application of

JOMO WILLIAMS _____

to prosecute as a poor person against

MTA; ET.AL. _____

_____

AFFIDAVIT IN SUPPORT OF
AN APPLICATION TO
PROCEED AS A POOR PERSON
AND TO WAIVE COURT FEES

State of New York, County of NEW YORK _____ ss:

JOMO WILLIAMS _____, being duly sworn, deposes and says:

*PRINT YOUR NAME*

1. I am the party named as JOMO WILLIAMS _____ in the above titled action.

2. I reside at 3333 BROADWAY D10G, NY, NY, 10031 _____

3. I seek to proceed in the above titled action.

4. I have a good and meritorious cause of action in that   The facts of my case are described in my

court papers, which are attached _____

5. I request that an Order be granted:

[X] waiving any and all statutory fees for the defense or prosecution of the action,

[ ] waiving the fee for the filing of a Notice of Appeal

[ ] other (Specify) _____

6. I make this application based on CPLR §1101. I do not have, nor am I able to obtain, the funds needed to pay the court fees. I will be unable to proceed unless the Order is granted.

7. I am/am not a recipient of Public Assistance from the Department of Social Services of the City of New York.

8. I have no income other than the sum of $ _____ per _____ from

_____

9. I own no property of any kind except necessary personal wearing apparel and
WHATS MENTIONED IN PRIOR GRANTED CPLR 1101 MOTION IN THIS COURT (SEE BELOW)

*[Indicate other property and the value of such property]*

10. No other person is beneficially interested in the recovery sought.

11. [ ] a) I have not made a previous application for this or similar relief.

[X] b) I have made previous application(s) for this or similar relief, but I am making this further application because
GRANTED CPLR1101, IN THIS COURT HOUSE'S INDEX # 100222/18; THIS IS A DIFFERENT MATTER.

MY FINANCIAL SITUATION DID NOT
CHANGE SINCE I WAS RECENTLY
GRANTED CPLR1101, IN THIS COURT

Sign your name _____

Sworn to before me this ____ day of _____ 20 ____

Print your address
3333 BROADWAY D10G, NY, NY, 10031

_____
Signature of Court Employee and Title

Telephone Number   6463778066 _____

CIV-GP-15-i(Revised 5/04)

[Print in **black** ink all areas in bold letters.  Other spaces are for Court use.]

At I.A.S. Part ____ of the Supreme Court
of the State of New York, held in and for
the County of New York, at the
Courthouse thereof, 60 Centre Street,
New York, N.Y., on the _____ day of
_____, 20___

PRESENT: HON. _____
                            Justice of the Supreme Court
--------------------------------------------------------------------x

In the Matter of the Application of

 JOMO WILLIAMS _____,
**[fill in name(s)]**                              Petitioner(s),
                        - against -

MTA;  NYS THRUWAY AUTHORITY; TRANSWORLD SYSTEMS INC;

CONDUENT INC.; E-Z PASS; IAG; Triborough Bridge and Tunnel

Authority; JOHN DOES _____,

**[fill in name(s)]**                              Respondent(s).
--------------------------------------------------------------------x

**Index Number**

_____

**ORDER TO SHOW CAUSE
IN A SPECIAL PROCEEDING**

Upon reading and filing the Verified Petition of __JOMO WILLIAMS__

_____ **[your name(s)]**, sworn to on ___MARCH_____, 20**18**

**[date Verified Petition notarized],** and the exhibits attached to the Petition( 22 PAGES)

**[Identify Exhibits below.  List additional Exhibits on separate page.]** EXHIBIT H -(PGS 28-33)

Exhibit# A- (PGS 1-4) E-Z PASS BILL AND NOTICE OF VIOLATIONS ENFORCEMENT, COLLECTION, & LEGAL ACTIONS

EXHIBIT# B- (PGS 5-11) CASE CAPTION,ETC; & MEDIA REPORTS OF SAME/SIMILAR LITIGATION PENDING IN FED CT.

Exhibit  B C- (PGS 12-14) RELEVANT USURY CIVIL, COMMERCIAL, AND CRIMINAL LAWS

EXIHIBIT# D- (PGS 15-17) REPONDENTS' AMENSTY PROGRAM TO ONLY SELECTIVE RESIDENTS & 1 BRIDGE

Exhibit C E-(PGS 18-20) TREATIES & SCHOLARY WRITINGS ON FUNDAMENTAL RIGHT TO TRAVEL & PRIVACY

EXHIBIT# F- (PGS 21-22) DESCRIPTION OF RESPONDENTS' QUASI PUBLIC BENEFIT COPORATION STATUS

EXHIBIT # G- (PGS 23-27) TREATIES & SCHOLARY WRITINGS ON EXCESSIVE FINES

Let the respondent(s) show cause at I.A.S. Part _____, Room _____, of this Court,

to be held at the Courthouse, 60 Centre Street, New York, N.Y., on the _____ day of

_____, 20___, at _____ o'clock in the _____ noon or as soon as the parties to this

proceeding may be heard why a judgment should not be issued providing the following relief because:
(i) Respondents  failed to perform several duties enjoined upon them by law (e.g. AVOID USURY AND EXCESSIVE
FINES; EQUALLY PROTECT ALL N.Y.S. RESIDENTS & AVOID PREJUDICIAL BEHAVIOR; GIVE NOTICES;
NOT INFRINGE UPON FUNDAMENTAL RIGHTS UPON TRAVEL & PRIVACY)
(ii) The Respondents are proceeding in excess of jurisdiction
(iii) Respondents' determinations were capricious or an abuse of discretion, including abuse of discretion as to the
measure or mode of penalty or discipline imposed
(iv) Statute CPLR 1101(b) denies access to courts & invokes the Non delegation doctrine.

SpecialProceeding - 1/2014

## RELIEF SOUGHT

**[briefly describe the relief you seek from the Court]**

(1) Compel Respondents to extend the C.B.A. (Cuomo Bridge Amnesty) to all of N.Y.S.,

(2) Find that the Respondendents' toll loans are void and subject to forfeiture of principal and interest

(3) cure usurious toll loans (discretionary or mandatory advances) via modification and amendment

(4) Find that respondents' advances, fines, fees, & penalties; and suspensions based on same, are usury, excessive &/or unconstitutional

(5) Compell respondents to broaden their press annoucement, by increasing their action plans, steps & educational outreach to all of N.Y.S.

(6) Compel respondents to remake their E-Z PASS program voluntary and not mandatory

(7) Compel repondents to accept legal tender at or nearby bridges & tunnels "to those locations where its employees, with appropriate safeguards, can issue in exchange the equivalent of a ticket" (EZ Pass Cards); and who could also provide "increase E-Z PASS educational outreach"

(8) Stay respondents from suspending my registration; and freedom to travel via private vehicle

(9) Compell respondents to notice me of any & all, appeal and/or rights for judicial review; et.al. available remedies

(11) Prohibit the respondents from coercing me into un-noticed unilateral contracts, advances, loans, transactions, accounts, fees, interests, penalties, etc.;   (10) Appointed Counsel

and such other and further relief as may to the court seem just and proper, for the reasons that **[briefly describe the reasons why you should be granted what you are requesting]:**

(1) The respondents' interest on its Toll loan advances are more than 25% ( its 1176.47%, (loan shark rate))

(2) I've been driving through MTA Toll Bridges & Tunnels since 1985 (yr) with no problem (approx 30 yrs). Now since Respondents' new mandatory E-Z Pass implementation I owe thousands of dollars in fees; receive threats of suspensions; find myself now avoiding Pay toll bridges for free bridges in state & crossing state; not able to enjoy interstate travels

(3) I was crossing bridges (pausing at empty paybooths not knowing what to do) without knowlege of the new mandatory ez pass system

(4) I did not receive notice of the excessive 1176.47% fines till after they became mandatory to paid

(5) Respondents only gave Amensty to NYS residents that used the Cuomo Bridge. Notwithstanding the fact that Respondents' press annoncement for that same amensty admitted repondents' guilts, failures & needs to install road signs; correct wordings on Bills & Envelopes; improve their websites & Apps; increase E-Z Pass education; and develope public announcment service. Those same Respondents' guilts, failures & needs had also effected myself & others statewide who do not regulary commute the Cuomo Bridge

(6) Each time crossing I had sufficient monies in pocket and did not need the respondents' unilateral coerced loan advances (& excessive fees) to pay my toll debts to cross bridges

(7) I'm being told by repondents that I have no administrative appeal or other available administrative remedies to cure the above said injustices

Sufficient cause appearing therefor, let personal service of a copy of this order, the Petition

and all other papers upon which this order is granted, upon all parties to this proceeding, on or before the

_____ day of _____, 20___ be deemed good and sufficient.  A copy of an affidavit

or acknowledgment of service shall be filed with the County Clerk (Room 141B) immediately after service

and the original of such proof of service shall be presented to this court on the return date fixed above.

ENTER

_____
J. S. C.

2

[Print in black ink all areas in bold letters]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------x
In the Matter of the Application of

JOMO WILLIAMS
**[fill in name(s)]**                              Petitioner(s),
                    - against-
MTA; NYS THRUWAY AUTHORITY; TRANSWORLD SYSTEMS INC;

CONDUENT INC.; E-Z PASS; IAG; Triborough Bridge and

Tunnel Authority; JOHN DOES                              ,
**[fill in name(s)]**                              Respondent(s).
--------------------------------------------------------x

**Index Number**

_____

**VERIFIED PETITION**


TO THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK:

The petition of **[your name]**   JOMO WILLIAMS _____ respectfully

shows to this court as follows:

1. Petitioner resides at **[your address]**   3333 BROADWAY, D10G, NY, NY, 10031 _____

2. The respondent(s) is / are **[identify the respondent(s)]** (A) MTA (Metropolitan Transit Authority): is a public benefit corporation responsible for public transportation in the U.S. state of New York; (B) NYS THRUWAY AUTHORITY is a system of limited-access highways located within the state of New York; (C) TRANSWORLD SYSTEMS INC: provides accounts receivable, debt recovery, and past due accounts services for businesses; (D) CONDUENT INC.: facilitates transportation revenue solutions with a primary focus on tolling and user fees as well as on other transportation management solutions; (E) E-Z PASS & IAG: is an electronic toll collection system used on most tolled roads, bridges, and tunnels in the Midwestern and Northeastern United States The E-ZPass Interagency Group (IAG) consists of 38 member agencies in operation within 16 states; (F) TRIBOROUGH BRIDGE & TUNNEL AUTHORITY: doing business as MTA Bridges and Tunnels, is an affiliate agency of the Metropolitan Transportation Authority that operates 7 bridges & 2 tunnels. 3. **[Describe what you are requesting and the reasons therefor.  Add more pages if needed.  If**

**you are appealing the decision of a government agency, give the date and outcome of the final**

**determination.  Explain why this Court should reverse that decision.]** _____

(1) Around 1985 (yr) I'd first obtained my driving LIC., while serving the U.S. Army; and been crossing tunnels & bridges eversince.

