UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON FARINA, CHARLES GARDNER, DOROTHY TROIANO, DELORIS RITCHIE and MIRIAN ROJAS on behalf of each of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br> vs.<br><br>METROPOLITAN TRANSPORTATION AUTHORITY, TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, NEW YORK STATE THRUWAY AUTHORITY, TRANSWORLD SYSTEMS, INC., ALLIANCEONE RECEIVABLES MANAGEMENT, INC., LINEBARGER GOGGAN BLAIR & SAMPSON, LLP and CONDUENT, INC.,<br><br>     Defendants. | Hon. Naomi R. Buchwald, U.S.D.J.<br><br>CIVIL ACTION NO.:<br><br>18-01433 (NRB)<br><br><u>**Civil Action**</u><br><br><u>**DOCUMENT FILED<br>ELECTRONICALLY**</u> |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND/OR STRIKE CLASS CLAIMS**

---

PORT AUTHORITY LAW DEPARTMENT
4 World Trade Center
150 Greenwich Street, 24th Floor
New York, New York 10007
(212) 435-3483
*Attorney for Defendant,*
*The Port Authority of New York and New Jersey*

Of Counsel and On the Brief:
David R. Kromm, Esq.
Nicole K. Vachon, Esq.

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................ 1

FACTS RELEVANT TO THIS MOTION.......................................................... 1

     A. Port Authority's "Tolls by Mail" Program .......................... 3

     B. E-ZPass Customer Agreement Terms and Conditions.......................... 4

     C. Plaintiff Charles Gardner ................................................ 6

     D. Plaintiff Mirian Rojas...................................................... 6

     E. Plaintiff Dorothy Troiano ................................................ 7

ARGUMENT ............................................................................................ 8

    I. LEGAL STANDARD ......................................................... 8

       A.  Motion to Dismiss Standard of Review .......................... 8

       B.  Motion to Strike Standard of Review .......................... 9

    II. PLAINTIFFS LACK STANDING ...................................... 10

    III THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION ................... 11

       A.  The Complaint Fails to Plead a Violation of the Eighth Amendment
and the N.Y. Const. Art. I, § 5 (First Claim for Relief) .................. 11

       B.  The Complaint Fails to Plead a Violation of Procedural Due Process
Under the Fourteenth Amendment and the N.Y. Const. Art. I, § 11
(Second Claim for Relief) .................................................... 14

       C.  The Complaint Fails to Plead a Violation of the New York Consumer
Protection Act, NYGBL §§ 349-350 (Fourth Claim for Relief) .................... 16

       D.  The Complaint Fails to Plead Either a Breach of Contract and/or Breach of
Implied Covenant Good Faith and Fair Dealing Claim (Sixth Claim for
Relief)............................................................................. 17

       E.  The Complaint Fails to Plead an Unjust Enrichment Claim (Seventh Claim for
Relief)............................................................................. 18

    IV. THE CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE THE
PLEADINGS WITH RESPECT TO THE PURPORTED CLASS ARE PURELY
CONCLUSORY .................................................................. 19

    V.    PLAINTIFFS HAVE FAILED TO SERVE A NOTICE OF CLAIM AS
REQUIRED BY N.Y. UNCONSOL. LAW § 7108, DEPRIVING THIS COURT  OF
SUBJECT MATTER JURISDICTION OVER THE PURPORTED STATE LAW
CLAIMS     ................................................................... 20

    VI.    PUNITIVE DAMAGES CANNOT BE ASSESSED AGAINST THE PORT
AUTHORITY  .................................................................. 22

CONCLUSION.......................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*,
    731 F.2d 112 (2d Cir. 1984)........................................................................18

*Abramson v. Pataki*,
    278 F.3d 93 (2d Cir. 2002).........................................................................14

*Aegis Ins. Servs., Inc. v. The Port Auth. of New York & New Jersey*,
    435 F. App'x 18 (2d Cir. 2011) .................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................8, 9

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003).......................................................................11

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972)..................................................................................14

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006).......................................................................18

*Davidson v. Yeshiva Univ.*,
    555 F. Supp. 75 (S.D.N.Y. 1982)...............................................................19

*In re Dayton*,
    786 F. Supp. 2d 809 (S.D.N.Y. 2011).........................................................11

*Edelhertz v. City of Middletown*,
    943 F. Supp. 2d 388 (S.D.N.Y. 2012).........................................................14

*Emilio v. Sprint Spectrum L.P.*,
    68 F. Supp. 3d 509 (S.D.N.Y. 2014)...........................................................10

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    1998 WL 321446 (S.D.N.Y. June 18, 1998) ...............................................19

*Grinberg v. Safir*,
    181 Misc. 2d 444 (Sup. Ct.), *aff'd,* 266 A.D.2d 43 (1999)......................13

*Hartline v. Gallo*,
    546 F.3d 95 (2d Cir.2008)..........................................................................11

*Hershey v. Goldstein*,
    938 F. Supp. 2d 491 (S.D.N.Y. 2013).........................................................13

*Johnson v. Nextel Communications, Inc.*,
  660 F.3d 131 (2d Cir. 2011)...................................................................................17

*King v. Port Auth. of New York and New Jersey*,
  909 F. Supp. 938 (D.N.J. 1995) ...........................................................................23

*Kinkopf v. Triborough Bridge & Tunnel Auth.*,
  6 Misc. 3d 73 (N.Y. App. Term 2004)...................................................................17

*Kirsh v. City of N.Y.*,
  No. 94-8489, 1995 U.S. Dist. LEXIS 8896 (S.D.N.Y. June 27, 1995) ...................12

*Kraebel v. Michetti*,
  1994 WL 455468 (S.D.N.Y. Aug. 22, 1994)...........................................................13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................10

*Lyons v. Port Auth. of New York and New Jersey*,
  228 A.D.2d 250 (1st Dep't 1996) ..........................................................................20

*M T Mortg. Corp. v. White*,
  736 F. Supp. 2d 538 (E.D.N.Y. 2010) ...................................................................16

*Martinez v. Port Auth. of New York and New Jersey*,
  No. 01-CV-721 (PKC), 2005 WL 2143333 (S.D.N.Y. Sep. 2, 2005) ....................23

*Maurizio v. Goldsmith*,
  230 F.3d 518 (2d Cir. 2000)....................................................................................16

*Mayfield v. Asta Funding, Inc.*,
  95 F. Supp. 3d 685 (S.D.N.Y. 2015)........................................................................10