(2) I believe my first unknown crossings of the respondents new cashless system was in 2016-17(yrs), over the GWB. Then

I didnt know what was going on (hmm, under construction?) as I paused at toll booths looking for someone to take monies

(3) Thereafter  I'd started relealizing other bridges too stop collecting cash without reasons; at this point I'd wondered if a political

campaign promise/s to cut costs, taxes, etc; unknown to me were actually being satisfied (see exhibit D, for lack of notices, etc)

(4) Around Jan, 2018 (yr) I'd received *unclear notice that I'd owed the repondents monies, etc. see exhibit A; & * D,

(5)  Thereafter, when I'd called the respodents, I was told that I must pay thousands and all my claims (usury; excessive fines;

no notice; et.al.) were not exculpatory, nor do I have any available administrative remedies. (see exhibits C & G)

(7) Each time I crossed bridges & tunnels for years I had sufficient monies willing to pay, and never needed respondents to pay for me.

(8) For years I'd opt'ed out of not getting the E-Z Pass, because: of its difficulties to enroll; the convenience

to simply pay with cash; my practiced of lessening entities from taking monies electronically from/to me

(in past & just recent I had problems of entities': double dipping causing over draft fees and cancellations;

refusing to unlink electronic deductions after I cancel services;  getting items from me then report fraud

many-many months after to stiff me; I.D. thefts; etc.);

in 1997(yr) there were reports "of criminals breaking into cars and stealing E-Z Pass transponders.";

*Official findings that E-ZPass was full of corruptions & profiteers "the product of an ill-advised, inappropriate

procurement process that lacked proper safeguards to ensure accountability and to protect the public's interest.";

** no good incentive (quid pro quo) to voluntarily relinquish the right to privacy to excercise the right to travel, in

this era of surveillance abuses & hackings. see: * http://www.state.nj.us/sci/pdf/ezpass.pdf .and ** exhibit E & H

(9) During the drafting of this instant petition, I'd found that similar/same, claims, facts, parties, etc., that are made herein

petition, are now pending and being litigated in Federal District Court (S.D.N.Y.)  See Exhibit B.

(10) Respondents stated that there were no Administrative appeals, reviews or other remedies to correct the

above said injustices.

(11) For years I've been denied access to the courts because I was not able to find a CPLR 1101(b) practice.


(12) I incorporate all said above, below, and attached herein this paragraph.

(13) Also attached is 3/30/18 Notice of motion made to S.D.N.Y. Case# 1:2018 CV 01433.

4. Attached as exhibits are copies of all relevant documents. **[Attach the decision you are**

**asking the court to reverse as Exhibit A.  Attach any other documents as Exhibit B, Exhibit C, and so**

**on.  Identify each exhibit and explain how it supports your position  List additional Exhibits on a**

EXHIBIT H (PGS 28-33) EZ PASSING LINK REPORT

**separate page.]**    EXHIBIT # G- (PGS 23-27) TREATIES & SCHOLARY WRITINGS ON EXCESSIVE FINES

Exhibit A -   (PGS 1-4) E-Z PASS BILL AND NOTICE OF VIOLATIONS ENFORCEMENT, COLLECTION, & LEGAL ACTIONS

Exhibit B -   (PGS 5-11) CASE CAPTION,ETC; & MEDIA REPORTS OF SAME/SIMILAR LITIGATION PENDING IN FED CT.

Exhibit C -   (PGS 12-14) RELEVANT USURY CIVIL, COMMERCIAL, AND CRIMINAL LAWS

Exhibit D -   (PGS 15-17) REPONDENTS' AMENSTY PROGRAM TO ONLY SELECTIVE RESIDENTS & 1 BRIDGE

Exhibit E -   (PGS 18-20) TREATIES & SCHOLARY WRITINGS ON FUNDAMENTAL RIGHT TO TRAVEL & PRIVACY

EXHIBIT F- (PGS 21-22) DESCRIPTION OF RESPONDENTS' QUASI PUBLIC BENEFIT CORPORATION STATUS

5.  A prior application *has not / has~~not once been~~* been made for the relief now requested. **[If**

**you made this application before in this or any other court, describe where, when, the result and why**

**you are making it again.]**   See Attached 3/30/18 DTE. MOT. DIRECTED TO S.D.N.Y. Fed.CT., DOCK#18CV01433

2

Foot.Note 1. Different case Example how Entities Abuse trust of Access to Finances "Double dip"-this involving EZ Pass - see U.S.Dist.Ct. of N.J. Case 2:16 cV08138 - MCA - MAH; AND EXHIBIT H

WHEREFORE, your deponent respectfully requests that this Court [**briefly describe what you are requesting**] Grant/Apply the CBA (Cuomo Bridge Amnesty,) to all Bridges & tunnels in N.Y.S.; Find that the Respondents' toll loans are void and subject to forfeiture of principal and interest; cure usurious toll loans (discretionary or mandatory advances) via modification and amendment; Find that respondents' advances, fines, fees, & penalties; and suspensions based on same, are usury, excessive and/or unconstitutional; Compell respondants to broaden their press annoucement, by increasing their action plans, steps & educational outreach to all of N.Y.S.; Compel respondents to remake their E-Z PASS program voluntary and not mandatory; Compel repondents to accept legal tender at or nearby bridges & tunnels "to those locations where its employees, with appropriate safeguards, can issue in exchange the equivalent of a ticket" (EZ Pass Cards); and who could also provide "increase E-Z PASS educational outreach"; ) Stay respondents from suspending my registration; and freedom to travel via private vehicle and grant such other and further relief as may to the court seem just and proper.

March 31, 2018

**[date signed]**

Petitioner **[sign your name]**

JOMO WILLIAMS

**[print your name]**

3333 BROADWAY, D10G
NY, NY, 10031

6463778066

**[your address and telephone no.]**

## VERIFICATION

STATE OF NEW YORK

COUNTY OF __NEW YORK__         : ss:

___JOMO WILLIAMS___         **[your name]**, being duly sworn, deposes and says that: I am the petitioner in this proceeding; I have read the foregoing petition and know the contents thereof; the same are true to my own knowledge, except as to matters therein stated to be alleged on information and belief; and as to those matters I believe them to be true.

Sworn to before me this

31ˢᵗ day of MARCH, 2018

Petitioner **[sign your name before a Notary]**

JOMO WILLIAMS

**[print your name]**

Notary Public
CHARMAINE RAPHAEL
NOTARY PUBLIC STATE OF NEW YORK
NO. 01RA6217652
QUALIFIED IN THE COUNTY OF NEW YORK
COMMISSION EXPIRES FEBRUARY 16, 2022

3

**E-ZPass** ®
New York Service Center

March 27, 2018

HOME    FAQs    ASK US!

SIGN UP NOW    MY ACCOUNT    E-ZPass® INFO    E-ZPass® PLUS    E-ZPass® ON-THE-GO    VIOLATIONS    ROADS & TRAVEL

Violation List

VIOLATIONS

## Violation Inquiry Results

You received a violation notice(s) due to one of the following reasons:
(1) An E-ZPass Tag was used when the account had insufficient funds, while the Tag was speed suspended, revoked, or invalid for another reason.
(2) On the date of the violation, an E-ZPass Tag was not detected when you used an E-ZPass Toll Lane at a facility where cash toll collection is available and the license plate on the vehicle was not listed on an E-ZPass Account.
(3) You failed to pay a Tolls by Mail Invoice after traveling through a cashless tolling facility.

## DMV Suspension and Exclusion

If you received a notice of registration suspension from the **New York State Department of Motor Vehicles or a Notice of Exclusion** from MTA Bridges and Tunnels you must contact the Tolling Authority listed on your notice. Payments made online will not result in the immediate clearance of your registration or exclusion. Visit **www.dmv.ny.gov** to check the status of your registration before driving your vehicle.

**Tolling Authority DMV Suspension and Vehicle Exclusion Phone Numbers.**

**Port Authority of NY & NJ - 718-313-9425**
**NYS Thruway Authority   - 718-313-9414**
**MTA Bridges & Tunnels   - 718-313-9424**

Based on the violation information entered, the following toll violations were found.

To pay by check, follow the instructions described on the violation notice or visit an **E-ZPass New York** Customer Service Center.

To pay by credit card, select the checkbox next to each violation you wish to pay and click the **Pay Selected Violations** button below.

E-ZPass customers may be eligible to resolve toll violations online. Please follow the appropriate directions below.

Please click printer friendly version to view the violation listing in a printer friendly format.

Total Amount Due :          $2,685.00          Total No of Violations:          27

Violation Information  1 to 10 of 27



https://www.e-zpassny.com/vector/violations/violationList.do

## Violation List

Violation Information 1 to 25 of 27

| | Violation No. | License Plate | Date & Time | Facility | Status | Toll | Fee | Amt Due |
|---|---|---|---|---|---|---|---|---|
| ☐ E-ZPass NY<br>☐ Check/Cash | | | | | | | | |
| ☐ | T217 1159 97237-9 | HMA6459 | 11/06/2017<br>19:26:34 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T217 1159 97237-8 | HMA6459 | 11/06/2017<br>13:11:53 | RKM | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T217 1159 97237-7 | HMA6459 | 11/05/2017<br>19:22:05 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T217 1159 97237-6 | HMA6459 | 11/05/2017<br>16:14:45 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T217 1159 97237-5 | HMA6459 | 11/05/2017<br>00:32:48 | HHB | OPEN | $6.00 | $50.00 | $56.00 |
| ☐ | T217 1159 97237-4 | HMA6459 | 11/04/2017<br>21:25:20 | HHB | OPEN | $6.00 | $50.00 | $56.00 |
| ☐ | T217 1159 97237-3 | HMA6459 | 11/04/2017<br>03:04:51 | HHB | OPEN | $6.00 | $50.00 | $56.00 |
| ☐ | T217 1159 97237-2 | HMA6459 | 11/02/2017<br>20:29:24 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T217 1159 97237-1 | HMA6459 | 11/02/2017<br>15:31:26 | TNB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T217 1250 65230-2 | HMA6459 | 12/18/2017<br>20:44:55 | RKB | OPEN | $8.50 | $100.00 | $108.50 |

## Violation Settlement Options

### Pay Violation(s) by Credit Card

 To pay for the violation(s) with a credit card, select the checkbox(es) above and click **Pay Selected Violations**.

Violation amount selected to pay ($) : **0.00**

| Resolve Selected Violations | Pay Selected Violations |
|---|---|

| **E-ZPass New York Account Holders** | **E-ZPass Account Holders**<br>**(Other than E-ZPass New York)** |
|---|---|
| If the first three digits of your Tag are 004, 005, 008, or 013 you are an E-ZPass New York account holder. | If the first three digits of your Tag are anything other than 004, 005, 008, or 013 you are not an E-ZPass New York account holder. |
| Resolve Selected Violations | Resolve Selected Violations |

2008 E-ZPass® New York

https://www.e-zpassny.com/vector/violations/violationList.do?ctrl=violationlistinfo&action=Page&param=1

## Violation List

### Violation Information 11 to 20 of 27

| | Violation No. | License Plate | Date & Time | Facility | Status | Toll | Fee | Amt Due |
|---|---|---|---|---|---|---|---|---|
| ☐ | I2172506523041 | HMA6459 | 12/14/2017 02:26:30 | RKM | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21710615762641 | HMA6459 | 10/22/2017 21:38:44 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21710615762643 | HMA6459 | 10/22/2017 19:08:37 | RKM | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21710615762642 | HMA6459 | 10/04/2017 17:54:16 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21710615762621 | HMA6459 | 10/04/2017 15:53:43 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21709521602044 | HMA6459 | 09/09/2017 21:11:57 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21709521602043 | HMA6459 | 09/09/2017 14:35:20 | RKM | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21709521602042 | HMA6459 | 09/06/2017 22:19:21 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I21709521602021 | HMA6459 | 09/05/2017 18:57:10 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | I2170935341720-3 | HMA6459 | 08/22/2017 12:03:13 | RKM | OPEN | $8.50 | $100.00 | $108.50 |

## Violation Settlement Options

### Pay Violation(s) by Credit Card

To pay for the violation(s) with a credit card, select the checkbox(es) above and click Pay Selected Violations.