*Mulligan v. The Port Auth. of New York & New Jersey*,
  No. 02-CV-6885 (AKH), 2002 WL 31233245 (S.D.N.Y. Oct. 4, 2002)...............21

*Northwestern Mut. Life Ins. Co. v. Wender*,
  940 F. Supp. 62 (S.D.N.Y. 1996)...........................................................................16

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)................................................................................................11

*PFT of Am., Inc. v. Tradewell, Inc.*,
  1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ........................................................10

*Pilgrim v. Univ. Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ...................................................................................9

*Posner v. Minnesota Min. & Mfg. Co.*,
    713 F. Supp. 562 (E.D.N.Y. 1989) ...................................................................17

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015).............................................................20

*Rose v. Port Auth. of New York and New Jersey*,
    13 F. Supp. 2d 516 (S.D.N.Y. 1998)................................................................22

*Rosu v. City of New York*,
    742 F.3d 523 (2d Cir. 2014)............................................................................14

*Roth v. Jennings*,
    489 F.3d 499 (2d. Cir. 2007)............................................................................9

*Spann v. AOL Time Warner, Inc.*,
    219 F.R.D. 307 (S.D.N.Y. 2003) ...............................................................19, 20

*St.Vendor Project v. City of New York*,
    10 Misc. 3d 978 (Sup. Ct. N.Y. County 2005) ..............................................12

*Sullivan v. Syracuse Hous. Auth.*,
    962 F.2d 1101 (2d Cir.1992)............................................................................11

*Swarthout v. Cooke*,
    131 S. Ct. 859 (2011).......................................................................................14

*Town of Babylon v. Fed. Hous. Fin. Agency*,
    790 F. Supp. 2d 47 (E.D.N.Y. 2011), aff'd, 699 F.3d 221 (2d Cir. 2012)............10

*Trippe v. Port of New York Auth.*,
    14 N.Y.2d 119 (1964).......................................................................................20

*United States v. Bajakajian*,
    524 U.S. 321 (1998).........................................................................................12

*United States v. Viloski*,
    814 F.3d 104 (2d Cir. 2016)............................................................................12

*Urbina v. Port Auth. of New York and New Jersey*,
    No. 15-CV-08647 (PKC), 2017 WL 3600424 (S.D.N.Y. Aug. 18, 2017) .............23

*Vernon v. Port Auth. of New York and New Jersey*,
    154 F. Supp. 2d 844 (S.D.N.Y. 2001)..............................................................22

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................................11

*Williams v. Nat'l Car Rental Sys., Inc.*,
  225 N.J. Super. 164 (Law. Div. 1988) ...................................................................22

**Statutes**

Federal Torts Claims Act ...........................................................................................21

N.Y. G.B.L. § 349 ...........................................................................................16, 17, 22

N.J. Stat. Ann. § 32:1-118 ............................................................................................2

N.J. Stat. Ann. § 32:1-157 ..........................................................................................20

N.J. Stat. Ann. § 32:1-168 ..........................................................................................20

N.J. Stat. Ann. § 32:1-1, et seq. ...............................................................................1, 2

N.J. Stat. Ann. § 32:1-7 ................................................................................................2

N.J. Stat. Ann. § 32:1-4 ................................................................................................1

N.Y. Gen. Bus. Law § 349(a) .....................................................................................16

N.Y. Unconsol. Law § 6401, et seq. ........................................................................1, 2

N.Y. Unconsol. Law § 6404 .........................................................................................1

N.Y. Unconsol. Law § 6407 .........................................................................................2

N.Y. Unconsol. Law § 6501 .........................................................................................2

N.Y. Unconsol. Law § 7101 .......................................................................................20

N.Y. Unconsol. Laws §§ 7101-7112 ..........................................................................20

N.Y. Unconsol. Law § 7107 .......................................................................................21

N.Y. Unconsol. Law § 7108 ..................................................................................20, 21

N.Y. Cons. Prot. Act ..................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 23(c)(1)(A) ..........................................................................................9

Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 9

Fed. R. Civ. P. 23 .................................................................................................19, 20

Fed. R. Civ. P. 12(f) .....................................................................................................9

N.Y. Const., Art. § 5.. ...........................................................................................11, 13, 14, 16, 22

U.S. Const., Art. III, § 2 .........................................................................................................10

U.S. Const., Amend. VIII ...........................................................................................11, 12, 13

U.S. Const., Amend. XIV ...........................................................................................14, 15, 16

## PRELIMINARY STATEMENT

Defendant The Port Authority of New York and New Jersey (the "Port Authority") respectfully submits this Memorandum of Law, together with the accompanying Declaration of Charles Fausti, dated September 14, 2018 ("Fausti Decl."), and the annexed exhibits in support of its Motion to Dismiss plaintiffs Jason Farina, Charles Gardner, Dorothy Troiano, Deloris Ritchie and Miriam Rojas' (collectively, "Plaintiffs") Consolidated Amended Class Action Complaint ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs seek a declaratory judgment and damages over the Port Authority's cashless tolling system.  Plaintiffs' Complaint offers only conclusory allegations as to the Port Authority and lacks any substantive facts to establish its liability for the actions alleged.  Thus, all of Plaintiffs' claims against the Port Authority should be dismissed.

## FACTS RELEVANT TO THIS MOTION

The following facts are taken from the Complaint ("Compl."), the Exhibits to the Complaint, the documents incorporated by reference in the Complaint as well as the applicable statutes and regulations.

Defendant Port Authority is a bi-state governmental agency created by Compact between the States of New York and New Jersey with the consent of the Congress of the United States.  *See generally* N.Y. Unconsol. Law § 6401, et seq. (McKinney 2018); N.J. Stat. Ann. 32:1-1, et seq. (West 2018); *see also* N.Y. Unconsol. Law § 6404 (McKinney 2018); N.J. Stat. Ann. § 32:1-4 (West 2018).  The Port Authority is responsible for all vehicular bridges and tunnels connecting New York and New Jersey which lie within a 25-mile radius of the Statue of Liberty.  Specifically, the Port Authority maintains, operates and controls the Bayonne Bridge, the Outerbridge Crossing, the Goethals Bridge, the George Washington Bridge, the Holland Tunnel and the Lincoln Tunnel;

along with three bus terminals, two truck terminals, seven marine terminals, four airports, two heliports, the Port Authority Trans-Hudson Railroad ("PATH"), and the World Trade Center in New York City.  McKinney's N.Y. Unconsol. Law § 6401, et seq. (McKinney 2018); N.J.S.A. 32:1-1, et seq. (West 2018).