Violation amount selected to pay ($) : 0.00

**Pay Selected Violations**

| E-ZPass New York Account Holders | E-ZPass Account Holders (Other than E-ZPass New York) |
|---|---|
| If the first three digits of your Tag are 004, 005, 008, or 013 you are an E-ZPass New York account holder. | If the first three digits of your Tag are anything other than 004, 005, 008, or 013 you are not an E-ZPass New York account holder. |
| **Resolve Selected Violations** | **Resolve Selected Violations** |

Terms & Conditions | Site Map | Privacy Policy | Phishing Policy

2006 E-ZPass® New York.

③

https://www.e-zpassny.com/vector/violations/violation.list.do

Violation List

## Violation Inquiry Results

You received a violation notice(s) due to one of the following reasons:
(1) An E-ZPass Tag was used when the account had insufficient funds, while the Tag was speed suspended, revoked, or invalid for another reason.
(2) On the date of the violation, an E-ZPass Tag was not detected when you used an E-ZPass Toll Lane at a facility where cash toll collection is available and the license plate on the vehicle was not listed on an E-ZPass Account.
(3) You failed to pay a Tolls by Mail invoice after travelling through a cashless tolling facility.

## DMV Suspension and Exclusion

If you received a notice of registration suspension from the New York State Department of Motor Vehicles or a Notice of Exclusion from MTA Bridges and Tunnels you must contact the Tolling Authority listed on your notice. Payments made online will not result in the immediate clearance of your registration or exclusion. Visit **www.dmv.ny.gov** to check the status of your registration before driving your vehicle.

**Tolling Authority DMV Suspension and Vehicle Exclusion Phone Numbers.**

**Port Authority of NY & NJ - 718-313-9425**
**NYS Thruway Authority     - 718-313-9414**
**MTA Bridges & Tunnels     - 718-313-9424**

Based on the violation information entered, the following toll violations were found.

To pay by check, follow the instructions described on the violation notice or visit an **E-ZPass New York** Customer Service Center .

To pay by credit card, select the checkbox next to each violation you wish to pay and click the **Pay Selected Violations** button below.

E-ZPass customers may be eligible to resolve toll violations online. Please follow the appropriate directions below.

Please click printer friendly version to view the violation listing in a printer friendly format.

**Total Amount Due :**        $434.00              **Total No of Violations:**         4

### Violation Information  4 items

| Check / Uncheck All | Violation No. | License Plate | Date & Time | Facility | Status | Toll | Fee | Amt Due |
|---|---|---|---|---|---|---|---|---|
| ☐ | T2172886513*2*4 | HVY3181 | 12/18/2017 20:44:57 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T2172886513*2*3 | HVY3181 | 12/14/2017 02:26:32 | RKM | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T2172886513*2*2 | HVY3181 | 11/15/2017 19:23:49 | RKB | OPEN | $8.50 | $100.00 | $108.50 |
| ☐ | T2172886513*2*1 | HVY3181 | 11/15/2017 16:03:51 | RKM | OPEN | $8.50 | $100.00 | $108.50 |

Violation Settlement Options

# Farina v. Metropolitan Transportation Authority et al

**Plaintiff:**              Jason Farina

**Defendant:**             Metropolitan Transportation Authority,
                           Triborough Bridge and Tunnel
                           Authority, Transworld Systems, Inc. and
                           Conduent, Inc.

**Case Number:**           1:2018cv01433

**Filed:**                 February 16, 2018

**Court:**                 New York Southern District Court

**Office:**                Foley Square Office

**County:**                Westchester

**Presiding Judge:**       Naomi Reice Buchwald

**Nature of Suit:**        Other Contract

**Cause of Action:**       42:1983

**Jury Demanded By:**      Plaintiff

# Access additional case information on PACER



3/27/2018                              MTA Being Sued Over Cashless Tolling Fees « CBS New York



New York;                                                                                    Search

HOME       NEWS       SPORTS       WEATHER       AUDIO       VIDEO       E.S.P.       CONTESTS



The Unrivaled Audi Q5.

Explore Q5  »

# Lawyer Sues MTA Over Cashless Tolling Fees

February 20, 2018 at 12:49 pm

Filed Under: cashless tolls, Ethan Harp, MTA

## MTA Sued Over Cashless Tolling Fees

Watch & Listen LIVE

Ad

Crystal Clear



Most US Business' Who Need 5+ Phone System
Know About These Incredible VoIP Systems

Most US Business' Who Need 5+ Phone Systems
About These Incredible VoIP Systems

**FOLLOW US**

**NEW YORK (CBSNewYork)** — A lawyer claims the MTA has been hitting drivers with thousands of dollars in fees since the switch to cashless tolling on its bridges and tunnels in 2016.

Lawyer   Joseph Santoli alleges many honest drivers, even when they use E-ZPass, are getting bogus $100 fines that are racking up.

MOST **VIEWED**

1.  Funeral At St. Patrick's For Fallen Firefighter ⊡

2.  Firefighter Hurt After Blaze Eng Buildings In Newark ⊡

ADVERTISING









What Does Energy Efficiency
Mean to You?

2   Cyclist Stabs Skateboarder Duri
Apparent Road Rage Melee In M

4   'He Would Run Through A Brick
You:' Fallen FDNY Lt. Michael Da
Remembered At Wake

5   NYPD: Woman Stabbed To Deat
Doorway Of Bushwick Bodega

6   NTSB Releases Preliminary Repc
Deadly East River Helicopter Cra

7   Investigation Continues Into Har
That Killed FDNY Lt. Michael Da

8   'I Dodged A Couple Of Bullets:' [
Shocked To Find 30-Pound Tumc
Inside Man's Abdomen

9   CDC Warns Second Wave Of Flu
Begun

10   'A Very Brave Firefighter': FDNY
And City Mourn Firefighter Mich
Davidson, Killed In Harlem Movi

He is suing the MTA on behalf of a Westchester commuter.

"He's being pursued for $6,000," he told   WCBS 880's Ethan Harp. "I've spoken to people that had $30,000. Some people had $25,000."

Santoli accuses the MTA of wrongly slapping fines on innocent drivers by mail and rushing those cases to collection.

"I've heard of cases where people were threatened with the revocation of their registration if they didn't pay and they were forced to cash in their IRA, their retirement funds," Santoli said.

He argues the MTA and its contractors are reaping tens of millions they don't deserve.

"The way it's been rolled out has been just totally ineffective and incompetent," Santoli said. "It's so greedy. They are getting hundreds and in some cases many thousands of dollars in violations."

The MTA said it can't comment on pending litigation.

Last week, Assemblyman Tom Abinanti and state Sen. David Carlucci proposed the Toll Payer Protection Act which they hope would eliminate some of the confusion for toll payers and force agencies to be more transparent when it comes to fees and fines.





🖨 Click here to print this article
📷 Print with images

# New York - Lawsuit: MTA, Partners Conspiring To Rake In Millions As Cashless Tolling Hits Drivers With Unfair Penalties

Published on: February 20th, 2018 at 10:57 AM

New York - It may have been implemented as a time saving mechanism with environmental benefits, but the Metropolitan Transit Authority's cashless tolling has landed the agency in federal court on grounds that it is being used as a money maker that takes advanta of unsuspecting drivers.

The Journal News (http://lohud.us/2C8tkQe ) reported that the lawsuit, filed in Manhattan federal court on February 16th, alleges that thousands of motorists have been unfairly hit with tens of millions of dollars in fines since cashless tolling went live on the agency's bridges and tunnels in 2016.

According to court papers filed on behalf of Westchester resident Jason Farina, cashless tolling is being used to enrich the MTA and tw contractors associated with the electronic bill paying system by slapping drivers with unwarranted fines which then mushroom into eve larger penalty payments.

Farina said that his trips across the Throgs Neck Bridge over a five month period starting October 2017 have cost him $8.50 in tolls for each crossing, plus a $100 fine for each one.

According to Farina, his E-Z Pass had been working properly for some time, but this past November, he received notification that he ha not paid his October tolls. Contacting the E-Z Pass customer service department, Farina was told to pay only the outstanding tolls and the associated fees, but his current E-Z Pass statement still shows 61 violations and $6,100 in penalties.

"Despite his repeated efforts to pay the underlying bills, Defendants have continued to pursue (Farina) for improper charges," states the lawsuit.

Farina's attorney Stephen Fearon has asked for the lawsuit to be designated as a class action filing in order to include other drivers who have experienced similar problems.

The lawsuit also alleges that the defendants, which include the MTA, Transworld, a debt collection agency and Conduent, which opera cashless tolling for both the MTA and the New York State Thruway Authority, have conspired to milk the system in order to generate e revenue.

"Each defendant has a strong financial incentive to pursue these improper fees and to collect as much as possible from drivers because secret agreements between the defendants to split among themselves the amounts they collect," alleges the lawsuit. "Each defendant ge percentage of the money collected from the driver."

MTA spokesperson Aaron Donovan declined to comment on the suit but said that cashless tolling, which first came to the New York ai in 2012 and was rolled out at all MTA bridge and tunnel crossing this past September, offers drivers tremendous advantages, including savings of 3.4 million hours in travel time and 1.6 million gallons of gas.



The Thruway Authority is next on Fearon's radar, with a second suit expected to be filed shortly for similar problems taking place on the Mario M. Cuomo Bridge, which replaced the Tappan Zee Bridge last summer.

The Journal News has reported numerous instances of customers who have been hit with massive fines because of glitches in the system, with some having their registrations suspended and others having their cars impounded for non-payment of toll penalties. Drivers have charged that they never received any notification about any outstanding tolls before punitive action was taken.

Spring Valley resident Ashlee Delgado racked up $700 worth of tolls for trips across the Tappan Zee Bridge over a nine month period in 2016, but told The Journal News (http://lohud.us/2BHuvp8 ) that she never received a bill for the trips.

According to Delgado, that amount skyrocketed to $3,500 with accumulated penalties, prompting the Department of Motor Vehicles to suspend her registration without warning. Delgado only learned of the DMV's actions when she was pulled over by a police officer who informed her that her registration had been suspended before removing her license plates and impounding her car.

In another Journal News report (http://lohud.us/2BFTU2r ) Deloris Ritchie, also of Spring Valley, said that she, her elderly mother and two children were pulled over by police on the RFK Bridge at 2 AM on Thanksgiving because her registration had been suspended, leaving the family on a Bronx street in near freezing temperatures.

Ritchie discovered that she had an outstanding toll bill of $12,000, with the Thruway Authority claiming she hadn't made any payment since April 2016, although she has copies of the checks written to pay for the tolls, all of which, she noted, were paid on time.  According to Ritchie, when she called the Thruway Authority to discuss her account, they offered to settle her bill for $3,900.

"If I really owed $12,000 and you're going to give me my car back for $3,900, then something is wrong," said Ritchie.

Responding to outrage from drivers, the Thruway announced a month-long amnesty program that began in late January to wipe out any penalties or fines associated with unpaid toll bills from the Tappan Zee/Cuomo Bridge issued between April 24, 2016 and January 31, 2018 for drivers who paid their outstanding toll bills in full.  The amnesty program can be accessed at https://wwwapps.thruway.ny.gov/amnesty/and runs through February 26th.