The Port Authority is run operationally by five Line Departments; including Tunnels, Bridges and Terminals ("TB&T").  TB&T runs the Port Authority's four bridges (George Washington, Bayonne, Goethals, and Outerbridge Crossing) and two vehicular tunnels (Holland and Lincoln), along with other transportation facilities.  McKinney's N.Y. Unconsol. Law § 6501 (McKinney 2018); N.J.S.A. 32:1-118 (West 2018).  The Port Authority is authorized to collect tolls on its bridges and tunnel facilities and to borrow money and secure the same with bonds. N.Y. Unconsol. Law §§ 6407 (issue bonds), 6501 (levy tolls), 6512 (levy tolls & issue bonds) (McKinney 2018); N.J. Stat. Ann. 32:1-7 (issue bonds), 32:1-118 (levy tolls), 32:1-128 (levy tolls & issue bonds) (West 2018).  The Port Authority receives no tax revenue.

All of the Port Authority's bridge and tunnel facilities accept payment of tolls by E-ZPass. E-ZPass is an all-electronic toll collection system whereby the user signs up for an account and receives a designated toll tag for his or her specific vehicle.  As the driver's vehicle enters the toll lane, the toll tag that is mounted on the vehicle's windshield is read by the antenna.  As the vehicle passes through, the driver's E-ZPass account is charged the established toll amount.  If the driver's vehicle does not have a toll tag and he or she drives through a toll lane designated by overhead signage as "E-ZPass Only", the system classifies that driver as a violator and cameras will photograph the license plate for processing.  However, a cash payment option remains available at both the Holland Tunnel and Lincoln Tunnel, as well as the George Washington Bridge, Goethals Bridge and Outerbridge Crossing.  At these facilities, certain toll lanes are staffed by toll collectors

and are designated by overhead signage as accepting both "Cash" and "E-ZPass".  As such, a driver always has the option of paying his or her toll charge at these Port Authority facilities with a cash payment.  *See* Declaration of Charles Fausti, dated September 13, 2018 ("Fausti Decl.") at ¶¶ 8-9.

Plaintiffs allege that "[i]n 2017 the … Port Authority … switched many of their bridges and tunnels to 'cashless toll' collecting, meaning that tolls are collected from drivers using automated systems.  Tollbooths have been dismantled and drivers are no longer able to pay cash at many of the crossings." Compl. ¶ 2.  As it pertains to the Port Authority, this statement is incorrect.  In fact, the Bayonne Bridge crossing is the only one of the Port Authority's six tunnels and bridges which has instituted and maintains a cashless toll collection system.  *See* Fausti Decl. at ¶ 10.  All other Port Authority bridges and tunnels currently accept cash payment of tolls.  *Id.*

## A. <u>Port Authority's "Tolls by Mail" Program</u>

Under the Port Authority's "cashless" or "Tolls-By-Mail" program at the Bayonne Bridge, when a vehicle passes through the cashless toll lane with an E-ZPass toll tag, the E-ZPass system records the information about the car and processes the toll through the E-ZPass account associated with toll tag.  *Id.* at ¶ 11.  However, vehicles traveling over the Bayonne Bridge without an E-ZPass toll tag will receive a toll bill by mail.[1]  *Id.*  The toll bill will be sent to the registered owner of the vehicle.  *Id.*  In accordance with the terms and conditions established in the E-ZPass Customer Agreement, if a vehicle travels over the Bayonne Bridge with an E-ZPass toll tag linked to an account with a negative balance, the registered owner of that vehicle will receive a Notice of Violation Enforcement Action Impending Collection / Legal Action ("Notice of Violation") for the unpaid toll, as well as a $50 violation administrative fee per each unpaid toll transaction.  *Id.*

---

[1]      E-ZPass customers who travel without a toll tag in their vehicle and whose license plate is not listed on their E-ZPass account may also receive a toll bill.

A registered owner of a passenger vehicle will receive a toll bill for their toll facility usage. *Id*. at ¶ 12.   Each toll bill contains new transactions and overdue amounts, plus any late fee associated with a previously unpaid toll bill.   *Id*.   The most recent toll bill will contain new transactions, if any, the overdue balance and any late fees that must be paid.   *Id*.   Transactions remaining unpaid after two toll bills will be escalated to violations and additional fees will be assessed.   *Id*.   Registered owners of non-passenger vehicles must pay each toll bill independently. Overdue amounts will not be carried forward in the next toll bill with new transactions.   *Id.* at 13. A single reminder of an overdue toll bill payment shall be sent, with a late fee added.   *Id.* Transactions remaining unpaid after an overdue toll bill reminder will be escalated to violations and additional fees will be assessed.   *Id*.

As discussed *infra* at C., plaintiffs do not allege any claims against the Port Authority pertaining to its "Tolls-By-Mail" program at the Bayonne Bridge.

**B.  E-ZPass Customer Agreement Terms and Conditions**

All applicants for an E-ZPass account agree to the following terms and conditions regarding use of their E-ZPass tag:

    **2) TAG USE**

<div align="center">****</div>

    **f.**   You must maintain a sufficient balance in your pre-payment Account, and may not use the Tag or permit Tag use unless a sufficient balance is maintained.

<div align="center">****</div>

    **3) YOUR ACCOUNT**

a.  You must maintain a prepaid amount in your pre-payment Account to cover applicable charges to your Account

b.  Applicable charges, if any, will be deducted from your Account each time the Tag is used.

    c.   E-ZPass may deduct from your Account applicable administrative fees incurred pursuant to this Agreement.

<div align="center">****</div>

**5) VIOLATIONS**

    **a.**  If you use the Tag when your Account is in a negative balance … you may; incur administrative fees of up to $100 per occurrence….

    **b.**  If you use the Tag in a vehicle other than one of the class for which the Tag is designated, you may incur administrative fees of up to $100 per occurrence….

    **c.**  Failure to respond to Notices of Violation may result in referral to a collection agency [and] imposition of additional fees and charges….

*See* Fausti Decl. at Ex. A.