You can view this article online at VosIzNeias.com/291879

Copyright © 1999 - 2018 VINNews.com - All rights reserved.



**Spring Sale
On Now**

# 1st Month Free



Subscribe Now
(http://offers.lohud.com/specialoffer?
gps-
source=BENBmar&utm_medium=nanobar&utm
exchange&utm_campaign=SPRING18-
ADS)

# Lawsuit: cashless tolling a scheme with 'secret agreements' to divvy up millions in fees

Thomas C. Zambito, tzambito@lohud.com    Published 12:46 p.m. ET Feb. 19, 2018 | Updated 7:57 p.m. ET Feb. 19, 2018

*Thousands of motorists have been hit with tens of millions of dollars in fees, the lawsuit claims*



*(Photo: Seth Harrison/The Journal News)*

Thousands of motorists have been slapped with tens of millions of dollars in fees since the Metropolitan Transportation Authority introduced cashless tolling on its bridges and tunnels in 2016, part of a scheme to enrich the MTA and its contractors, a federal lawsuit claims.

The lawsuit filed in Manhattan Federal Court Friday names the MTA and its Triborough Bridge and Tunnel Authority as well as two contractors – Transworld Systems and Conduent – as defendants.

A second suit against the New York Thruway is threatened by the same lawyer who filed this complaint on behalf of a Westchester County resident.

"Defendants — who operate those systems and collect tolls from drivers — have used the cashless toll system to line their own pockets at the expense drivers, primarily by collecting improper fees and penalties in addition to collecting the tolls," the lawsuit alleges.

**AUDIT: The MTA's cashless toll system lets motorists slide for $11.3 million (/story/news/2017/11/21/audit-mtas-cashless-toll-system-lets-motorists-slide-11-3-million/886119001/)**

**REVEALED: Conduent, the corporate giant behind cashless tolls (/story/news/transit/2018/01/25/conduent-cashless-tolling/1061583001/)**

**COMPANIES: Three private companies run Tolls By Mail system on Tappan Zee, Cuomo bridges (/story/news/investigations/2017/12/18/tappan-zee-bridge-cashless-tolls/951540001/)**

The lawsuit was filed on behalf of Jason Farina, a Westchester County motorist who says he's been charged more than $6,000 in fees and fines between October 2017 and January, mostly for $8.50 trips across the Throgs Neck Bridge in the Bronx

ADVERTISEMENT



 **1st Month Free** 

**Spring Sale On Now**

Subscribe Now (http://offers.lohud.com/specialoffer?gps-source=BENBmar&utm_medium=nanobar&utm_sor exchange&utm_campaign=SPRING18-ADS)

Farina's attorney, Stephen Fearon, is asking a judge to designate the lawsuit as a class-action so drivers with similar claims can benefit from the outcome.

"Each defendant has a strong financial incentive to pursue these improper fees and to collect as much as possible from drivers because of secret agreements between the defendants to split among themselves the amounts they collect," the lawsuit adds. "Each defendant gets a percentage of the money collected from the driver."

MTA spokesman Aaron Donovan declined to comment on the lawsuit but defended the switch to cashless tolling.

"Cashless Tolling is providing huge benefits to our customers by saving 3.4 million hours in travel time, 1.6 million gallons of fuel and 15,400 tons of carbon emissions," Donovan said.

The lawsuit's allegations e (/story/news/investigations/2018/02/08/cashless-tolls-new-york-texas/309385002/)cho the findings of an investigation by The Journal News/lohud.com (/story/news/investigations/2018/02/08/cashless-tolls-new-york-texas/30938 5002/)into the cashless tolling system introduced on the Tappan Zee Bridge in the summer of 2016 and currently in use on its successor, the Gov. Mario M. Cuomo Bridge.

Motorists say they've been hit with thousands of dollars in fines and had their registrations revoked (/story/news/local/tappan-zee-bridge/2018/02/14/cashless-toll-fees-car-impounded/312780002/)even as they were trying to settle outstanding debts with the New York State Thruway Authority and its contractors.

(Story continues below video)

As a result, the Thruway Authority added new toll signs on the bridge and created an amnesty program, which has allowed motorists to knock thousands of dollars off their toll bills.

**ABANDONED: Family left on the road at night over $12,000 in cashless tolls fees (/story/news/local/tappan-zee-bridge/2018/02/14/cashless-toll-fees-car-impounded/312780002/)**

## Thruway lawsuit coming?

Fearon says he intends to file a separate lawsuit as soon as this week naming the Thruway Authority as a defendant for its cashless tolling system on the Cuomo Bridge.

In the federal lawsuit, Farina claims he was hit with a $100 fine for $8.50 trips across New York bridges while he was trying to pay previous charges.

"Despite his repeated efforts to pay the underlying bills, Defendants have continued to pursue (Farina) for the improper charges, now totaling more than $6,000," the lawsuit alleges.



Portal    Contracts and Commercial Law    Contracts and Commercial Law Blog
For Purposes of New York Usury Laws, What Fees or Charges Are Included in Loan Interest Rates?

10-17-2013 | 03:53 PM    Author: David S. Rich

## For Purposes of New York Usury Laws, What Fees or Charges Are Included in Loan Interest Rates?



In New York State, charging interest of more than 16% per year is civil usury.  Further, in New York, cha
taking, or receiving interest of 25% or more is criminal usury.  Lenders and borrowers frequently ask w
or charges count toward a loan's interest rate for purposes of New York's usury laws.  The answer depe
the nature of the loan.

With respect to any loan or forbearance secured primarily by an interest in real property improved by a
two-family residence occupied by the owner, the term 'interest,' for purposes of New York's civil and c
usury statutes, "includes[s] origination fees, points and other discounts and all other amounts paid or p
directly or indirectly, by any person, to or for the account of the lender in consideration for making the
forbearance," except for those categories of fees and charges which are set forth in 3 N.Y.C.R.R. § 4.3.
N.Y.C.R.R. § 4.2 [an annotated version of this statute is available to lexis.com subscribers    ] ; see N.Y.
Law § 5-501(2) [annotated version    ].

With regard to the above-described home mortgage loans, the fees and charges which 3 N.Y.C.R.R. § 4.3 excludes from the definition of 'interest' include, among
categories, the following, if itemized in writing to the borrower:

  Reasonable fees, charges and costs for appraisal of property securing the loan or forbearance, for preparation of surveys, for title examinations, for title insuranc
  services, and for notarizations and authentications;

  Charges for the payment of transfer, mortgage recording and other taxes and governmental charges; and

  Fees and charges paid or payable under a written agreement between the lender and the borrower upon the occurrence of specific acts or defaults of the borrov
  as prepayment penalties, charges for delinquent or late payments, and collection fees.

3 N.Y.C.R.R. § 4.3(b), 4.3(e), 4.3(g) [annotated version    ].

With respect to any loan or forbearance other than the above-described residential mortgage loans, the term 'interest,' for purposes of New York's civil and crimi
statutes, "mean[s] all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender which would be includible as interest unde
law as it existed prior to the enactment of [section 14-a of the New York Banking Law,] chapter 349 of the Laws of 1968." 3 N.Y.C.R.R. § 4.2(b); see N.Y. Gen. Oblig
5-501(2).

In other words, as to any loan other than the above-delineated home mortgage loans, the term 'interest,' for purposes of New York's statutes banning usury, inclu
and charges which were considered interest under New York judicial decisions predating 1968.

The categories of fees and charges which, under pre-1968 New York case law, were considered interest included, but were not limited to, the following:

  Consulting fees, i.e.," 'an ostensibly unrelated contract providing for payment by the borrower for the lender's services which are of little value or which are not
  be rendered.' "  See Krediethbank, N.V. v. ESIC Capital Corp. (In re Rosner), 48 B.R. 538, 547-551 (Bankr. E.D.N.Y. 1985) [an enhanced version of this opinion is avai
  lexis.com subscribers    ].

  Incentive fees.  See Funding Group, Inc. v. Water Chef, Inc., 19 Misc. 3d 483, 486-488, 852 N.Y.S.2d 736 (N.Y. Sup. Ct. N.Y. County 2008) [enhanced version    ].

  Commissions.  See Weiss v. Screen Arts Corp., 2009 N.Y. Misc. LEXIS 4705, 2009 N.Y. Slip op. 31045(U) (N.Y. Sup. Ct. N.Y. County May 12, 2009) [enhanced versior

  Loan origination fees.  Lugli v. Johnston, 78 A.D.3d 1133, 1133-1135, 912 N.Y.S.2d 108 (2d Dep't 2010) [enhanced version    ].

It follows that — as to any loan or forbearance other than the above-mentioned home mortgage loans — consulting fees, incentive fees, commissions, and loan o
fees, among other fees and charges, count toward a loan's interest rate for purposes of New York's usury laws. See Krediethbank, N.V., 48 B.R. at 547-551; Funding
Inc., 19 Misc. 3d at 486-488; Weiss, 2009 N.Y. Misc. LEXIS 4705; Lugli, 78 A.D.3d at 1133-1135.

  Visit the New York Business Litigation and Employment Attorneys Blog    for commentary regarding business litigation, employment, and securities
  legal issues.

For more information about LexisNexis products and solutions connect with us through our corporate site  .

Tags:   usury



## 10 SEP 2015   Understanding New York Criminal Usury

*Commercial Litigation Advisor & Alert*

Share 🖨 Print ✉ Subscribe (/PublicationSubscription) 🗎 Download PDF (../..//Custom/PublicationPDF/PublicationID_1287_Understanding-New-York-Criminal-Usury.pdf)

## PUBLISHED ON: September 10, 2015

Charging too much interest can be a crime. Usury is the general practice of making unethical financial loans that unilaterally benefit the lender. Typically, a loan is considered usurious if the interest rate is excessive or abusive. Under New York's criminal usury statute, the maximum per annum interest rate for a loan of money is 25 percent. Penal Law § 190.40,1 § 190.42.2 With some exceptions, individuals, corporations, and limited liability companies may assert criminal usury as a defense where the amount of the loan is more than $250,000 and less than $2,500,000. While a corporation or limited liability company may not interpose the defense of civil usury3, such prohibition does not extend to criminal usury.

## Usury Penalties

A lender that knowingly collects criminally usurious interest commits a felony and could face penalties ranging from probation to prison. These penalties are in addition to any other co-occurring crimes, such as bank fraud and money laundering. Healthy monetary fines are typically levied as well as the court's requirement for restitution. Significantly, while prior case law suggested that there was no civil remedy for criminal usury with respect to loans not subject to the civil usury statute (i.e., loans of $250,000 or more), a recent appellate court held, in Blue Wolf Capital Fund II, L.P. v. American Stevedoring Inc., 961 N.Y.S.2d 86 (1st Dep't 2013), that such loans are nevertheless void and some lenders may be subject to forfeiture of principal and interest — or, in the case of a savings bank, a savings and loan association or a federal savings and loan association, a borrower may be able to recover twice the interest paid.

## Substance Over Form

Attempts to disguise interest may put a loan in jeopardy. In order to determine whether a transaction is usurious, courts look not to its form but to its substance or real character. Warrants, success fees, consulting fees and other fees may be appropriate, but if used to disguise interest, lenders may be inviting trouble.