The Complaint explicitly disavows any challenge to the underlying toll violations committed by the plaintiffs. *See* Compl. at ¶ 137 ("The underlying reason for any particular purported toll violation is irrelevant for the purposes of the claims herein."). Plaintiffs only challenge the administrative fees assessed to each violation. *Id*. at ¶¶ 186, 194, 214, 228, 238, 249 and 262. The Complaint makes the conclusory allegation that "[a]t all relevant times, Defendants … would send the notices to [plaintiff] more than 30 days after [his or her] vehicle incurred the charge for the toll, meaning [he or she] had no notice about the toll charge or any violations before being assessed the $100 fee." *Id*. at ¶¶ 82, 99, 108 and 123. Not only are plaintiffs not entitled to this claimed 30-day grace period before triggering the fee, *id*. at ¶¶ 136, 225, but they were in fact only charged a $50 administrative fee at all times when crossing a Port Authority facility. *See* Fausti Decl. at ¶¶ 11, 16.

C.  **Plaintiff Charles Gardner**

The only plaintiff who alleges any outstanding tolls and/or fees traveling through the Port Authority's "Tolls By Mail" facility at the Bayonne Bridge is Charles Gardner.  Compl. ¶ 102. The Complaint alleges Gardner "has been charged hundreds of dollars for crossing [the Port Authority's] bridges and tunnels."  Compl. ¶¶ 19, 101.  This prior balance related to five (5) toll violations he incurred for his use of the Bayonne Bridge on October 15, 22 and 29, 2017 and November 5 and 12, 2017.  Compl. ¶ 102.

These violations were assessed to Gardner because when he crossed over the Bayonne Bridge on the above dates with an E-ZPass tag in his vehicle that was read by the toll plaza antenna and was linked to an account with a negative balance.  The Port Authority sent an individual Notice of Violation Enforcement Action Impending Collection / Legal Action ("Notice of Violation") to Gardner's home address in Pennsylvania for each unpaid crossing on December 6, 23 and 31, 2017 and January 12, 2018.  Each Notice of Violation included the unpaid toll, as well as a $50 violation administrative fee assessed to Gardner.  *See* Fausti Decl. at Ex. B.

Gardner eventually paid the outstanding tolls and the Port Authority waived the entire balance of the fees that were still owed as a courtesy to Gardner.  *See* Fausti Decl. at ¶ 17. Presently, Gardner does not have an outstanding balance with the Port Authority.  *Id*. at ¶ 17.

D.  **Plaintiff Mirian Rojas**

The Complaint alleges that Mirian Rojas "was assessed improper fees without notice," (Compl. ¶ 11), when "in early April 2018, [she] received several letters from [the Port Authority] indicating that she owed money for tolls and that a notice of enforcement action had been previously sent to her."  Compl. ¶125.  Rojas also claims she accessed her E-ZPass account online on April 10, 2018 and it showed that "the MTA and Port Authority had charged her with ten

violations." *Id.* at ¶ 126.  Days later, she claims, the "number of the violations … had multiplied" on the website. *Id.* at ¶ 127.

All of the outstanding tolls and fees owed by Rojas were accrued at the George Washington Bridge where cash payment remains an option. *See* Fausti Decl. at ¶ 19.  The Complaint alleges that the equipment of unnamed "Defendants" routinely fails to read E-ZPass devices, purportedly resulting in violation fees being incurred (Compl. ¶¶ 137-148), and that "Defendants" systematically impose fees on vehicle owners before owners are ever sent notices of tolls. *See, e.g.*, *id.* ¶¶ 4, 150, 187, 194, 214, 228, 238.

However, Rojas omits that she crossed the George Washington Bridge with an E-ZPass device linked to an account with a negative balance on the following dates: October 6, 2016; July 13, 17, 22, 28, 2017; August 5, 2017; September 2, 9, 13, 2017; October 4, 5, 31, 2017; November 1, 2, 11, 14, 16, 18, 23, 24, 25, 2017; January 16, 17, 18, 2018; February 3, 8, 10, 13, 14, 16, 2018; and March19, 2018.  Notices of Violation for each of these violations were sent to Rojas' home address in Queens, New York on the following dates: November 26, 2016; September 8, 17, 19, 2017; October 24, 29, 2017; November 3, 2017; December 1, 23, 31, 2017; January 12, 14, 20, 21, 2018; March 10, 18, 30, 2018; and April 1, 3, 15, 2018.  To date, Rojas has not paid most of these tolls and/or fees.  *See* Fausti Decl. at ¶ 20; Ex. C.

### E.  **Plaintiff Dorothy Troiano**

Plaintiff Dorothy Troiano claims that "in 2017 [she] began to receive notices from Defendants the MTA and Port Authority, indicating that tolls had not be paid by her EZ Pass account."  Compl. ¶ 84.  Troiano attached as Exhibit 1 to the Complaint a list of tolls and fees related to crossings at Port Authority and TBTA facilities between May 17, 2017 and November 4, 2017.  *Id.* at Ex. 1.

However, Troiano omits that when she crossed the Goethals and George Washington Bridges an E-ZPass transponder was not detected in her vehicle on the following dates: May 9, 18, 19, 24, 26, 2017; June 2, 5, 6, 15, 26, 27, 29, 30, 2017; July 5, 2017; August 4, 17, 2017; September 5, 7, 10, 11, 12, 16, 19, 23, 24, 2017; and October 2, 3, 10, 11, 17, 25, 2017.  Notices of Violation for each of these violations were sent to Troiano's home address in Westchester County, New York on the following dates: May 31, 2017; June 7, 2017; July 16, 24, 2017; August 3, 14, 18, 21, 25, 2017; October 2, 9, 11, 13, 27, 29, 30, 2017; and November 2, 7, 9, 2017.  *See* Fausti Decl. at ¶ 22; Ex. D.

The Complaint does not include any allegations against the Port Authority by Plaintiffs Jason Farina and Deloris Ritchie. *See, e.g.*, Compl. ¶¶ 67-82, 109-123.

## ARGUMENT

### I.   LEGAL STANDARD

#### a.   Motion to Dismiss Standard of Review

In order to survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Legal conclusions, however, are not entitled to an assumption of truth.  *Ashcroft*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  A complaint must state a plausible claim, that is, it must plead factual content sufficient such that a court can draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief

will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

When deciding a Rule 12(b)(6) motion to dismiss, a court may consider the facts alleged in the complaint and documents attached or incorporated by reference to the pleading. *Roth v. Jennings*, 489 F.3d 499, 509 (2d. Cir. 2007). The court may also "consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." *Id.* As such, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* (citation omitted). Furthermore, "even if not attached or incorporated by reference, a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court in ruling on such a motion." *Id.* (quoting *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).[2]

### b.  Motion to Strike Standard of Review

Federal Rule of Civil Procedure ("FRCP" or the "Rules") 23(d)(1)(D) provides that a court may order a party to amend its pleadings "to eliminate allegations about the representation of absent persons[.]" Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." F.R.C.P. 12(f). The Court must determine whether to certify an action as a class action at an early practicable. F.R.C.P. 23(c)(1)(A).