**Usury Savings Clauses**

13

Lenders will often include in their loan documents "usury savings clauses" stating that if the loan turns out to be usurious, then any payments by the borrower above the allowable rate shall be retroactively recharacterized as repayments of principal. In the few cases that have considered the validity of such clauses, the results were not encouraging for lenders. There are, however, a number of exceptions and exemptions to the usury rule, only a few of which are discussed here.

**Default Interest**

New York usury laws do not apply to defaulted obligations. Any penalty interest rates or late fees assessed against a borrower do not constitute usury. This is because where interest has already fallen due, it becomes a debt that, like any other debt, may either be paid in cash or treated as a new loan to the debtor under an agreement that it shall bear interest.

## Special Relationship

A borrower is estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction. Otherwise, a borrower could void the transaction, keep the principal, and achieve a total windfall, at the expense of an innocent person, through his own subterfuge and inequitable deception. Based on a finding of a special relationship, the lender will be entitled to the unpaid principal together with the legal rate of interest. Special relationships that may preclude assertion of a usury defense include attorney-client, fiduciary, or trustee, or a longstanding friendship or its equivalent. Moreover, a special relationship is usually characterized by superior knowledge, experience, or sophistication, which enables a borrower to induce the lender to make the loan at a usurious rate.

**UCC Article 9**

Loans secured in accordance with Article 9 of the Universal Commercial Code, including discretionary or mandatory advances in the amount of $100,000 or more, are not subject to usury limitations, if on the date when the interest is charged or accrued, such interest is not greater than eight percentage points over the prime rate. There are a number of other escape hatches from usury laws, including waiver, burdens of proof, standing, application of another state's law, estoppel and other equitable defenses. It is also possible to cure usurious loans via modification and amendment. Given how easy it is to steer clear of usury problems in New York commercial transactions, it is critical to obtain good legal counsel at the outset.

[See PDF for endnotes]

# Related People

14


**NEW YORK**
STATE OF
OPPORTUNITY.
**Thruway Authority**

**For Immediate Release**: 01/09/18
**Contact**: Office of Media Relations and Communications | (518) 471-5300 | public.info@thruway.ny.gov

### THRUWAY AUTHORITY LAUNCHES THREE-WEEK LONG AMNESTY PROGRAM FOR GOV. MARIO M. CUOMO BRIDGE TOLLS BY MAIL CUSTOMERS

*Unveils New Action Plan to Increase Outreach for Cashless Tolling Billing*

*New and Improved Signage Outlining Payment Options; Enhanced Tolls Bills and Envelopes Detailing How to Avoid Fines and Fees; and Targeted PSA Campaign*

*Signing Up for E-ZPass Offers Statewide Discounts and is the Most Convenient Way to Pay Tolls*

The New York State Thruway Authority today announced an amnesty program for Tolls By Mail cashless tolling customers using the Gov. Mario M. Cuomo Bridge. The three-week program, set to launch in February, will allow cashless tolling customers with open violations to receive amnesty. Eligible motorists will receive a letter from the Thruway Authority and must pay all outstanding toll balances by February 21. The amnesty will then be applied to violation fees for passenger vehicles of Tolls By Mail customers with open violations that were issued between April 24, 2016 through January 31, 2018.

The Thruway Authority also announced the first steps in a multi-pronged action plan to increase educational outreach related to cashless tolling billing at the Gov. Mario M. Cuomo Bridge. This plan will improve the customer service experience by educating more motorists about how to pay toll bills on-time and avoid fees, violations and possible registration suspension. These steps include:

- Installing more specific roadway signage that clearly outlines payment options to avoid late fees and penalties. The signage will better highlight for motorists that they have passed a tolling point and if they don't have E-ZPass, they need to pay via Tolls By Mail. The signs will clearly instruct drivers who don't use E-ZPass to "AVOID PENALTIES" by calling **826 for toll payment options.




- Improving the wording on tolls bills and envelopes to emphasize ways to avoid fines and penalties. The revised Tolls By Mail bills and envelopes will make it clear how a customer can avoid fines and penalties by paying tolls by the due date. The envelopes will prominently say, "AVOID FEES," and toll bills will say, "Avoid fees of up to $100 per toll transaction by paying your Toll Bill by the due date."
- Updating the Thruway App and websites – thruway.ny.gov, e-zpassny.com, and tollsbymailny.com – to direct users to update their address with the Department of Motor Vehicles (DMV). This will remind drivers that New York State law requires motorists to keep their address current with the DMV to ensure bills are mailed to the proper owners and that they must update their address with the DMV within 10 days of moving.
- Working with other agencies to increase E-ZPass educational outreach to showcase E-ZPass as the most convenient and cost–effective way to travel on New York's roadways, bridges and tunnels.

- Developing a public service announcement on how to pay tolls and avoid fees and penalties that will be displayed at Thruway Service Areas, DMV offices, websites, etc.

**Acting Executive Director Mathew J. Driscoll stated,** "Cashless tolling is a critical part of modernizing our infrastructure. Reduced congestion and air pollution, along with improved safety means better quality of life for all. Open road cashless tolling represents the future for efficient transportation. The Thruway Authority's commitment is to improve our customers experience by increasing educational outreach to address concerns related to the billing process but it should also be recognized that there must be a balanced and an effective system to enforce the rules for all motorists who use the bridge."

The additional steps will add to the Thruway Authority's current outreach which includes informative educational materials in Thruway Service Areas, signage for more than a mile leading up to the Governor Mario M. Cuomo Bridge, and information on thruway.ny.gov, e-zpassny.com, and tollsbymailny.com.

Drivers are strongly encouraged to take advantage of the most convenient and cost- effective way to travel New York's roadways by signing up for E-ZPass. With a New York E-ZPass tag, drivers save on tolls across the state, including a five percent discount along the entire 570-mile New York State Thruway. E-ZPass tags are available for purchase at many Thruway Service Areas and approximately 840 retailers across the state.

To sign up for an E-ZPass account , go to www.E-ZPassNY.com; at E-ZPass Customer Service Centers; or by calling the E-ZPass Toll Free Customer Service Center at 1-800-333-TOLL (8655). E-ZPass can be paid for with a credit card, check, money order or in person at any E-ZPass Customer Service Center.

Customers who don't have an E-ZPass and use the Governor Mario M. Cuomo Bridge can pay their toll before a bill arrives by visiting tollsbymailny.com and pay in a few short steps by providing their license plate number, along with a payment method and period of time traveled. Motorists can also access additional information about how to pay by calling the Tolls By Mail customer service center at 1-844-826-8400.

To ensure that all users of Thruway toll facilities pay their fair share, a series of enforcement measures are in place to combat toll payment evasion and chronic toll scofflaws. Customers who do not pay their tolls are subject to violation fees, registration suspensions, and other enforcement actions. For the Gov. Mario M. Cuomo bridge, if the first toll bill is not paid by the customer, a $5 late fee will be imposed on the second notice. If a second notice is also ignored, violation fees of $100 per toll will be imposed.

New York State law requires motorists to keep their address current with the Department of Motor Vehicles to ensure bills are mailed to the proper owner. Drivers must update their address with the DMV within 10 days of moving. The New York State Department of Motor Vehicles has enacted regulation that allows suspension of the vehicle registration of motorists with three or more unpaid tolls, violation fees and other charges resulting from violations on different days, as well as registration suspension of commercial vehicle owners with $200 or more in unpaid tolls and violation fees, within a period of five years. Repeated notices are sent before eligibility for suspension.

Motorists who use cashless tolling but claim they have not received a toll bill should contact the Tolls By Mail Customer Service Center at 1-844-826-8400 immediately to address the issue, and avoid any fines. For questions regarding Notices of Toll violation, contact the E-ZPass Customer Service Center at 1-800-333-8655.

###

Motorists can sign up for TRANSAlert emails regarding Thruway traffic conditions at http://wwwapps.thruway.ny.gov/tas/.

Follow us on Twitter @ThruwayTraffic and @NYSThruway8790

Like us on Facebook at NYS Thruway Authority

Thruway travelers are encouraged to visit www.Thruway.ny.gov for real-time traffic updates.
To see an interactive map including Google traffic conditions for the Thruway and other roadways in New York State and beyond, go to:
http://www.thruway.ny.gov/travelers/map/index.html?layer=traffic.



**U.S.News**  (/news/best-states)  BEST STATES

HOME (//WWW.USNEWS.COM/)  /  NEWS (//WWW.USNEWS.COM/NEWS)  /  BEST STATES (//WWW.USNEWS.COM/NEWS/BEST-ST...  /  NEW YORK NEWS (//WWW.USNEWS.COM/NEWS/NEW...

# Thruway Webpage Will Help Customers Use Toll Amnesty Program

The state Thruway Authority has released more details on an amnesty program that's set to start next week for motorists who owe overdue unpaid tolls for using a New York bridge.

Jan. 18, 2018, at 12:18 a.m.

**f**  (https://v

## AP

ALBANY, N.Y. (AP) — The state Thruway Authority has released more details on an amnesty program that' set to start next week for motorists who owe overdue unpaid tolls for using a New York (/news/best-states/new-york) bridge.

Thruway officials say as of this Monday, a new webpage — thruway.ny.gov/amnesty — will allow tolls-by-mail customers to determine if they have open violations of non-payment of cashless tolls for using the Gov. Mario M. Cuomo Bridge, formerly the Tappan Zee Bridge.

Customers who enter their license plate, state and zip code can find out if they have unpaid tolls or violations and how much they owe.

The amnesty program runs Jan. 22 through Feb. 26 and is eligible for motorists who have open violations issued from April 24, 2016, through this Jan. 31.

Copyright 2018 The Associated Press (http://www.ap.org). All rights reserved. This material may not be published, broadcast, rewritten or redistributed.

ork%2Farticles%2F2018-01-18%2Fthruway-webpage-will-help-customers-use-toll-amnesty-program%3Fsrc=
018-01-18%2Fthruway-webpage-will-help-customers-use-toll-amnesty-program%3Fsrc=usn_tw&text=Thruw
s%2F2018-01-18%2Fthruway-webpage-will-help-customers-use-toll-amnesty-program%3Fsrc=usn_rd)



17

# ARTICLES

# THE RIGHT TO TRAVEL AND PRIVACY: INTERSECTING FUNDAMENTAL FREEDOMS*

### Richard Sobel[+]

## ABSTRACT

As a fundamental right inherent in American citizenship and the nature of the federal union, the right to travel in the United States is basic to American liberty. The right precedes the creation of the United States and appears in the Articles of Confederation. The U.S. Constitution and Supreme Court recognize and protect the right to interstate travel. The travel right entails privacy and free domestic movement without governmental abridgement.

In the era of surveillance, the imposition of official photo identification for travel, watchlist prescreening programs, and invasive airport scans and searches unreasonably burden the right to travel. They undermine citizen rights to travel and to privacy. These regulations

*    An earlier version of this research was presented by Richard Sobel & Ramon Torres as "The Right to Travel: Intersection with the Right to Privacy and a Personal Liberty," at the Northwestern University Transportation Center Seminar Series on January 6, 2011. It formed a basis for Sobel & Torres, *The Right to Travel a Fundamental Right of Citizenship*, in the Journal of Transportation Law, Logistics & Policy, Spring 2013. The current Article updates portions of the earlier presentation and publication. The author thanks Dawid Danek, Kevin Doran, Brian Kebbekus, Tim Lamoureux, Catherine Nance, Allison Trzop and Michael Zhang, for research assistance and comments on the Article. He also appreciates the insights and suggestions of Barry Horwitz, Gerald Jenkins, Diana Marek, Matthew Beamer, and Ramon Torres, and the assistance of the Buffett Center, Transportation Center, NICO, Hutchins Institute, Houston Institute, Journal of Transportation Law, Logistics & Policy, and The John Marshall Journal of Information Technology & Privacy Law.