Motions to strike class claims are permissible prior to a plaintiff's motion for class certification. *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). In order to successfully strike class allegations, the movant must demonstrate that from the face of the

---

[2]      Plaintiffs' transaction records meet that standard because the Complaint: (a) admits that Plaintiffs relied on "review of EZ Pass and Tolls-By-Mail billing statements" in drafting that pleading; and (b) quotes data from those records throughout. Compl. at 1 and ¶¶ 70, 86, 102, 127 and Exs. 1 and 3.

complaint, it would be impossible to certify the alleged class regardless of facts that may be obtained during discovery. *See Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (citation omitted). A "plaintiff's allegations must indicate sufficiently that the adjudication of his or her claim will necessarily involve one or more common questions concerning persons similar situated, and that class action pleadings should not be merely conclusory." *PFT of Am., Inc. v. Tradewell, Inc.*, 1999 WL 179358, at *2 (S.D.N.Y. Mar. 31, 1999) (citation omitted) (internal quotations omitted). A motion to strike that addresses issues separate and apart from those issues that will be decided on a class certification motion is not procedurally premature. *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 515 (S.D.N.Y. 2014) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F.Supp. 113, 117 (S.D.N.Y. 2012)).

## II.     PLAINTIFFS LACK STANDING

The subject-matter jurisdiction of federal courts is limited to resolving "cases" and "controversies." U.S. Const. Art. III, § 2. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of establishing standing. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 790 F. Supp. 2d 47, 55 (E.D.N.Y. 2011), aff'd, 699 F.3d 221 (2d Cir. 2012). At a minimum, in order to have Article III standing, (1) the plaintiff must have suffered an injury in fact—i.e., an injury that is concrete and particularized, as well as actual or imminent; (2) there must be a causal connection between the injury and the complained of conduct—that the injury is fairly traceable to the challenged conduct of the defendant; and (3) the likelihood that the injury complained of would be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560-61. Article III's standing requirements apply equally to a class action and "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*,

414 U.S. 488, 495 (1974) (citations omitted).   To establish standing, each of the named plaintiffs "must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Significantly, an injury-in-fact exists when the injury affects the plaintiff in a personal and individual way such that the plaintiff has a personal stake in the controversy. *See Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).  Such an assessment is to "avoid having the federal courts serve as **merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding**." *Id.* (emphasis added); *see also Sullivan v. Syracuse Hous. Auth.,* 962 F.2d 1101, 1106 (2d Cir.1992) ("[C]ourts generally should refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances....") (internal quotations omitted).   Here, plaintiffs have not adequately pled injury-in-fact due to actions of the Port Authority.  The Complaint appears to be nothing more than an assortment of public grievances related to toll collection generally and E-ZPass specifically.

## III.    THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION

### A. The Complaint Fails to Plead a Violation of the Eighth Amendment and the N.Y. Const. Art. I, § 5 (First Claim for Relief)

Plaintiffs' § 1983[3] claim that Defendants' "enforcement of civil penalty assessments" related to their cashless toll systems constitutes a violation of the Eighth Amendment to the U.S. Constitution.  In this Circuit, a "two-step inquiry [is used] for determining whether a financial

---

[3]    In addition, "[t]o prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." *Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir.2008). Plaintiffs assert no facts supporting a plausible *Monell* claim.  There are no facts alleged surrounding the circumstances of the supposed constitutional violation; nor are there any facts supporting a constitutional violation.  The Complaint merely parrots the requirements of a *Monell* claim—conclusively stating that the Port Authority has a policy, practice and/or custom that allegedly results in a constitutional violation.  *See e.g.*, *In re Dayton*, 786 F. Supp. 2d 809, 823 (S.D.N.Y. 2011).

penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First, a court must "determine whether the Excessive Fines Clause applies at all." *Id.* at 109 (citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). That requirement is met if a forfeiture "may be characterized, at least in part, as 'punitive'—*i.e.*, forfeitures for which a defendant is personally liable." *Id.* (citation omitted). "In contrast, purely 'remedial' forfeitures— *i.e.*, those *in rem* forfeitures intended not to punish the defendant but to compensate the Government for a loss or to restore property to its rightful owner—fall outside the scope of the Excessive Fines Clause." *Id.* (citations omitted). Second, a court must "determine whether the challenged forfeiture is unconstitutionally excessive." *Id.* at 109 (citing *Bajakajian*, 524 U.S. at 334). "A forfeiture is unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" *Id.*

Here, the Complaint does not allege that an individual fee of $50 imposed by the Port Authority was excessive under the Eighth Amendment or "grossly disproportionate" under *Bajakajian*. Nor do Plaintiffs allege that any fee would be "grossly disproportionate" if they were actually paid on time. In order words, Plaintiffs have failed to plausibly plead that the Port Authority imposes "grossly disproportionate" fees on Plaintiffs. Moreover, enforcement efforts, including violation fees, are critical to deterring toll evasion and are not subject to challenge under the Eighth Amendment. *See, e.g., St. Vendor Project v. City of New York*, 10 Misc. 3d 978, 982 (Sup. Ct. N.Y. County 2005) ("The Eighth Amendment has been held inapplicable to fines and sanctions 'intended to secure compliance' …"); *Kirsh v. City of N.Y.*, No. 94-8489, 1995 U.S. Dist. LEXIS 8896, *23 (S.D.N.Y. June 27, 1995) ("Eighth Amendment does not apply to sanctions intended to secure compliance"). Nor is the Eighth Amendment applicable where, as here, "the offending individual has the power to mitigate the accrual of fines or penalties." *Id.* In the instant

matter, each Plaintiff could have avoided fees by paying their tolls when due. *See Kraebel v. Michetti*, 1994 WL 455468, at *11 (S.D.N.Y. Aug. 22, 1994) (no Excessive Fines Clause violation where plaintiff "had the power to remedy the violations and thereby avoid imposition of fees"), *aff'd,* 57 F.3d 1063 (2d Cir. 1995).  In light of the important public function provided by the cashless toll system, and the potential harm to taxpayers who must bear the cost of using the system, Plaintiffs' bare allegations are inadequate to state a plausible claim that the fees imposed by the Port Authority are disproportionate to the underlying offense of toll evasion, much less "grossly" disproportionate.