+    Buffett Center for International and Comparative Studies, Northwestern University, at richard-sobel@northwestern.edu. In addition to being a Visiting Scholar at the Buffett Center, he is also a faculty affiliate of the Transportation Center at Northwestern, an associate of the Hutchins Institute, and a consultant to the Houston Institute at Harvard.

impermissibly require citizens to relinquish one fundamental right of privacy in order to exercise another fundamental right of travel. The government must preserve these rights in addressing policy goals.

The original conception of the right to travel embodies it as a broadly-based freedom that encompasses all modes of transport. Its explicit articulation in the Articles of Confederation became implicit in the Privileges and Immunities Clause of the Constitution. Contrary to the appellate "single mode doctrine," abridgement of any mode of transportation undermines the constitutionally enshrined travel right. The U.S. Supreme Court needs to rearticulate an originally consistent and politically robust multi-modal right to travel.

## INTRODUCTION: TRAVEL AS A FUNDAMENTAL RIGHT OF CITIZENSHIP

As a foundational political liberty that precedes the adoption of the U.S. Constitution, the right to travel in the United States is inherent both in citizenship and in the nature of the federal union. The Constitution and the U.S. Supreme Court recognize and protect the right to interstate travel.[1]

The travel right empowers U.S. citizens to move interstate without abridgement by government interference. Laws and regulations that impede citizens' ability to exercise a fundamental right like travel to preserve another like privacy are inherently suspect. The Ninth Circuit stated in *United States v. Davis*, "exercise of the constitutional right to travel may not be conditioned upon the relinquishment of another constitutional right absent a compelling state interest."[2]

The original conception of the travel right is explicitly stated in Article IV of the Articles of Confederation and remains in force in the parallel article of the U.S. Constitution. Travel embodies a broadly based personal, political, and economic right that encompasses all modes of transportation and movement. Abridgement of any mode violates the right. The so-called "single mode doctrine," constructed by some circuit courts truncates the plenary scope of the travel right.[3] The imposition

---

1.   *See* Saenz v. Roe, 526 U.S. 489, 498 (1999) (noting that the right to travel is "firmly embedded" within the jurisprudence of the Supreme Court); Shapiro v. Thompson, 394 U.S. 618, 630 (1969); RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 4.8 (4th ed. 2007).

2.   United States v. Davis, 482 F.2d 893, 913 (9th Cir. 1973).

3.   *See* John Doe No. 1 v. Ga. Dep't. of Pub. Safety, 147 F. Supp. 2d 1369, 1375 (N.D. Ga. 2001) ("[T]he denial of a single mode of transportation does not rise to the level of a violation of the fundamental right to interstate travel."); *see, e.g.,* Town of Southold v. Town of East Hampton, 477 F.3d 38, 54 (2d Cir. 2007); Gilmore v. Gonzales, 435 F.3d 1125, 1137 (9th Cir. 2006); Duncan v. Cone, 2000 WL 1828089 (6th Cir. 2000); Miller v. Reed, 176 F.3d 1202, 1205 (9th Cir.1999); Houston v. F.A.A., 679 F.2d 1184, 1198 (5th

WikipediA

# Freedom of movement under United States law

**Freedom of movement under United States law** is governed primarily by the Privileges and Immunities Clause of the United States Constitution which states, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." As far back as the circuit court ruling in *Corfield v. Coryell*, 6 Fed. Cas. 546 (1823), freedom of movement has been judicially recognized as a fundamental Constitutional right. In *Paul v. Virginia*, 75 U.S. 168 (1869), the Court defined freedom of movement as "right of free ingress into other States, and egress from them."[1] However, the Supreme Court did not invest the federal government with the authority to protect freedom of movement. Under the "privileges and immunities" clause, this authority was given to the states, a position the Court held consistently through the years in cases such as *Ward v. Maryland*, 79 U.S. 418 (1871), the *Slaughter-House Cases*, 83 U.S. 36 (1873) and *United States v. Harris*, 106 U.S. 629 (1883).[2][3]

# Contents

**Travel within the United States**
    Constitutional freedom
    Mann Act



WIKIPEDIA

# New York state public-benefit corporations

New York state **public benefit corporations** and **authorities** operate like quasi-private corporations, with boards of directors appointed by elected officials, overseeing both publicly operated and privately operated systems. Public authorities share characteristics with government agencies, but they are exempt from many state and local regulations. Of particular importance, they can issue their own debt, allowing them to bypass limits on state debt contained in the New York State Constitution. This allows public authorities to make potentially risky capital and infrastructure investments without directly putting the credit of New York State or its municipalities on the line. As a result, public authorities have become widely used for financing public works, and they are now responsible for more than 90% of the state's debt. The growing influence of public authorities over state and local financing, coupled with their ability to avoid regulations applicable to government agencies, has led to calls for reform. Some reforms were passed in the Public Authorities Accountability Act of 2005.[1]

## Contents

**Origins**

**Incorporation and dissolution**

**Public authority financing**

**Public authority governance**

**Types of public authorities**

**List of New York state public-benefit corporations**

Class A public benefit corporations in the New York City Metropolitan Area

Class A public benefit corporations in Greater New York State

Class B public authorities

Class C public authorities

Class D public authorities

**Controversy**

**See also**

**References**

**External links**

## Origins

Public benefit corporations in New York State have origins in mercantile capitalism. A shared tradition of English common law and Dutch law may explain their origins.

The New York Court of Appeals provided a thorough history of state laws regarding public authorities in the 1994 case *Schulz v. State*, 84 N.Y.2d 231 (https://www.law.cornell.edu/nyctap/I94_0127.htm). As the court explained, state debt limits were first enacted as a reaction to fiscal crises caused by the state's lending of its credit to "irresponsible" canal and railroad corporations in the early nineteenth century. The state was forced to assume these obligations, which amounted to more than three fifth's of the state's entire debt. In 1846, a referendum requirement was added to the state constitution, prohibiting the state from contracting long term debt without approval by the voters.

As early as 1851, the legislature began to search for ways to evade the constitutional debt limit in order to finance public works projects. Canal certificates, which would be repaid through canal revenues, and which by their terms were not state obligations, were nevertheless held to be unconstitutional in *Newell v. People*, 7 N.Y. 9 (1852) (http://www.courts.state.ny.us/reporter/archives/newell_people.htm). The court held that the state had a moral obligation to repay the debts if canal revenues proved insufficient, and thus the certificates were deemed "an evasion if not a direct violation of the constitution".

In 1921, the legislature chartered the first state public authority, the Port of New York Authority, as a new vehicle for financing public projects while insulating the state from long term debt obligations. In 1926, the Court of Appeals held in *Williamsburgh Savings Bank v. State*, 243 N.Y. 231, that the state could disclaim any moral obligation for public authority debts. However, amendments to the 1938 Constitution overruled this case and completely disclaimed the state's responsibility for any public authority debt.



▷ ✕

# Quasi-Public Corporation

+ SUBSCRIBE

SHARE

▷ ✕

## What is a 'Quasi-Public Corporation'

A type of corporation in the private sector that is backed by a branch of government that has a public mandate to provide a given service. Most quasi-public corporations began as government agencies, but have since become separate entities. It is not uncommon to see the shares of this type of corporation trade on major stock exchanges, which allows individual investors to gain exposure to the company's profit.

### Next Up

| | | | |
|---|---|---|---|
| CORPORATE CHARTER | CORPORATE GOVERNANCE | FEDERAL AGENCIES | BRANCH ACCOUNTING ▶ |

## BREAKING DOWN 'Quasi-Public Corporation'

For example, the Federal National Mortgage Association (Fannie Mae) is regarded as a quasi-public corporation because it operates as an independent corporation. This company operates under a congressional charter that aims to increase the availability and affordability of homeownership, but is not treated as any part of the government. Contrary to popular opinion, employees of quasi-public corporations do not work for the government.

## Tired of buy-and-hold only?

SPONSORED

Diversify your long-term portfolio with short-term trading using limited risk Nadex binary options. High ROI possible. Click here to learn more.

## Compare Popular Online Brokers

| Provider | Fidelity Investments | Merrill Edge | Charles Schwab |
|---|---|---|---|
| Name | Fidelity Investments | Merrill Edge | Charles Schwab |
| Description | Get a range of investment choices, tax advantages and 1:1 help with a Fidelity Roth IRA. | Get up to $600 when you invest in a new Merrill Edge® account | Fee/Trade: $4.95 500 Commission-Free Trades for 2 Years |
| | › Learn More | › Learn More | › Learn More |

Advertiser Disclosure

### HOT DEFINITIONS

Roth IRA

Portfolio

Diversification

Liquidity

Federal Funds Rate

Call Option



## RELATED TERMS

**Corporate Charter**
A written document filed with a U.S. state by the founders of ...

**Corporate Governance**
Corporate governance is the system of rules, practices and processes ...





# FindLaw® FOR LEGAL PROFESSIONALS

| CASES & CODES | PRACTICE MANAGEMENT | JOBS & CAREERS | NEWSLETTERS | BLOGS | LAW TECHNOLOGY |

QUICK LINKS ▸    Forms    Lawyer Marketing    Corporate Counsel    Law Students    JusticeMail    Reference

## PUBLIC RECORDS SEARCH

BeenVerified®

First Name                    Last Name

[                    ]        [                    ]

FindLaw » US Supreme Court Center » Legal Commentary » More on Large Civil Fines for Minor Violations

Latest

✉ Email   0           6

▸ Law Sc
▸ Do Sup
  Security
▸ Former
  Lawyer
▸ Hacked



# More on Large Civil Fines for Minor Violations: Might They Be Limited by the U.S. Constitution's Excessive Fines Clause, and By State Constitutional Provisions

**By VIKRAM DAVID AMAR AND DAVID REIS**

Friday, Jun. 25, 2004

*This column is Part Two of a two-part series by Professor Amar and guest columnist David Reis on the constitutionality of large civil fines imposed under administrative statutes. - Ed.*

In Part One of this two-part series, we began to explore the question: in light of the limitations the U.S. Supreme Court has imposed on jury punitive damage awards given to private plaintiffs in the past decade under the Due Process Clause, are there constitutional constraints on the imposition of civil fines, where some or all of the proceeds go to government coffers?

We used as a vehicle to explore that question a new California Labor Code statute. It allows for penalties of $100 per employee, per pay period (e.g., two weeks) during which a Code violation persists. As a result, even technical, unintentional violations could give rise to a fine of millions of dollars, if the company had a fairly large number of employees. That result seems grossly disproportionate to the actual harm caused by the violation, and therefore potentially unconstitutional, we argued, under the substantive due process principles embodied in recent Supreme Court punitive damage cases.

In this column we want to move beyond federal due process to consider two other possible sources of limitation: the Eighth Amendment's Excessive Fines Clause, and state constitutional provisions. We explore these additional sources for a few reasons. First, substantive due process principles of the kind we wrote about in Part One remain controversial, especially among the Supreme Court's conservative Justices, so the presence of another, less controversial, constitutional principle embodied in constitutional text may be helpful to the litigation.