"New York's Excessive Fines clause requires the same analysis as the federal [clause], and provides no greater protection." *Grinberg v. Safir*, 181 Misc. 2d 444, 457 (Sup. Ct.), *aff'd,* 266 A.D.2d 43 (1999) (noting that New York's clause, N.Y. Const. Art. 1, § 5, contains the identical text of the federal clause, U.S. Const., Amend. 8 ("Excessive bail shall not be required, nor excessive fines imposed….")).  As the Complaint fails to plead the elements of an Eighth Amendment cause of action, it likewise fails to plead the elements of a N.Y. Const. Art. I, § 5— the analogous state law cause of action.  Moreover, "[d]istrict courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quoting *Campell v. City of New York*, No. 09-CV-3306 (FB/JO), 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011)) (citations omitted).

For the foregoing reasons, the First Claim for Relief alleging violations of the Eighth Amendment and the N.Y. Const. Art. I, § 5 should be dismissed in its entirety.

**B.  The Complaint Fails to Plead a Violation of Procedural Due Process Under the Fourteenth Amendment and the N.Y. Const. Art. I, § 11 (Second Claim for Relief)**

The Complaint also fails to plead a violation of Procedural Due Process Under the Fourteenth Amendment and the N.Y. Const. Art. I, § 11.  "A Fourteenth Amendment due process claim entails a two-part inquiry to first determine whether plaintiff was deprived of a protected interest, and, if so, what process was his due."  *Rosu v. City of New York,* 742 F.3d 523, 526 (2d Cir. 2014) (citation omitted).  To determine whether a procedural due process violation has occurred, courts must engage in a two-step analysis: first, a court must determine whether there exists a property interest of which a person has been deprived; and if so, a court must next determine if the procedures followed by the state were constitutionally sufficient.  *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011).

To possess a federally protected property interest, a person must have a legitimate claim of entitlement to it.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Such a claim does not arise from the Constitution, but rather from an independent source such as state or local law.  *Id.*  "An abstract need, desire or unilateral expectation is not enough." *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) (citation omitted).  Here, Plaintiffs' due process claims must be dismissed because Plaintiffs have failed to allege the existence of a "federally protected property interest" of which they have been deprived.  Furthermore, even if the Court found that the imposition of fees constituted a "deprivation of a property interest" protected by the Fourteenth Amendment, Plaintiffs' claims should still be dismissed because Plaintiffs have failed to plead facts indicating a lack of adequate notice and opportunity to be heard.  *See Edelhertz v. City of Middletown*, 943 F. Supp. 2d 388, 394 (S.D.N.Y. 2012).

Here, Plaintiffs have failed to allege both a lack of proper notice and an inadequate opportunity to be heard.  While the Complaint is rife with conclusory statements alleging that

-14-

Defendants "do not provide adequate notice of violations" or "adequate opportunity to be heard" on said violations, no facts are actually alleged to support these allegations.  The only information alleged in the Complaint in support of Plaintiffs' allegations concerning notice are the following three speculative, conclusory statements: 1) "Defendants do not send invoices regularly and at times provide notice of alleged toll violations only months afterwards"; 2) "Before notice is given, drivers may have passed through the toll road dozens of times, unknowingly racking up hundreds or thousands of dollars in penalties and fees"; and 3) "When invoices are sent, they do not notify drivers of the amount of fees or the severity of penalties that will be imposed if tolls go unpaid or the date by which payment must be made to avoid those increased fee and penalties."  Compl. ¶¶ 194(a)-(e).  There are no facts alleged indicating that Plaintiffs did not receive notices or invoices pertaining to their violations, or that, when received, these notices or invoices were not timely sent to Plaintiffs.  Moreover, as to the notices and invoices that Plaintiffs claim they did receive, no facts are alleged as to when these notices and invoices were received, or what information is contained within these notices and invoices that would render them inadequate under the Due Process Clause of the Constitution.  As to Plaintiffs' allegations concerning an opportunity to be heard, or lack thereof, the Complaint is devoid of any facts whatsoever to support Plaintiffs' conclusory allegations.   Absent facts supporting their allegations of inadequate notice and opportunity to be heard, a Fourteenth Amendment procedural due process violation has not been pled, nor can one be sustained as to the purported class.

"The New York State constitution's guarantees of equal protection and due process are virtually coextensive with those of the federal constitution."  *Febres*, *supra,* 238 F.R.D. at 392 (S.D.N.Y. 2006) (citations omitted).  Accordingly, because the Complaint fails to state a cause of action under the Fourteenth Amendment, it likewise fails to state a cause of action under the

analogous state law claim.  *Id.* ("the conclusion that plaintiffs' federal equal protection and due process rights were not violated dictates the conclusion that the plaintiffs' parallel rights under the state constitution were also not infringed.").

For the foregoing reasons, the Second Claim for Relief alleging violations of procedural due process under the Fourteenth Amendment and the N.Y. Const. Art. I, § 11 should be dismissed in its entirety.

### C. The Complaint Fails to Plead a Violation of the New York Consumer Protection Act, NYGBL §§ 349-350 (Fourth Claim for Relief)

Plaintiffs' fourth claim for relief alleging violations of the New York Consumer Protection Act, NYGBL §§ 349-350, must likewise be dismissed.  Section 349 of New York's General Business law broadly makes it unlawful to engage in "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  N.Y. Gen. Bus. Law § 349(a).  Parties who allege a cause of action under § 349 must "at the threshold, charge conduct that is consumer oriented.  The conduct need not be repetitive or recurring but defendant's acts or practices must have broad impact on consumers at large; 'private contract disputes unique to the parties … would not fall within the ambit of the statute.'"  *Northwestern Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62, 65 (S.D.N.Y. 1996) (citation omitted).  The Second Circuit has stated that for a § 349 claim to prevail, "the gravamen of the complaint must be consumer injury or harm to the public interest."  *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F. Supp. 1084, 1089 n. 6 (S.D.N.Y. 1988)).  Thus, "[t]o provide the basis for a § 349 claim, a disputed private transaction must have 'ramifications for the public at large,' or be harmful to the general public interest."  *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 571 (E.D.N.Y. 2010).