FindLa

Select a

Attorney
Corporat
Academi
Judicial (
Summer
Intern
Law Libr

Search J



Second, as recent events continue to remind us, state constitutions can often provide more protection to individuals from government overreaching than does the federal Constitution. Just as state constitutions may protect gay marriage rights more generously than does the Fourteenth Amendment, so too private property protections from state fines may be more generous at the state constitutional level. And state supreme courts have the last word on the meaning of state constitutions.

## The Eighth Amendment Excessive Fines Clause - What it Says, and When it Applies

Let's begin with the Excessive Fines Clause argument. The Eighth Amendment to the U.S. Constitution provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (Emphasis added.)

Remarkably, the Supreme Court did not interpret the Excessive Fines Clause until 1989, in *Browning-Ferris Industries, Inc. v. Kelco Disposal, Inc.* There, it held that the Clause applies only to fines payable to the government, not to punitive damages between purely private civil litigants. That is, the Clause does not apply "when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." (This ruling led punitive damage opponents to focus more on the Due Process clause, in a series of cases culminating in *State Farm*.)

California's new Labor Code provision, discussed above, may implicate the Eighth Amendment even under the limiting *Browning-Ferris* holding, because some portion (75%) of the fines it imposes is, indeed, payable to the state. But it is still a somewhat open question as to whether the entirety of a fine must be payable into public coffers before the Eighth Amendment is implicated.

## Must the Whole Fine Go to the Government to Trigger the Excessive Fines Clause?

How might courts decide this issue? Cases decided in a related context might provide some insight.

A number of states have modified their punitive damage schemes so that the state takes a portion of the punitive damage award received by any plaintiff. (Governor Arnold Schwarzenegger got a lot of publicity this spring for proposing that California do the same thing.) In states where the government takes some of a plaintiff's punitive damage award - so-called "split recovery" states -- defendants have raised the question whether the state's share in the recovery triggers the Eighth Amendment. Lower court decisions are somewhat divided in their responses.

Some courts have focused on the destination of the state's portion of the punitive damages award, holding that where the money goes directly to a state's general fund, the state's interest in the punitive damage award is substantial enough to subject the case to the Excessive Fines Clause. In analyzing other state statutes, a few courts have held that where the state's portion of the award goes to funds administered by the courts for specific (and often remedial) purposes, such as a fund to compensate tort victims, then the state does not have a substantial enough interest in the punitive damage award to invoke the Excessive Fines Clause.

Other courts analyzing these issues have focused not on the destination of the state's portion of the damage award, but rather, the government's involvement in obtaining the award. Some of these courts have held that the Excessive Fines Clause is not implicated where the suit is brought by private plaintiffs (rather than the government) and where the judgment is imposed by a jury (rather than a government agency).

With respect to civil fines - as distinguished from split-recovery punitive damage schemes -- we submit that if at least a significant percentage of a fine is used to generate revenues for the state's general fund, and the

plaintiff is acting as a "private attorney general," then there is a strong basis for arguing - even after *Browning-Ferris* - that the Excessive Fines Clause applies.

## Substantive Limits Imposed by the Excessive Fines Clause

But to say that the Clause applies and that it is violated are, of course, two very different things. As one commentator has put the point, the substantive content of the Excessive Fines Clause is evolving: "The doctrine is in flux and generalization is difficult." Nonetheless, over the past decade and a half, we do have a few cases that establish some guiding principles.

First, and importantly, in *Austin v. United States*, the Supreme Court in 1993 held that the Clause applies to both civil and criminal fines. Therefore, there is no need for a challenger to establish that a fine is "criminal" in order to avail himself of the Clause's protection. But a challenger does need to establish that an ordered payment is itself a "fine." The Court in *Austin* said that a payment is a fine - implicating the Eighth Amendment - only if it is punitive at least in part; payments that are entirely compensatory and remedial do not constitute fines, and therefore fall outside the Amendment's scope.

As we argued in Part One, payments like those authorized by California's new statute most likely should be characterized as at least partially punitive, because the amount of monies at stake bear little correlation to actual or potential harm suffered by plaintiffs on account of a defendant's violations, and also do not seem to be very related to the expenses incurred in enforcing the substantive prohibitions.

Once a payment is considered a fine, the key question becomes whether it is "excessive." The Supreme Court has, understandably, defined "excessive" in terms of proportionality - is the fine overly large when compared to the conduct giving rise to the fine?

In most of the cases before the Supreme Court so far, this proportionality question has been the key one, and often the Supreme Court has simply remanded that question to the lower courts. Many of the decisions have involved forfeiture of physical assets used during the commission of a wrong - for example, the government's attempt to require forfeiture of a house used to sell drugs, or a car used for prostitution. In such cases, it is hard to know whether a particular sanction is "excessive," because the wrongful conduct does cause harm, but harm that is often hard to measure.

That same problem may arise in some of the applications of a law like California's Labor Code. But in other instances it is hard to deny disproportion. For example, if the Code requires a technical notice to be posted, and the fine for failing to post it runs to the millions - as in the hypothetical we explained in Part One - there's an obvious disproportionality.

We note in this regard that in one recent case - which involved cash rather than real or personal property -- the Supreme Court did find disproportion and excess under the Eighth Amendment. In 1988, in *United States v. Bajakajian*, the Supreme Court invalidated a civil fine that was deemed to be grossly disproportionate to the gravity of the offense it was designed to punish. In that case, an individual leaving the country took with him his life savings of $357,000 in cash. Federal law required anyone carrying more than $10,000 in cash out of the country to report it to the government (it was lawful to carry the cash out of the country if lawfully reported). The government sought to have the defendant forfeit the entire $357,000.

The Supreme Court ruled against the government, holding that to require forfeiture of the entire amount would be grossly disproportionate to the reporting offense. Writing for the Court, Justice Thomas stated that



the "amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."

## What the Eighth Amendment Adds to a Due Process Inquiry

Given that the Eighth Amendment's proportionality idea is embodied in the due process principles we talked about in Part One - indeed, *State Farm's* requirement that the ratio between the punitive damage award and the actual or possible harm suffered by the plaintiff be considered is an expression of the proportionality idea - one might ask, what does a defendant gain by adding an Eighth Amendment argument? Just this: the backing of people who focus on the Constitution's text and who are troubled by the atextual character of substantive due process analysis.

In this regard, it bears noting that some of the Supreme Court's more conservative Justices - whom one would expect to be no fans of large punitive damage awards - have dissented from the due process cases like *State Farm* which try to rein in oversized awards, precisely because they disagree with the very idea of ambitious substantive due process doctrine. Justice Scalia, for example, who has been very critical of substantive due process as it applies in the so-called "privacy" line of cases (involving contraception and abortion and homosexual conduct) has also felt the need to be critical of substantive due process in the punitive damage realm.

In short, the doctrine of substantive due process is itself controversial enough that another constitutional basis - like the Eighth Amendment - would always be a welcome addition for a defendant to include if possible.

## Another Possible Source of Limits - State Constitutions

Having assessed the Excessive Fines Clause argument as promising, let's also consider possible state constitutional arguments that could be used to attack disproportionate civil fines. California's Constitution provides one potential example.

Almost 20 years ago, in *Hale v. Morgan,* the California Supreme Court relied on both federal *and* state constitutional due process analysis to strike unfairly oppressive civil fines. And, as noted above, even if the state court turns out to be wrong on the federal constitutional analysis, its state constitutional analysis will still stand.

In *Hale v. Morgan,* the California court considered the constitutionality of a civil fine under a statute that prohibited landlords from depriving tenants of utilities in an attempt to evict them. The statute imposed a mandatory fine of $100 per day for each day the tenant was deprived of utilities. Although the tenant's annual rent was less than $800, the fine imposed totaled $17,300 (representing 173 days' of deprivation).

The Court found the penalty unconstitutional because the duration of the penalties was potentially unlimited, no discretion was permitted the trier of fact (regardless of the degree of culpability), the penalty was more severe than those imposed for more serious transgressions by landlords against tenants, and the statute permitted the "occasional experienced and designing tenant to ambush an unknowing landlord converting the single wrongful act of the latter into a veritable financial bonanza."

## The California Constitution Would Support a Challenge to the New Code Provision

All of these factors seem equally applicable to any constitutional challenge to California's new Labor Code private attorney general provisions and laws like it. So *Hale* may provide a strong precedent for the California

courts to strike down - or place proportionality limits on -- the new Labor Code provision even if the federal courts choose to do nothing.

Interestingly, California's new Labor Code Private Attorneys General Act is only one of a number of similar statutes currently proliferating nationwide. In light of that fact - and of the clear parallel with U.S. Supreme Court punitive damages precedents -- it seems to us that it's only a matter of time before this issue lands squarely before the nation's highest courts.

Vikram David Amar is a professor of law at the University of California, Hastings College of Law in San Francisco. He is a 1988 graduate of the Yale Law School, and a former clerk to Justice Harry Blackmun. He is a co-author of the Cohen and Varat constitutional law casebook, and a co-author of several volumes of the Wright & Miller treatise on federal practice and procedure. Before teaching, Professor Amar spent a few years at the firm of Gibson, Dunn & Crutcher. David Reis is a director at the law firm of Howard Rice Nemerovski Canady Falk & Rabkin in San Francisco, where he Chairs the Employment Litigation and Counseling Group. Mr. Reis also teaches Employment Discrimination Law as an adjunct professor of law at the University of California, Hastings College of Law.

 0     6     1     0

**RESEARCH THE LAW**       Cases & Codes / Opinion Summaries / Sample Business Contracts / Research An Attorney or La

**MANAGE YOUR PRACTICE**   Law Technology / Law Practice Management / Law Firm Marketing Services / Corporate Counse

**MANAGE YOUR CAREER**     Legal Career Job Search / Online CLE / Law Student Resources

**NEWS AND COMMENTARY**    Law Commentary / Featured Documents / Newsletters / Blogs / RSS Feeds

**GET LEGAL FORMS**        Legal Forms for Your Practice

**ABOUT US**               Company History / Media Relations / Contact Us / Privacy (Updated) / Advertising / Jobs

**FIND US ON**

 

Copyright © 2013, Thomson Reuters. All rights reserved.



WEBSITE: http://www.e-zpassiag.com CONNECTING REPORT:

 **MarylandReporter.com**

- News
- State Roundup
- Commentary
- General Assembly
- Election
- Budget

# Possible relief for motorists with huge E-Z Pass fines passes Senate

By Glynis Kazanjian | March 21, 2018

LIKETWEET EMAILPRINTMORE

*An electronic toll gantry on Route 200, the InterCounty Connector. Photo by Doug Kerr with Flickr Creative Commons License.*

## By Glynis Kazanjian

## For MarylandReporter.com

A bill bringing possible relief to Maryland motorists who face thousands of dollars in fines from unpaid E-ZPass tolls passed the Senate unanimously last Thursday and gets a hearing in a House committee next week.

Bill sponsor, Sen. Roger Manno, D-Montgomery, made fixes to his bill that died last year in committee, conforming it to a bill that passed the House last year.

Senate Finance Committee Chairman Thomas "Mac" Middleton, D-Charles, told Manno at a March 7 hearing that he spoke with

28

transportation officials last year and requested improvements. The Maryland Transportation Authority had a year to evaluate how it handles escalating fines that can devastate driver's finances and credit ratings.

The bill, SB973, would allow the Maryland Transportation Authority (MDTA) to recall delinquent debts over $300 from the Central Collection Unit under certain circumstances, prohibit the collection unit from collecting against a debt recalled by the transportation authority and require the MDTA to report to the governor and General Assembly progress on customer service operations.