Here, Plaintiffs have alleged no facts whatsoever to indicate that the practice complained of was "consumer oriented."  Rather, Plaintiffs merely conclude that "Defendants' cashless tolling and billing practices have a broad impact on consumers at large" and "is therefore consumer oriented."  Compl. ¶ 209.  However, at least one court has ruled that the collection of tolls, as legislatively mandated, is not of the character of transactions intended to be governed by § 349.  *See Kinkopf v. Triborough Bridge & Tunnel Auth.*, 6 Misc. 3d 73, 74-75 (N.Y. App. Term 2004) ("Inasmuch as the tolls are in essence a use tax, the collection of same is not a consumer oriented transaction and therefore not subject to section 349 of the General Business Law.").  Inasmuch as Plaintiffs have failed to plead that "Defendants' imposition and collection scheme for EZ Pass [sic] and Tolls-By-Mail," which Plaintiffs claim, "was false, misleading, deceptive, unfair and unlawful" (Compl. ¶ 210), is consumer oriented, their cause of action under § 349 must be dismissed.

### D.  The Complaint Fails to Plead Either a Breach of Contract and/or Breach of Implied Covenant Good Faith and Fair Dealing Claim (Sixth Claim for Relief)

The Complaint categorically fails to plead the facts necessary to support a claim for Breach of Contract or Breach of Implied Covenant of Good Faith and Fair Dealing.  Under New York law, in order to state a breach of contract claim, the complaint must allege the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages.  *See Johnson v. Nextel Communications, Inc*., 660 F.3d 131, 142 (2d Cir. 2011).  "[I]n asserting a breach of contract claim, the complaint must plead the terms of the agreement upon which the defendant's liability rests."  *Posner v. Minnesota Min. & Mfg. Co.*, 713 F. Supp. 562, 563 (E.D.N.Y. 1989) (citations omitted).  Plaintiffs' Complaint fails in that respect as it offers nothing more than bald assertions and legal conclusions that Defendants breached their contracts with Plaintiffs and the purported class members.  *See* Compl. ¶¶ 228–27.  Plaintiffs' Complaint does

not even plead the existence of an express contract with the Port Authority; rather, the Complaint merely alleges generally that "Plaintiffs had a contract for the use of the EZ Pass [sic] electronic toll collection system with Defendants" (*id.* ¶ 221) but fails to identify which of the Defendants actually had a contract with Plaintiffs.

### E.  The Complaint Fails to Plead an Unjust Enrichment Claim (Seventh Claim for Relief)

Under New York law, "[t]o prevail on a claim of unjust enrichment, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  To state a claim for money had and received, a plaintiff must demonstrate that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984).

Here, the Complaint fails to allege any facts indicating that the Port Authority was not entitled to the tolls and fees charged.  Plaintiffs cavalierly assert that Defendants "knowingly assessed fees and charges on Plaintiffs and members of the Class that were unfair, unconscionable, and/or oppressive" (Compl. ¶ 133) but have provided no facts in support of this conclusory allegation.  Plaintiffs also failed to plead facts indicating that the Port Authority "benefitted from the receipt of money," much less "at the plaintiff's expense."  No facts are alleged to support Plaintiffs' conclusory allegation that "Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class" (*id.* ¶ 259), which appears to be based solely on the claim that "Plaintiffs have paid *at least some* of the … fees." *Id.* ¶ 258 (emphasis

added).  As the Complaint fails to plead facts establishing either unjust enrichment or money had and received, the claim must be dismissed in its entirety.

## IV.   THE CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE THE PLEADINGS WITH RESPECT TO THE PURPORTED CLASS ARE PURELY CONCLUSORY

A pleading which merely paraphrases FRCP 23 and fails to allege any facts to support conclusory allegations as to the purported class members fails to meet basic pleading requirements. *See e.g.*, *Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1998 WL 321446, at *9 (S.D.N.Y. June 18, 1998), *aff'd sub nom. Goldberg v. Merrill Lynch*, 181 F.3d 82 (2d Cir. 1999) (citation omitted).  "When the plaintiff fails to aver, much less establish any facts to support his conclusory allegations of numerous injuries, the class action request should be dismissed." *Davidson v. Yeshiva Univ.*, 555 F. Supp. 75, 77 (S.D.N.Y. 1982) (citing *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968); *O'Connell v. Teachers College*, 63 F.R.D. 638, 640 (S.D.N.Y. 1974); *Male v. Crossroads Assoc.*, 320 F.Supp. 141, 150 (S.D.N.Y. 1970), *aff'd on other grounds*, 469 F.2d 616 (2d Cir. 1972)).

The conclusory and speculative nature of the Complaint attempts to plead commonality. The Complaint merely parrots the requirements of Rule 23, claiming that the shared question of commonality is whether anyone with an E-ZPass account or has received a "Tolls By Mail" who has crossed the Port Authority's bridges and tunnels were assessed "illegitimate fees and fines." Compl. at ¶ 174.  Merely paraphrasing Rule 23 with conclusory allegations of commonality is insufficient.  *See Davidson* 555 F. Supp. at 78.

Likewise, the Complaint fails to plead typicality and adequacy.  Typicality requires that the class representatives claims essentially arise from the same course of events as the class representatives and that each class member would make similar legal arguments to prove liability. *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003).  "In assessing the

typicality of the plaintiff's claims, the court must pay special attention to unique defenses that are not shared by the class representatives and members of the class." *Id.*  The adequacy requirement, requires that a class representative "possess the same interest and suffer the same injury as the class members." *Id.* at 320.  The adequacy requirement tends to merge with the typicality and commonality requirements. *Id.*  In addition to the enumerated requirements of Rule 23, an implied requirement that the class be ascertainable has been recognized by the Courts. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 516 (S.D.N.Y. 2015) (citation omitted).  In order to satisfy this implied requirement, a class must be readily identifiable. *Id.* (citations omitted).  As written, the Complaint is too vague in its definition of the purported class members and contains no facts that would render the purported class members readily identifiable.