"It pains me to be back here," Manno testified March 7. "This bill deals with the persistent, pernicious practice of folks who are caught in this sort of toll penalty dragnet. ... Because of small penalties, problems on their credit cards or wrong addresses – – administrative problems have made folks' lives terrible and have ruined their credit. I'd like to ask you to take another look."

## $3,800 in fines for a single mom

In testimony before the committee, Nidia Carattini, a single mother from Montgomery County, said an overdrawn bank account connected to her E-ZPass account resulted in what are now $3,800 in fines.

"When I finally started getting collection notices, I tried to pay as quickly as possible," Carattini said. "Some of the fees I wasn't able to pay as quickly. They were attached to 60 to 80 trips. $50 per visit on the ICC. They said I couldn't make payment plans and they were going to suspend my [vehicle] registration."

Carattini said after her account was sent to CCU they would only allow collection payments after a 20% deposit was placed on the debt.

"I didn't have the money, I didn't do it." Carattini said. "They took money from my state taxes and now it's in a private collection agency. It's like you need your car to work and you have to work to pay the fees and you don't have enough money to pay the fees and they say they're going to suspend your license. I'm a single mother. I need to work."

Pausing frequently to fight back tears, Carattini told lawmakers she may have misread letters she received thinking she could only act if she was disputing the fees.

## 30 days to pay

MDTA Spokesman John Sales said when motorists don't pay a toll on roads like the ICC, which only has electronic monitoring, video toll fees kick in.

For a video toll, Sales said, "it's 50% higher than the base rate with a minimum of $1 and a maximum of $15 above the base rate."

Sales said if the outstanding toll amount is paid within 30 days of the date in a mailed notification, "it's closed and done."

It takes MDTA, which obtains addresses from the Motor Vehicle Administration, two weeks to 30 days to mail out notices.

"If you don't pay within 30 days, that's when you get a $50 citation," Sales said. "On the 45th day, the actual [$50] citation is assessed."

Motorists may challenge the civil citation and penalties in district court within 30 days of being notified.

Sales said motorists who do not pay or challenge the fines or citation within 30 days are flagged with MVA for non-renewal of their vehicle registration. Motorists are also referred to the Central Collection Unit where a 17% service charge is added.

"Unpaid tolls and penalties combined less than a $1,000 will be referred to MVA with a vehicle registration non-renewal flag," Sales said. "More than $1,000, you are flagged at MVA for [license] suspension."

Sales said problems can occur when E-ZPass transponders die, motorists purchase new cars and don't update their E-ZPass account and when new license plates are used.

"It's really important for E-ZPass customers to keep their accounts up-to-date," Sales said.

### 'Egregious, excessive, abusive'

Henry Grubaro, a Takoma Park resident, said he and his wife ended up owing $500 on $20.58 worth of tolls after their bank cards were closed by the bank due to security breaches.

"It seems egregious and excessive and feels abusive as a citizen," Grubaro said. "Like the preying mortgage industry, E-ZPass does a lot of those things. I ended up with another $2,000 going to CCU after they added their fees, and now I'm on a payment plan for another vehicle."

Joe Sperber, an IT business owner who frequently uses the InterCounty Connector (Route 200), said he ended up owing about $3,000 in fines and penalties to the state when he used an old truck that didn't have a transponder for. Testifying before the Finance Committee, Sperber said all the E-ZPass office had to do was align the license plate from his truck with his E-ZPass account.

### Improving customer service

As part of a new customer service initiative launched by the Hogan administration earlier this year, MDTA has begun sending out email alerts telling E-ZPass customers when their accounts have a low balance, insufficient funds and when renewal dates are approaching. New attention grabbing envelopes with red ink will also be used when notices of fines are sent.

Using a new mobile website, ezpassmd.com, customers can also now add new or temporary vehicles to their accounts, replenish an account, update credit card information and pay video tolls. Transponders can also now be purchased through MVA eStores.

More MDTA service initiatives are planned for this year, according to the agency. MDTA will connect video toll transactions with license plate

numbers, so unpaid tolls do not escalate to citations; and, MDTA will implement a video tolling customer service center helpline.

A hearing on Manno's bill is scheduled for March 29 at 1 p.m. in the House Environment and Transportation Committee.

Manno is one of eight Democrats running for Congress in Maryland's 6th Congressional District for the seat of Rep. John Delaney, who is running for president.



**lenlazarick Mod** • <u>6 days ago</u>

A reader named Sara posted on earlier story March 24:
I owe about $6000 in toll fees couldnt renew my tags because I didnt have the money to pay $6000 was pulled over for my stickers being past due. The cops took my tags and impounded my car. I had no idea i owed this much in toll fees! I was puying them some just slipped by me and it was too late to request a court date. I can't beleieve they allow them to charge this much. there is not protection for us. I have no idea what I am going to do now with no car :(

The E-ZPass Group is comprised of toll entities stretching across 17 states that operate the extremely successful E-ZPass electronic toll collection program.

E-ZPass enjoys tremendous brand recognition and high levels of customer satisfaction, and is the world leader in toll interoperability, with over 35 million E-ZPass devices in circulation.

*This website is primarily intended as a resource for our staff and member agencies. More detailed information can be obtained by contacting the E-ZPass service center of one of our member agencies.*

### New York

E-ZPass is accepted at the following locations:

New York State Bridge Authority

Bear Mountain Bridge

Newburgh-Beacon Bridge

Mid-Hudson Bridge

Kingston-Rhinecliff Bridge

Rip Van Winkle Bridge

Buffalo Area Facilities

New York State Thruway

Entire New York State Thruway including:

New Rochelle Barrier

Yonkers Barrier

Tappan Zee Bridge

Spring Valley (commercial vehicles only)

Harriman Barrier

Grand Island Bridge

Port Authority New York; New Jersey

Bayonne Bridge

George Washington Bridge

Goethals Bridge

Holland Tunnel

Lincoln Tunnel

Outerbridge Crossing

MTA Bridges and Tunnels

Bronx-Whitestone Bridge

Brooklyn-Battery Tunnel

Cross Bay Bridge

Henry Hudson Bridge

Marine Parkway Gil Hodges Bridge

Queens Midtown Tunnel

Throgs Neck Bridge

Triborough Bridge

Verrazano-Narrows Bridge

Niagara Falls Bridge Commission

Lewiston - Queenston Bridge

Rainbow Bridge

Whirlpool Bridge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON FARINA; JOMO WILLIAMS; THOSE SIMILIAR SITUATED

*(List the name(s) of the plaintiff(s)/petitioner(s).)*

1:2018 Civ. 01433 _____ ( NRB ) ( ____ )

- against -

**AFFIRMATION OF SERVICE**

METROPOLITAN TRANSPORTATION AUTHORITY; TRIBOROUGH
BRIDGES & TUNNELS AUTHORITY; TRANSWORLD SYSTEM INC
& CONDUENT INC; EZ PASS; INTERAGENCY GROUP; NYS THRU-
WAY AUTHORITY; JOHN DOES

*(List the name(s) of the defendant(s)/respondent(s).)*

I, *(print your name)* Jomo Williams _____, declare under penalty of perjury that I

served a copy of the attached *(list the names of the documents you served)*: _____

PERMISSIVE INTERVENTION APPLICATION WITH SUPPORTING PAPERS (CPLR ART. 78, ORDER TO SHOW CAUSE

WITH PETITIONS & EXHIBITS) APPROX. 45 PAPERS ATTACHED.

upon all other parties in this case by *(state how you served the documents, for example, hand delivery,*

*mail, overnight express)* FIRST CLASS FLAT RATE U.S. POSTAL SERVICE. _____ to the

following persons *(list the names and addresses of the people you served)*: NYS ATTORNEY GENERAL

METROPOLITAN TRANSPORTATION AUTHORITY; TRIBOROUGH BRIDGES & TUNNELS AUTHORITY; TRANSWORLD

SYSTEM INC & CONDUENT INC; EZ PASS; INTERAGENCY GROUP; NYS THRUWAY AUTHORITY.

AND FILED WITH CLERKS OF SDNY, US DISTRICT CT., AND NY SUP. CT, OF NY COUNTY.

on *(date you served the document(s))* 4|2|18 .

_____4\1\18_____
Dated

Signature
_____

3333 BROADWAY, D10G
Address
NY, NY

City, State
10031

Zip
6463778066

Telephone Number
JOMOWILLIAMS@YMAIL.COM

E-Mail Address

*Rev. 01/2013*

THERE ARE SEVERAL Lawyer Joseph Santoli, LISTED;
DO NOT KNOW WHICH ONE REPRESENTING IN THIS MATTER.
FRCP R.5 (b)(2)■(D) leaving it with the court clerk if the person has no known address;
NY CPLR 2103 (d) Filing.  If a paper cannot be served by any of the  methods specified in subdivisions
(b) and (c), service may be made by filing the paper as if it were a paper required to be filed.

CPLR 7802(D)

```
============================
    HAMILTON GRANGE STATION
       521 W. 146TH ST
          NEW YORK
             NY
          10031-9998
          3596420042
04/02/2018    (800)275-8777   2:29 PM
============================
Product            Sale      Final
Description         Qty       Price

PM 2-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (WILMINGTON, DE  19801)
    (Flat Rate)
    (Expected Delivery Date)
    (Wednesday 04/04/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0830 89)
Insurance           1        $0.00
    (Up to $50.00 included)
PM 1-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (WHITESTONE, NY  11357)
    (Flat Rate)
    (Expected Delivery Date)
    (Tuesday 04/03/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0830 96)
Insurance           1        $0.00
    (Up to $50.00 included)
PM 1-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10017)
    (Flat Rate)
    (Expected Delivery Date)
    (Tuesday 04/03/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0831 02)
Insurance           1        $0.00
    (Up to $50.00 included)
PM 1-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10004)
    (Flat Rate)
    (Expected Delivery Date)
    (Tuesday 04/03/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0831 19)
Insurance           1        $0.00
    (Up to $50.00 included)
PM 1-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (FLORHAM PARK, NJ  07932)
    (Flat Rate)
    (Expected Delivery Date)
    (Tuesday 04/03/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0831 26)
Insurance           1        $0.00
    (Up to $50.00 included)
PM 1-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10038)
    (Flat Rate)
    (Expected Delivery Date)
    (Tuesday 04/03/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0831 33)
Insurance           1        $0.00
    (Up to $50.00 included)
```

```
PM 1-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (NEW YORK, NY  10271)
    (Flat Rate)
    (Expected Delivery Date)
    (Tuesday 04/03/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0831 40)
Insurance           1        $0.00
    (Up to $50.00 included)
PM 2-Day            1        $6.70
Flat Rate Env
    (Domestic)
    (ALBANY, NY  12201)
    (Flat Rate)
    (Expected Delivery Date)
    (Wednesday 04/04/2018)
    (USPS Tracking #)
    (9505 5138 9161 8092 0831 57)
Insurance           1        $0.00
    (Up to $50.00 included)

Total                       $53.60

Cash                       $70.00
Change                    ($16.40)

Includes up to $50 Insurance

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit USPS.com
USPS Tracking or call 1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
https://www.usps.com/help/claims.htm.

All sales final on stamps and postage
Refunds for guaranteed services only.
Thank you for your business

HELP US SERVE YOU BETTER
TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE
Go to:
https://postalexperience.com/Pos

840-5100-0046-006-00013-88212-02
```



```
or scan this code with
your mobile device:

YOUR OPINION COUNTS
or call 1-800-410-7420.
```