## V.   PLAINTIFFS HAVE FAILED TO SERVE A NOTICE OF CLAIM AS REQUIRED BY N.Y. UNCONSOL. LAW § 7108, DEPRIVING THIS COURT OF SUBJECT MATTER JURISDICTION OVER THE PURPORTED STATE LAW CLAIMS

Prior to the enactment of its suability legislation (N.Y. Unconsol. Laws §§ 7101-7112 and the concurrent New Jersey legislation, N.J.S.A. § 32:1-157 to N.J.S.A. § 32:1-168), the Port Authority as a direct governmental agency of the States of New York and New Jersey was absolutely immune from suit. *See Trippe v. Port of New York Auth.*, 14 N.Y.2d 119, 123 (1964). In 1950, legislation was enacted by New York and New Jersey allowing suit against the Port Authority, subject to two jurisdictional conditions precedent set forth in N.Y. Unconsol. Law § 7101.  In acknowledging the Port Authority's limited waiver of its absolute sovereign immunity from suit, the courts have recognized that the Port Authority's suability statutes are jurisdictional and that strict compliance is required.  *See e.g., Aegis Ins. Servs., Inc. v. The Port Auth. of New York & New Jersey*, 435 F. App'x 18, 25 (2d Cir. 2011) (citing *Giannone v. Port Auth. of New York and New Jersey*, 127 A.D.2d 818, 819 (2d Dep't 1987)); *see also Lyons v. Port Auth. of New*

*York and New Jersey*, 228 A.D.2d 250, 251 (1st Dep't 1996) (finding that the notice of claim requirement is mandatory and jurisdictional and the failure to satisfy the condition results in withdrawal of the Port Authority's consent to suit and compels dismissal of the action for lack of subject matter jurisdiction).

Section 7107 of the New York Unconsolidated Laws requires that (1) any suit brought against the Port Authority be commenced within one year after the accrual of the cause of action and (2) a notice of claim be served by the plaintiff on the Port Authority at least sixty (60) days before filing of the suit.  Section 7108 of the New York Unconsolidated Laws describes the required contents of the notice of claim:

> The notice of claim required by section seven hereof shall be in writing, sworn to by or on behalf of the claimant or claimants, and shall set forth (1) the name and post office address of each claimant and of his attorney, if any, (2) the nature of the claim, (3) the time when, the place where and the manner in which the claim arose, and (4) the items of damage or injuries claimed to have been sustained so far as then practicable.

N.Y. Unconsol. Law § 7108.

Section 7108 of New York Unconsolidated Laws requires "individual application and individual showing of claim and injury, not a generalized allegation suitable for a class." *Mulligan v. The Port Auth. of New York & New Jersey*, No. 02-CV-6885 (AKH), 2002 WL 31233245, at *1 (S.D.N.Y. Oct. 4, 2002).  Even in the context of a class action, "Section 7108 mandates that the notice of claim contain the name and address of *each* claimant, a description of the claim of that claimant and the damages sustained by that claimant." *Id.*

In both *Kantor*, *supra*, and *Eisner*, *supra*, the Courts, one in the context of the notice of claim requirement under the Federal Torts Claims Act and the other in the context of the notice of claim requirement under the General Municipal Law, respectively, the courts noted that the purpose of the notice of claim requirement was to facilitate settlement of cases.  463 F. Supp. at

1163, 118 Misc.2d at 674, respectively.  Likewise, the purpose of the Port Authority's notice of claim requirement is to allow the Port Authority to investigate the validity of a claim and to afford it a reasonable opportunity to effect settlement.  *See Williams v. Nat'l Car Rental Sys., Inc.*, 225 N.J. Super. 164, 170 (Law. Div. 1988) (observing the statutory prerequisites to suit against the Port Authority are intended to provide it "adequate time to investigate the claim, reasonable opportunity for the preparation of its defense, and reasonable opportunity to effect settlement …"). The underlying purpose of the Port Authority's notice of claim requirements lends further support to the notion that the notice of claim in the context of a class action must be made by each purported member of the class, just as was the reasoning in *Kantor*, *supra*, and *Eisner*, *supra*.

Here, the failure to serve a notice of claim on behalf of each purported class member and with respect to Plaintiffs individually, deprives this Court of subject matter jurisdiction over the purported state law claims—the First and Second Claims for Relief brought under the New York Constitution, the Fourth Claim for Relief brought under N.Y. Gen. Bus. Law § 349, the Sixth Claim for Relief for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing, and the Seventh Claim for Relief for Unjust Enrichment.  Accordingly, these claims should be dismissed in their entirety.

## VI.  PUNITIVE DAMAGES CANNOT BE ASSESSED AGAINST THE PORT AUTHORITY

Plaintiffs' claim for punitive damages must also be dismissed because the Port Authority as a government entity is immune from such damages.  *See Rose v. Port Auth. of New York and New Jersey*, 13 F. Supp. 2d 516, 524 (S.D.N.Y. 1998) (finding that the reasoning being immunizing municipalities from punitive damages applies equally to a bi-state entity such as the Port Authority and that "[a]s a government entity, the Port Authority is immune from punitive damages"); *see also Vernon v. Port Auth. of New York and New Jersey*, 154 F. Supp. 2d 844, 860

(S.D.N.Y. 2001); *Martinez v. Port Auth. of New York and New Jersey*, No. 01-CV-721 (PKC), 2005 WL 2143333, at *1 n.2 (S.D.N.Y. Sep. 2, 2005); *Urbina v. Port Auth. of New York and New Jersey*, No. 15-CV-08647 (PKC), 2017 WL 3600424 (S.D.N.Y. Aug. 18, 2017); *King v. Port Auth. of New York and New Jersey*, 909 F. Supp. 938, 947 (D.N.J. 1995) (finding that "[t]he Port Authority as a hybrid entity with substantial connections to government, may not be assessed punitive damages") (citing *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 830 (3d Cir. 1991), *cert. denied*, 504 U.S. 943 (1993)).

## CONCLUSION

For the foregoing reasons, the Port Authority respectfully requests that the Court enter an order dismissing the Complaint as to Plaintiffs' individual claims with prejudice and in its entirety as to the purported class members, or in the alternative, striking the class allegations.

Dated: New York, New York
      September 14, 2018

<div style="margin-left:40%">

Respectfully submitted,

PORT AUTHORITY LAW DEPARTMENT
*Attorney for Defendant,*
*The Port Authority of New York and New Jersey*

By: _____/s/ David R. Kromm_____
    David R. Kromm, Esq.
    4 World Trade Center
    150 Greenwich Street, 24th Floor
    New York, New York 10007
    Telephone No.: (212) 435-3483

</div>