UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JASON FARINA, CHARLES GARDNER,
DOROTHY TROIANO, DELORIS RITCHIE,
and MIRIAN ROJAS on behalf of each
of themselves and all others similarly situated,

                                                    Case No. 1:18-cv-01433-NRB

           Plaintiffs,

      v.

METROPOLITAN TRANSPORTATION
AUTHORITY, TRIBOROUGH BRIDGE AND
TUNNEL AUTHORITY, THE PORT AUTHORITY
OF NEW YORK AND NEW JERSEY, NEW YORK
STATE THRUWAY AUTHORITY, TRANSWORLD
SYSTEMS, INC., ALLIANCEONE RECEIVABLES
MANAGEMENT, INC., LINEBARGER GOGGAN
BLAIR & SAMPSON, LLP and CONDUENT, INC.

           Defendants.
---------------------------------------------------------------X


**DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY AND
TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY'S
JOINT MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS COMPLAINT</u>**

## Table of Contents

Page(s)

I.    INTRODUCTION ...........................................................................................1

II.   STATEMENT OF FACTS ............................................................................2

     A.    Violation Fees Are a Necessary Enforcement Mechanism.........................2

     B.    Allegations and Background........................................................................3

          1.    Plaintiff Farina .....................................................................................3

          2.    Plaintiff Troiano....................................................................................4

          3.    Plaintiff Gardner ...................................................................................5

          4.    Plaintiff Ritchie.....................................................................................6

          5.    Plaintiff Rojas .......................................................................................6

III.   ARGUMENT ...............................................................................................7

     A.    Plaintiffs Do Not Have Article III Standing .............................................8

          1.    E-ZPass Users Have Not Alleged Article III Standing..............................8

          2.    Tolls By Mail Users Do Not Have Article III Standing ...........................9

          3.    MTA Is Not Responsible For the Alleged Conduct...................................10

               a.    The Legal Distinction Between MTA and TBTA is Codified.......10

               b.    Plaintiffs Do Not Allege That Any Conduct is Traceable to MTA....................................................................................................11

     B.    The Fees Do Not Violate the Eighth Amendment ...................................12

          1.    Fees Are In Place to Secure Compliance and Not Subject to Challenge...12

          2.    Courts May Not Disturb the Fees At Issue ...............................................13

          3.    Plaintiffs Do Not Allege The Fees Are Punitive .....................................14

          4.    The Fees Can Be Avoided .......................................................................15

          5.    Plaintiffs' Rights to Challenge the Fees Have Not Been Infringed..........15

          6.    The Fees Are Not Grossly Disproportionate ...........................................16

     C.    Plaintiffs Do Not Have a Procedural Due Process Claim.........................17

          1.    A Property Right Is Not At Issue..............................................................17

          2.    Adequate Procedures Are in Place And Plaintiffs Allege Notice..............17

          3.    Remedies Have Not Been Exhausted .......................................................18

     D.    Plaintiffs Fail to State a GBL §§ 349-350 Claim......................................19

          1.    Toll Collection Is Not a Consumer-Oriented Transaction........................19

          2.    TBTA and MTA Did Not Materially Mislead Plaintiffs ..........................19

     E.    Plaintiffs' Breach of Contract Claim Must be Dismissed.........................21

        1.      Plaintiffs' Obligation to Pay Tolls Arises From Statute, Not Contract .....21

        2.      No Claim Premised on Alleged "E-ZPass Contract"................................22

                a.      No Plaintiff Alleges an E-ZPass Contract with TBTA or MTA....22

                b.      Plaintiffs Fail to Allege Breach of the E-ZPass Contract .............22

    F.      Plaintiffs' Unjust Enrichment Claim Fails...........................................................23

IV.   CONCLUSION...........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akaosugi v. Behihana Nat'l Corp.*,
No. C 11-01272 WHA, 2011 U.S. Dist. LEXIS 129786 (N.D. Cal. Nov. 9,
2011) ................................................................................................................................11

*Alce v. Wise Foods, Inc.*,
17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009 (S.D.N.Y. Mar. 27, 2018)....................23

*Allstate Ins. Co. v. Rivera*,
12 N.Y.3d 602 (2009) ........................................................................................................21

*Angus Partners LLC v. Walder*,
52 F.Supp.3d 546 (S.D.N.Y. 2014) ....................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................7

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ............................................................................................7

*Balaban v. City of Cleveland*,
No. 1:07-cv-1366, 2010 U.S. Dist. LEXIS 10227 (N.D. Ohio Feb. 5, 2010).........................18

*Baxter v. Metropolitan Transp. Auth.*,
No. 150978/2013, 2017 N.Y. Misc. LEXIS 3384 (Sup. Ct. NY Cty Sept. 5,
2017) ......................................................................................................................10, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................7, 23

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008)................................................................................23

*Berry v. N.Y. State Dept. of Taxation & Fin.*,
No. 158919/2016, 2017 N.Y. Misc. LEXIS 2440 (Sup. Ct. NY Cty June 12,
2017) ................................................................................................................................15

*Biggins v. Wells Fargo & Co.*,
266 F.R.D. 399 (N.D. Cal. 2009)........................................................................................11

*Blandford Land Clearing Corp. v. Nat'l Union Fire Ins. Co.*,
260 A.D.2d 86 (1st Dep't 1999) ........................................................................................21

*Bd. of Health Pub. Review Comm. v. NYC Bd. of Health of the City of N.Y.*,
No. 100847/2013, 2014 N.Y. Misc. LEXIS 3970 (Sup. Ct. NY Cty Sept. 4,
2014) ...............................................................................................................13

*Carey Transp. v. Triborough Bridge & Tunnel Authority*,
38 N.Y.2d 545 (1976) .....................................................................................14

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
984 F. Supp. 2d 246 (S.D.N.Y. 2013)............................................................4, 7

*Cervantes v. Countrywide Home Loans, Inc.*,
No. CV 09-517-PHX-JAT, 2009 U.S. Dist. LEXIS 87997 (D. Ariz. Sept. 23,
2009) ...............................................................................................................11

*Citibank, N.A. v. Walker*,
12 A.D.3d 480 (2d Dep't 2004) .......................................................................23

*Cochran v. Ill. State Toll Highway Auth.*,
828 F.3d 597 (7th Cir. 2016) ..........................................................................18

*Cochran v. Ill. State Toll Highway Auth.*,
No. 14-CV-9145, 2015 U.S. Dist. LEXIS 39734 (N.D. Ill. Mar. 27, 2015)...........19

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (Ct. App. N.Y. 2012).................................................................23

*D'Angelo v. Triborough Bridge & Tunnel Authority*,
106 A.D.2d 128 (1985) ....................................................................................14

*Davis v. Joseph J. Magnolia, Inc.*
640 F.Supp.2d 38 (D.D.C. 2009) .....................................................................22

*Davis v. New York City Tr. Auth.*,
No. 400844/2008, 2009 N.Y. Misc. LEXIS 5344 (Sup. Ct. NY Cty July 20,
2009) ...............................................................................................................12

*Dimond v. Darden Rests., Inc.*,
No. 13 Civ. 5244 (KPF), 2014 U.S. Dist. LEXIS 94004 (S.D.N.Y. July 9,
2014) ...............................................................................................................19

*Dixion v. NYC Tr. Auth.*,
24 Misc. 3d 1227(a) (Sup. Ct. NY Cty 2009) ..................................................12

*Dost v. Northwest Tr. Servs.*,
No. 3:11-cv-00270-ST, 2011 U.S. Dist. LEXIS 150517 (D. Or. Dec. 21, 2011)....11

*Dubin v. Cty of Nassau*,
277 F.Supp.3d 366 (E.D.N.Y. 2017) .....................................................14, 17, 18

*EFG Bank AG v. AXA Equitable Life Ins. Co.*,
   309 F. Supp. 3d 89 (S.D.N.Y. 2018)...................................................................23

*Elmwood-Utica Houses, Inc. v. Buffalo Sewer Authority*,
   65 N.Y.2d 489 (1985) ..................................................................................14

*Fleisher v. Phoenix Life Ins. Co.*,
   858 F. Supp. 2d 290 (S.D.N.Y. 2012).................................................................23

*Fridman v. New York City Tr. Auth.*,
   131 A.D.3d 1202 (2d Dep't 2015) .....................................................................12

*Gardner v. City of Cleveland*,
   656 F.Supp.2d 751 (N.D. Ohio 2009)............................................................. 18-19

*Garretson v. Town of Islip*,
   No. 09-36382, 2012 N.Y. Misc. LEXIS 2021 (Sup. Ct. Suffolk Cty Apr. 10,
   2012) ....................................................................................................12

*Guthart v. Nassau County*,
   55 Misc. 3d 827 (Sup. Ct. Nassau Cty 2017)........................................................24

*Idris v. City of Chi.*,
   552 F.3d 564 (7th Cir. 2009) .........................................................................17

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995)...........................................................................4, 8

*Janes v. Triborough Bridge & Tunnel Auth.*,
   977 F.Supp.2d 320 (S.D.N.Y. 2013)..................................................................24

*Jenkins v. Nat'l Grid USA*,
   No. 15-CV-1219(JS)(GRB), 2016 U.S. Dist. LEXIS 46095 (E.D.N.Y. Mar.
   31, 2016) ...............................................................................................11

*Joiner v. Gasparilla Island Bridge Auth.*,
   No. 2:16-cv-467, 2016 U.S. Dist. LEXIS 175719 (M.D. Fla. Dec. 20, 2016) .......................18

*Kinkopf v. Triborough Bridge & Tunnel Auth.*,
   1 Misc. 3d 417 (N.Y. Civ. Ct. 2003)..................................................................11

*Kinkopf v. Triborough Bridge & Tunnel Auth.*,
   6 Misc. 3d 73 (App. Term 2d Dep't 2004) ............................................................19

*Kirsh v. City of N.Y.*,
   No. 94 Civ. 8489, 1995 U.S. Dist. LEXIS 8896 (S.D.N.Y. June 27, 1995)................... *passim*

*Korangy v. United States FDA*,
   498 F.3d 272 (4th Cir. 2007) .......................................................................14

*Krieger v. City of Rochester*,
   42 Misc. 3d 753 (Sup. Ct. Monroe Cty. 2013) .......................................17

*Laughlin v. Metropolitan Transp. Auth.*,
   No. 160255/2013, 2014 N.Y. Misc. LEXIS 444 (Sup. Ct. NY Cty Jan. 29,
   2014) .......................................................................................................11

*Leder v. American Traffic Solutions, Inc.*,
   630 F. App'x 61 (2d Cir. 2015) ...............................................................24

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................8

*Manbeck v. Town of Lewisboro*,
   No. 05 Civ. 4576 (CLB)(GAY), 2008 U.S. Dist. LEXIS 109123 (S.D.N.Y.
   Mar. 4, 2008).............................................................................................13

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ...............................................................................23

*Matter of Prometheus Realty Corp. v. New York City Water Bd.*,
   30 N.Y.3d 639 (2017) ...............................................................................14

*Metro. Wash. Airports Auth. v. Hagarty*,
   92 Va. Cir. 307 (Va. Cir. Court Fairfax Cty 2016)...................................17

*Moreno-Avalos v. City Hall of Hammond*,
   No. 2:13-CV-347, 2015 U.S. Dist. LEXIS 10944 (N.D. Ind. Jan. 30, 2015) ........................22

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008).........................................................................8

*N.Y. State Fed'n of Taxi Drivers, Inc. v. City of New York*,
   270 F.Supp.2d 340 (E.D.N.Y. 2003) ......................................................13

*Nestle Waters N. Am., Inc. v. City of New York*,
   No. 15-cv-05189, 2016 U.S. Dist. LEXIS 70694 (S.D.N.Y. May 25, 2016) ........................18

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
   875 F.3d 107 (2d Cir. 2017)......................................................................21

*NYPIRG Straphangers Campaign, Inc. v. Metro. Trans. Auth.*,
   309 A.D.2d 127 (1st Dep't 2003) .....................................................2, 11, 14

*NYPIRG v. New York State Thruway*,
    77 N.Y.2d 86 (1990) ............................................................................... 14

*Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*,
    No. 12 Civ. 2837(KBF), 2012 U.S. Dist. LEXIS 172208 (S.D.N.Y. Nov. 28,
    2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013) ......................................... 7

*Oneida Indian Nation v. Madison County*,
    665 F.3d 408 (2d Cir. 2011)..................................................................... 18

*Ovitz v. Bloomberg L.P.*,
    18 N.Y.3d 753 (2012) ............................................................................. 20

*Patterson v. Carey*,
    41 N.Y.2d 714 (1977) ............................................................................. 14

*Pellegrino Food Prods. Co. v. City of Warren*,
    136 F.Supp.2d 391 (W.D. Pa. Dec. 6, 2000) .......................................... 18

*Posner v. Minnesota Mining & Mfg. Co.*,
    713 F. Supp. 562 (E.D.N.Y. 1989) ......................................................... 23

*Rampersaud v. Metropolitan Transp. Auth. of the State of New York*,
    73 A.D.3d 888 (2d Dep't 2010) .............................................................. 12

*Reyes v. N. Tex. Tollway Auth.*,
    830 F.Supp.2d 194 (N.D. Tex. 2011) ..................................................... 12

*Roth v. CitiMortgage Inc.*,
    756 F.3d 178 (2d Cir. 2014)..................................................................... 19

*Sands v. Ticketmaster-New York*,
    207 A.D.2d 687 (1st Dep't 1994) ............................................................ 19

*Seril v. NYS Div. of Hous. & Cmty Renewal*,
    205 A.D.2d 347 (1st Dep't 1994) ............................................................ 15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).............................................................................. 8

*St. Pierre v. Retrieval-Masters, Inc.*,
    No. 15-2596 (FLW) (DEA), 2017 U.S. Dist. LEXIS 42875 (D.N.J. Mar. 24,
    2017), *aff'd*, *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17-
    1731 and 17-1941, 2018 U.S. App. LEXIS 21908 (3d Cir. Aug. 7, 2018) .......... 19, 22

*St. Vendor Project v. City of New York*,
    10 Misc. 3d 978 (Sup. Ct. NY Cty 2005) ............................................. 12, 15, 17

*Stampf v. Metropolitan Transportation Auth.*,
    57 A.D.3d 222 (1st Dep't 2008) ........................................................................11

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
    454 F. Supp. 2d 62 (E.D.N.Y. 2006) ..................................................................8

*Van Harken v. City of Chi.*,
    103 F.3d 1346 (7th Cir. 1997) ..........................................................................18

*Varela v. Investors Ins. Holding Corp.*,
    81 N.Y.2d 958 (1993) .......................................................................................20

*von Hofe v. United States*,
    492 F.3d 175 (2d Cir. 2007) .............................................................................14

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................................8

*Wemhoff v. City of Baltimore*,
    591 F.Supp.3d 804 (D. Md. 2008) ....................................................................14

*Wenthen v. Metropolitan Transp. Auth.*,
    95 A.D.2d 852 (2d Dep't 1983) ........................................................................11

*Window Headquarters, Inc. v. MAI Basic Four, Inc.*,
    Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 U.S. Dist. LEXIS 11245 (S.D.N.Y.
    Aug. 12, 1993) ..................................................................................................23

*Yazo v. Law Enforcement Sys.*,
    No. CV 08-03512 DDP, 2008 U.S. Dist. LEXIS 93345 (C.D. Cal. Nov. 7,
    2008) ............................................................................................................19, 21

*Yukos Capital S.A.R.L. v. Feldman*,
    No. 15-cv-4964 (LAK), 2016 U.S. Dist. LEXIS 125287 (S.D.N.Y. Sept. 14,
    2016) ..................................................................................................................7


**Statutes**

Fair Debt Collection Practices Act ...............................................................................1

Health Code Section 3.11(a) ........................................................................................13

N.Y. Pub. Auth. Law 552(1) ........................................................................................10

N.Y. Pub. Auth. Law 552(2) ........................................................................................10

N.Y. Pub. Auth. Law 553 ............................................................................................21

N.Y. Pub. Auth. Law § 553(5) ..................................................................................12, 16

N.Y. Pub. Auth. Law § 553(9) ........................................................................................10

N.Y. Pub. Auth. Law § 553(12) ................................................................................ *passim*

N.Y. Pub. Auth. Law § 563 ..............................................................................................2

N.Y. Pub. Auth. Law § 569-c .................................................................................2, 13, 24

N.Y. Pub. Auth. Law § 1263(1)(a)(1) .............................................................................10

N.Y. Pub. Auth. Law § 1265 ..........................................................................................11

NYC Charter § 551(a) ....................................................................................................13

NYC Charter § 558(b) ...................................................................................................13

New York Consumer Protection Act .............................................................................1, 2

Vehicle & Traffic Law § 401(3)(a) ....................................................................................3

**Other Authorities**

21 NYCRR §1020.7 .......................................................................................................21

21 NYCRR §1020.8 .......................................................................................................21

21 NYCRR § 1021.1 .................................................................................................21, 24

21 NYCRR §1021.3 ................................................................................................ *passim*

21 NYCRR § 1021.3(a) ......................................................................................18, 20, 21

21 NYCRR § 1021.3(a)(1) ...............................................................................................8

21 NYCRR § 1021.3(b) ...............................................................................................8, 14

21 NYCRR § 1021.3(d) ...................................................................................13, 17, 15-16

21 NYCRR § 1021.3(d)(2) ...............................................................................................9

21 NYCRR § 1021.3(e) ...........................................................................................15-16

21 NYCRR § 1021.3(f) ......................................................................................15-16, 17

21 NYCRR § 1023.7 .......................................................................................................21

CHEMERINSKY ................................................................................................................12

New York Constitution Article I, Section 5..............................................................1, 2

New York Constitution Article I, Section 11............................................................1, 2

NOWAK AND ROTUNDA § 14.2(a) ...................................................................................12

U.S. Constitution Eighth Amendment ................................................................. *passim*

## I.     <u>INTRODUCTION</u>

Plaintiffs caused their own injury by using underfunded E-ZPass tags and ignoring Tolls by Mail bills and, as a result, they were assessed violation fees by the Triborough Bridge and Tunnel Authority ("TBTA") in accordance with the Public Authorities Law and New York Codes, Rules and Regulations.  Despite crossing TBTA facilities without paying tolls, three of the named Plaintiffs were given substantial dismissals of their violation fees.  Notwithstanding, Plaintiffs now purport to represent a class and bring the following claims against TBTA and Metropolitan Transportation Authority ("MTA"): (1) Violation of the Eighth Amendment of the U.S. Constitution and Article I, Section 5 of the New York Constitution; (2) Violation of Procedural Due Process Under the U.S. Constitution and Violation of Article I, Section 11 of the New York Constitution; (3) Violation of the New York Consumer Protection Act; (4) Breach of Contract; and (5) Unjust Enrichment.[1]

Because they caused their own injuries, Plaintiffs lack Article III standing.  And though Plaintiffs conflate MTA and TBTA, it is settled that MTA has nothing to do with the operation of TBTA facilities; as a result, Plaintiffs cannot point to an Article III injury *caused by MTA*.

Assuming Plaintiffs had Article III standing, their constitutional claims fail.  The excessive fines claim fails because the fees at issue are not subject to challenge.  Even if they were, numerous courts have found similar fees constitutional.  Additionally, Plaintiffs fail to allege that the fees are punitive in nature, the fees could have been avoided by Plaintiffs, and their rights to challenge the fees have not been infringed.  Nor do Plaintiffs allege a procedural due process claim.  A property right is not at issue and, even if one were, more than sufficient

---

[1] Plaintiffs voluntary dismissed their third claim for violation of the Fair Debt Collection Practices Act.  ECF No. 82.  Plaintiffs do not allege their sixth claim for Tortious Interference with Contract against TBTA or MTA.

process was given.  Procedures by which to challenge violation fees are codified and were

known to the Plaintiffs via Notices of Violation (which Plaintiffs allege receiving).

Plaintiffs fail to allege a Consumer Protection Act claim because consumer-oriented

conduct is not at issue and Plaintiffs were not misled.  The breach of contract claim fails because

TBTA tolls and fees arise out of operation of law and, in any event, Plaintiffs have not alleged a

contract or breach.  Their unjust enrichment claim is duplicative of their deficient claims and

must also dismissed.[2]  For these reasons, as discussed below, the Complaint must be dismissed.

II.   **STATEMENT OF FACTS**

A.   **Violation Fees Are a Necessary Enforcement Mechanism**

TBTA operates seven toll bridges and two toll tunnels within New York City and was

designed to generate a toll surplus.[3]  Since 1968, it has used surplus toll revenue to support

MTA's integrated public transportation network and in 2017, alone, provided $1.1 billion in total

support for MTA's bus, subway, and commuter rail systems.[4]

After starting Cashless Tolling at the Henry Hudson Bridge in 2012 under a pilot project,

TBTA completed the agency-wide transition in September 2017.  Tolls are paid with an E-ZPass

tag linked to a funded E-ZPass account or, for vehicles without E-ZPass tags, by matching

---

[2] TBTA and MTA adopt, incorporate by reference, and join in the arguments submitted by the Port Authority of New York and New Jersey ("Port Authority") and the New York State Thruway Authority ("Thruway").  Except for arguments made by Conduent State & Local Solutions, Inc. ("Conduent") on the basis of the filed rate doctrine, it not being a state actor, and qualified immunity, TBTA and MTA adopt, incorporate, and join in the arguments of Conduent as to the following claims: Violation of the Eighth Amendment of the U.S. Constitution and Article I, Section 5 of the New York Constitution; Violation of Procedural Due Process Under the U.S. Constitution and Violation of Article I, Section 11 of the New York Constitution; and Violation of the New York Consumer Protection Act.

[3] TBTA owns and operates the Henry Hudson Bridge, Robert F. Kennedy Bridge, Bronx-Whitestone Bridge, Throgs Neck Bridge, Queens Midtown Tunnel, Hugh L. Carey Tunnel, Verrazano-Narrows Bridge, Cross Bay Veterans Memorial Bridge, and Marine Parkway-Gil Hodges Memorial Bridge.

[4] By law, TBTA covers its operating expenses first and bondholders second, and any surplus is used to support public transit.  Public Authorities Law §§ 553(12), 569-c.  "Any interference with the TBTA's authority to charge or increase tolls effectively undermines [its] assurances to its bondholders in violation of N.Y. Pub. Auth. Law § 563." *NYPIRG Straphangers Campaign, Inc. v. Metro. Transp. Auth.*, 309 A.D.2d 127, 139 (1st Dep't 2003).

license plate images with information from relevant DMVs to send toll bills to vehicle owners

under the Tolls by Mail program; toll bills are sent by first class mail to the owner's address

obtained from the DMV, or by email if an owner opts to receive bills by email.[5]  Violation fees

of $50 or $100 (depending on the bridge or tunnel used) are assessed when owners do not pay

tolls, which can happen for various reasons, but primarily by using E-ZPass tags linked to

underfunded accounts ("invalid E-ZPass tags") or ignoring toll bills; with respect to Tolls by

Mail bills, if no payment is received after an initial toll bill is sent, a second bill adding a $5 late

fee is sent and, if that bill is not paid, a Notice of Violation is sent for unpaid tolls and associated

fees.  21 New York Codes, Rules and Regulations ("NYCRR") § 1021.3.  In addition to a

*codified* system for challenging TBTA tolls and violation fees at Section 1021.3, Tolls by Mail

bills advise owners when their tolls need to be paid, that ignoring bills can result in a fee up to

$100 per violation, and include instructions on how "To Dispute this Toll Bill."  Notices of

Violation for violations associated with invalid E-ZPass tags and toll bills also include

instructions for disputing tolls and fees.

    **B.**    <u>**Allegations and Background**[6]</u>

    **1.**    **Plaintiff Farina**

        Plaintiff Farina alleges that beginning on November 25, 2017 he started "to receive

notices from Defendants indicating that in October 2017 tolls had not been paid, and assessing . .

---

[5] Each time a vehicle with a New York license plate crosses a tunnel or bridge, information for the owner is requested from the DMV.  Vehicle owners are required by law to update their registration address within ten days of changing residence.  Vehicle & Traffic Law § 401(3)(a).  While "image tolls" or ITOLs can be charged to funded E-ZPass accounts based on images of license plates linked to the accounts, ITOLs will not be charged when E-ZPass accounts are currently underfunded; instead, for vehicles whose license plates are linked to underfunded accounts, Tolls by Mail bills are sent to registered owners when there are no E-ZPass tags physically in the vehicle.  Bressler Decl. n.1.  Under a pilot program effective March 28, 2018, TBTA Notices of Violation for E-ZPass violations are sent with a 30-day grace period.  If tolls are unpaid after 30 days, a second Notice of Violation is mailed imposing fees and if not paid within 30 days of the second Notice of Violation, the unpaid tolls and fees are referred for collection to Transworld Systems, Inc.  *Id.* at n.2.

[6] All additional facts introduced either (a) were incorporated into the Complaint by reference, (b) are "integral" to the Complaint because it relies upon their "terms and effect," or (c) were within Plaintiffs' possession at the time

. fees of $100 for each unpaid toll."  Compl., ¶ 68.  He lists a series of tolls and fees related to crossings at the Bronx-Whitestone Bridge, Throgs Neck Bridge, Verrazano-Narrows Bridge, and Robert F. Kennedy Bridge from October 2017 to January 2018.  *Id.* at Pgs. 12-13.  He further alleges that in "early to mid-December 2017 [he] contacted Defendants' EZPass customer service in an effort to understand the multiple charges and fees."  *Id.* at ¶ 71.

In fact, he was assessed violation fees because he was the registered owner of a vehicle using an invalid TBTA E-ZPass tag to cross TBTA facilities without paying tolls from October 2017 to January 2018 (among other times).[7]  Farina was mailed Notices of Violation for these crossings in November and December 2017 as well as January and February 2018 and owed TBTA $6,200 in violation fees and $539 in tolls.  Bressler Decl.[8] ¶¶ 3-4, Exs. 1-2.  Plaintiff Farina omits he was instructed to send a letter disputing the violation fees and that he eventually did so on January 25, 2018 after being prompted by a letter from Transworld.[9]  TBTA agreed to resolve the violation fees for Farina's payment of the tolls ($539.00) and $644.00 in violation fees ($5,556.00 in fees were dismissed).  *Id.* ¶ 7, Ex. 4.

### 2.    Plaintiff Troiano

Plaintiff Troiano claims that "in 2017 [she] began to receive notices from Defendants the MTA and Port Authority, indicating that tolls had not been paid by her EZ Pass account."

---

they filed the Complaint.  *Accord Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 984 F. Supp. 2d 246, 249 (S.D.N.Y. 2013); *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  Additionally, and as discussed in the Motion to Dismiss of the New York State Thruway Authority, the Court may properly consider extrinsic facts in its Article III standing analysis.

[7] The invalid TBTA tag used to commit TBTA toll violations is from Anna Lee Nowierski's E-ZPass account, not his own account.  Ms. Nowierski's tag had a negative balance when used, a history of invalid tag retentions, and the credit card associated with the tag was blocking payment.

[8] "Bressler Decl." refers to the Declaration of Anne Marie Bressler in Support of Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority's Motion to Dismiss Complaint, dated September 14, 2018 and filed herewith.

[9] Bressler Decl. ¶ 6, Exh. 3.

Compl., ¶ 84.  She attached as Exhibit 1 a list of tolls and fees related to crossings at TBTA (and

Port Authority) facilities from May 17, 2017 to November 4, 2017.  *Id.* at Ex. 1.

Plaintiff Troiano was sent Tolls by Mail bills because she did not have an E-ZPass tag

physically in the vehicle used for the crossings.  The license plate, moreover, was not linked to a

valid E-ZPass account; had it been, ITOLs would have been charged to that account.  She

received Tolls by Mail bills from June to December 2017 and Notices of Violation from August

to February 2018.  Bressler Decl. ¶¶ 8-9, Exs. 5-6.  In total, TBTA accepted payment of

$1401.00 for tolls owed and $1,455.00 in violation fees; $1560.50 in unpaid Tolls by Mail tolls

were transferred to her Thruway E-ZPass account and the remaining violation fees ($25,995.00)

were dismissed.  *Id.* ¶ 11, Ex. 7.

### 3.    Plaintiff Gardner

Plaintiff Gardner claims that "in 2017, [he] began to receive notices from Defendants the

MTA and Port Authority claiming that he owed hundreds of dollars for crossing New York's

bridges and tunnels."  Compl., ¶ 101.  As part of his allegations, Gardner includes a list of tolls

and fees related to crossings at TBTA (and Port Authority) facilities from August to November

2017.  *Id.* at ¶ 102.  Gardner in fact was assessed violation fees because he was using an invalid

Maryland Transportation Authority E-ZPass tag with a negative balance; like the other Plaintiffs,

Gardner does not allege use of a funded E-ZPass tag.  Gardner was mailed Notices of Violation

from September 2017 to January 2018.[10]  Bressler Decl. ¶¶ 12-13, Exs. 8-9.  Gardner paid all

---

[10] When disputing the violation fees assessed in August 2017, Gardner wrote (from a Pennsylvania address) that he "[r]eceived the . . . Violation in the mail [but] was working in New York for the past Two month and arrived home on the 1st of October to find this . . . ."  Bressler Decl. ¶ 15, Exh. 10.  Despite writing in October, he continued to use a tag linked to his Maryland E-ZPass account with a negative balance and incurred more violation fees thereafter.

$59.50 in tolls and TBTA agreed to resolve the violation fees ($500.00) with Gardner for a total of $34.00.  *Id.* ¶ 16, Ex. 11.

### 4.    Plaintiff Ritchie

Plaintiff Ritchie claims that "[u]ntil November 2017, [she] never [had] any significant problems with Tolls-By-Mail."  Compl., ¶ 109.  Though the bulk of her allegations are directed at the Thruway, she adds that "MTA claims [she] owes $108.50 [which] includes improper fees" and that she "had not been notified of the tolls before February 2018."  *Id.* at ¶¶ 117 and 118.  In fact, in April 2017 Plaintiff opted to receive toll bills via email.  She was emailed the Tolls by Mail bill with the lone TBTA toll at issue on October 14, 2017.  After the bill was ignored, a Notice of Violation was mailed to her on December 13, 2017.  Bressler Decl. ¶¶ 17, 19, Exs. 12-13.

### 5.    Plaintiff Rojas

Plaintiff Rojas alleges that "in early April 2018, [she] received several letters from the Port Authority of New York and New Jersey indicating that she owed money for tolls and that a notice of enforcement action had been previously sent to her."  Compl., ¶ 125.  She also claims she accessed her E-ZPass account on April 10, 2018 and it showed that "the MTA and Port Authority had charged her with ten violations."  *Id.* at ¶ 126.  Days later, she claims, the "number of the violations . . . had multiplied" on the website.  *Id.* at ¶ 127.

Plaintiff omits that all but one[11] of her violations were from not paying Tolls by Mail bills that were sent to a College Point, New York address that Plaintiff did not update until March

---

[11] Plaintiff Rojas also received TBTA Notices of Violation in November 2017 and January 2018 associated with use on November 7, 2017 of an invalid E-ZPass tag from the New Jersey Customer Service Center.
Plaintiff Rojas claims that violations multiplied in a matter of days.  The exhibits attached to the Complaint are being misrepresented.  Exhibit 3 chronologically precedes Exhibit 2 on the website that Plaintiff Rojas accessed; Exhibit 3 represents her violations while Exhibit 2 is a screen shot of a page that follows Exhibit 3 and shows only the transactions that Plaintiff Rojas selected for payment.

2018 to a Maspeth, New York address.  Tolls by Mail bills associated with TBTA crossings were mailed to Plaintiff from March to February 2018.  Bressler Decl. ¶ 20, Ex. 14.  Notices of Violation associated with those crossings were mailed to Plaintiff from May to April 2018.[12]  *Id.* ¶ 21, Ex. 15.

### III.   <u>ARGUMENT</u>

To state a claim and survive a 12(b)(6) motion to dismiss, Plaintiffs must plead allegations demonstrating that it is plausible, not just possible, that Defendants are liable for the alleged causes of action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Where a complaint names multiple defendants, it must provide a plausible factual basis to distinguish the conduct of each defendant.  *Yukos Capital S.A.R.L. v. Feldman*, No. 15-cv-4964 (LAK), 2016 U.S. Dist. LEXIS 125287, at *10 (S.D.N.Y. Sept. 14, 2016).   A complaint fails to provide fair notice by "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct."  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).[13]  In ruling on a motion to dismiss, the Court may consider "any documents incorporated in the complaint by reference."  *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 984 F. Supp. 2d 246, 249 (S.D.N.Y. 2013) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)).  Even where a document is not incorporated by reference, the court may consider it where the complaint "relies heavily upon its terms and

---

[12]Plaintiff Rojas added her license plate number, ending in 130, to Frank Cerquin's TBTA E-ZPass account on April 10, 2018 so that ITOLs could be charged provided the account is currently funded.
[13] *See Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*, No. 12 Civ. 2837 (KBF), 2012 U.S. Dist. LEXIS 172208, at *12-18 (S.D.N.Y. Nov. 28, 2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013) (failure to isolate key allegations against each defendant supports dismissal).

effect," making the document "integral" to the complaint.  *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).

### A.    Plaintiffs Do Not Have Article III Standing

Plaintiffs bear the burden of establishing Article III standing and must establish that (1) they suffered an injury-in-fact, (2) fairly traceable to a party's challenged conduct, and (3) likely to be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  As to traceability, Plaintiffs must show "a causal connection between the injury and the conduct complained of . . . to the challenged action of the defendant . . . ."  *Id.* at 560 (internal quotations omitted).  This showing must be made affirmatively (and not as an inference).  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).[14]

### 1.    E-ZPass Users Have Not Alleged Article III Standing

To the extent any claim is premised on use of an E-ZPass tag, Plaintiffs fail to allege an injury traceable to TBTA or MTA because no Plaintiff alleges receiving a violation fee *despite using a tag linked to a funded E-ZPass account*.  Compl., ¶¶ 67-133; *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) (a plaintiff cannot establish Article III standing where plaintiff is the cause of its own injury).

TBTA Rules and Regulations impose violation fees when an E-ZPass tag with a negative balance is used.[15]  Plaintiffs further admit they were given notice that by using an "Account [when] in a negative balance, suspended or revoked, or after the Tag has been reported lost or stolen, you may incur administrative fee[s] . . . ."  Compl., ¶ 136.  Instead of alleging that they

---

[14] *Warth v. Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences . . . .").
[15] 21 NYCRR § 1021.3(a)(1) and (b).

were assessed violation fees despite using tags linked to funded E-ZPass accounts,[16] Plaintiffs take the position that "[t]he underlying reason for any particular purported toll violation is irrelevant . . . ." *Id.* at ¶ 137.  At most, Plaintiffs allege that "[i]n many cases, Defendants' equipment registers a 'violation' even where a valid, fully funded EZ Pass account is in existence" and later admit fees may be assessed "if an EZ Pass Account is not adequately funded due to an expired or cancelled credit card . . . ." *Id.* at ¶¶ 138 and 143.  Though Plaintiffs claim the "underlying reason . . . is irrelevant," they must allege assessment of a violation fee in spite of using a tag from a funded E-ZPass account, or explain why a fee is the fault of TBTA or MTA, to show a causal connection.  As it stands, Plaintiffs with claims premised on E-ZPass tags do not allege why fees were the fault of TBTA or MTA.

### 2.     Tolls By Mail Users Do Not Have Article III Standing

Though Plaintiffs using Tolls by Mail generally claim they did not receive notice of underlying tolls before receiving Notices of Violation, records confirm toll bills were mailed or emailed.  Plaintiff Troiano suggests she was assessed violation fees while using an E-ZPass tag; in fact, she did not have an E-ZPass tag in her vehicle and the vehicle's plates were not linked to a valid E-ZPass account.  Thus, she received Tolls by Mail bills.  Bressler Decl. ¶ 8, Ex. 5.  Plaintiff Ritchie opted to receive her Tolls by Mail bills by email and received a toll bill for a crossing at a TBTA facility.  *Id.* ¶¶ 17, 19, Exs. 12-13.  Plaintiff Rojas suggests she was using an E-ZPass account when in fact, she did not even become eligible for ITOLs until she listed her license plate number on Frank Cerquin's E-ZPass account in April 2018, approximately when she updated her address with the DMV; before this, she was mailed Tolls by Mail bills (except

---

[16] TBTA Rules and Regulations expressly provide that toll violations and associated fees "shall be dismissed" if the owner provides a certification that the "toll was paid by E-ZPass and the toll posted to an E-ZPass account…." 21 NYCRR § 1021.3(d)(2).

for her New Jersey E-ZPass tag violation in November 2017). *Id.* ¶ 20, Ex. 14.  Tolls by Mail

Plaintiffs do not have standing.[17]

### 3. MTA Is Not Responsible For the Alleged Conduct

Plaintiffs purport to bring their case "on behalf of [those] who have been charged fees as

a result of using New York's cashless toll systems . . . for **bridges, tunnels, and roads operated**

**by** the Metropolitan Transportation Authority [and, among others] the Triborough Bridge and

Tunnel Authority . . . ."  Compl., ¶ 1 (emphasis added).  MTA and TBTA are "referred to,

together, as the 'MTA'" in the Complaint.  *Id.*  Though Plaintiffs conflate MTA and TBTA, they

are in fact separate and distinct legal entities.  MTA must be dismissed because "as a matter of

law . . . the functions of the MTA with respect to public transportation are limited to financing

and planning, and do not include the **operation**, maintenance, and **control** of any facility."[18]

#### a. The Legal Distinction Between MTA and TBTA is Codified

TBTA is a separate "body corporate and politic constituting a public benefit corporation"

and "retain[s] full . . . control over all its projects, with the right and duty . . . to charge tolls and

collect revenues therefrom . . . ."  N.Y. Pub. Auth. Law § 552(1) and (2).  TBTA also has the

authority to charge tolls and fees.  *Id.* at § 553(12).  Among the "[p]owers of the authority" are

the power "[t]o acquire . . . maintain, **operate**, [and] improve" the tunnels and bridges at issue.

*Id.* at § 553(9) (emphasis added).

MTA too is a separate "public benefit corporation."  N.Y. Pub. Auth. Law §

1263(1)(a)(1).  Whereas the Public Authorities Law specifies TBTA's powers with respect to

---

[17] TBTA and MTA expect Plaintiff Troiano to argue that some fees are the result of the failure to implement requests to transfer tolls to an E-ZPass account and dismiss associated fees.  While such transfers and dismissals are provided as a courtesy for TBTA toll violations, TBTA and MTA do not process the requests, which are handled at the New York Customer Service Center, and, in any event, this does not excuse Plaintiff Troiano from ignoring multiple Tolls by Mail bills and accruing substantial fees for other toll transactions.  Bressler Decl. n.4.
[18] *Baxter v. Metropolitan Transp. Auth.*, No. 150978/2013, 2017 N.Y. Misc. LEXIS 3384, at *4-5 (Sup. Ct. NY Cty Sept. 5, 2017) (emphasis added).

bridges and tunnels, sections of the Public Authorities Law addressing MTA's powers say

nothing about TBTA's bridges and tunnels because MTA does not own or operate them.  *Id.* at §

1265.  Numerous courts have recognized that MTA is a distinct and separate entity from TBTA,

and its other affiliates and subsidiaries, with resulting legal consequences.[19]

    b.  *Plaintiffs Do Not Allege That Any Conduct is Traceable to MTA*

    Throughout the Complaint, Plaintiffs conflate *all* Defendants, making far reaching claims

such as "Defendants frequently impose these exorbitant charges without giving prior notice . . .

.."  *Id.* at ¶ 4.[20]  Nowhere do Plaintiffs allege what conduct is actually traceable to MTA.  Faced

with similar theories, courts have dismissed claims for lack of Article III standing.[21]  When any

conduct is specifically alleged, Plaintiffs do not claim it is traceable to MTA.  Plaintiff Ritchie,

---

[19] *See, e.g., NYPIRG Straphangers Campaign, Inc.*, 309 A.D.2d at 134 (TBTA is a public benefit corporation, "subject to its own statute," and is not subject to certain statutory notice requirements for fare and toll increases imposed on MTA as the ultimate decision on all these matters is committed to each agency's judgment); *Kinkopf v. Triborough Bridge & Tunnel Auth.*, 1 Misc. 3d 417, 421 (N.Y. Civ. Ct. 2003) (TBTA is "an agency created by the Legislature pursuant to title 3 of article 3 of the Public Authorities Law and exists separate and apart from the . . MTA . . ."); *Stampf v. Metropolitan Transportation Auth.*, 57 A.D.3d 222, 223 (1st Dep't 2008) (service of demand letter on Long Island Rail Road Company ineffective to toll time as to MTA because "MTA is a distinct legal entity"); *Wenthen v. Metropolitan Transp. Auth.*, 95 A.D.2d 852, 853 (2d Dep't 1983) ("Although the Long Island Railroad is a subsidiary corporation of [MTA], the railroad is a distinct legal entity for purposes of suit"); *Laughlin v. Metropolitan Transp. Auth.*, No. 160255/2013, 2014 N.Y. Misc. LEXIS 444, at *5 (Sup. Ct. NY Cty Jan. 29, 2014) ("the MTA is a distinct legal entity from Metro-North, for purposes of a suit").
[20] *See also* Compl., ¶¶ 60, 69, 73, and 85.
[21] *Jenkins v. Nat'l Grid USA*, No. 15-CV-1219(JS)(GRB), 2016 U.S. Dist. LEXIS 46095, at *15 (E.D.N.Y. Mar. 31, 2016) ("Although the Standing Defendants may be subsidiaries, the Amended Complaint does not indicate that their conduct is fairly traceable to any injury suffered by Plaintiffs."); *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 414 (N.D. Cal. 2009) ("Plaintiffs rely on the fact that they allege that all of the named Defendants engaged in the conduct alleged and caused each of them injury . . . [T]hese general allegations, without more, are insufficient to establish Plaintiff suffered an injury that is traceable to Homecomings."); *Akaosugi v. Behihana Nat'l Corp.*, No. C 11-01272 WHA, 2011 U.S. Dist. LEXIS 129786, at *8 (N.D. Cal. Nov. 9, 2011) ("Even if plaintiffs were able to establish that Benihana National and the subsidiaries are alter egos of one another, they have not presented any authority holding that such a demonstration would establish standing."); *Cervantes v. Countrywide Home Loans, Inc.*, No. CV 09-517-PHX-JAT, 2009 U.S. Dist. LEXIS 87997, at *10 (D. Ariz. Sept. 23, 2009) ("The only connection between Plaintiffs' loans and NCB is the phrase 'First Franklin, a Division of National City Bank' contained in Plaintiffs . . . deeds of trust . . . . [T]his is not the equivalent of NCB extending a loan to Plaintiffs, or otherwise participating in the loan origination process in violation of TILA."); *Dost v. Northwest Tr. Servs.*, No. 3:11-cv-00270-ST, 2011 U.S. Dist. LEXIS 150517, at *20-21 (D. Or. Dec. 21, 2011) ("Nothing in the pleadings alleges any injury to Dost that is 'fairly traceable' to Litton Loan Servicing's alleged conduct in acting as the servicer . . . . For like reasons, the claims against Goldman Sachs also should be dismissed . . . . The only allegations in the amended pleadings [are that] it had a partnership/ownership interest in Litton Loan Servicing . . . .").

for example, claims to have "over $1,500 of outstanding bills from NYSTA and **MTA Bridges and Tunnels**."[22]  Compl., ¶ 10 (emphasis added); *see also id.* at ¶ 88.  The claims must be dismissed against MTA because it is not and cannot be responsible for the alleged conduct.[23]

**B.     The Fees Do Not Violate the Eighth Amendment**[24]

**1.     Fees Are In Place to Secure Compliance and Not Subject to Challenge**

The Eighth Amendment does not apply where, as here, TBTA violation fees are in place to ensure that tolls are paid.[25]  This purpose is supported by the New York Public Authorities Law as well as the New York Codes, Rules and Regulations.  N.Y. Pub. Auth. Law § 553(5) authorizes TBTA "[t]o make . . . rules and regulations for the regulation of the . . . establishment **and collection** of tolls . . . ." (emphasis added).  TBTA has thus established a codified system with which to secure collection of tolls, which includes charging violation fees.  *See id.* at § 553(12); 21 NYCRR § 1021.3.  Consistent with the toll-securing purpose of the fees, Section 1021.3 contains provisions allowing alleged violators to contest the assessment of tolls and fees;

---

[22] TBTA in fact does business as MTA Bridges and Tunnels which Plaintiffs allege.  Compl., ¶ 1.

[23] Apart from Article III, numerous courts have dismissed MTA where – as here – it has been named as an improper party because liability, if any, would be limited to the operating affiliate or subsidiary.  *Baxter*, 2017 N.Y. Misc. LEXIS 3384, at *4-5 (dismissing MTA because it "may not be liable for torts committed by a subsidiary arising out of the operations of the subsidiary corporation"); *Dixion v. NYC Tr. Auth.*, 24 Misc. 3d 1227(a) (Sup. Ct. NY Cty 2009) (MTA "may not be liable for the torts committed by a subsidiary arising out of the operations of the subsidiary corporation"); *Davis v. NYC Tr. Auth.*, No. 400844/2008, 2009 N.Y. Misc. LEXIS 5344 (Sup. Ct. NY Cty July 20, 2009) (same); *Rampersaud v. Metropolitan Transp. Auth. of the State of New York*, 73 A.D.3d 888 (2d Dep't 2010) (same); *Fridman v. NYC Tr. Auth.*, 131 A.D.3d 1202, 1203-04 (2d Dep't 2015) (MTA and New York City Transit Authority "are separate public benefit corporations with different functions"); *Garretson v. Town of Islip*, No. 09-36382, 2012 N.Y. Misc. LEXIS 2021, at *10-11 (Sup. Ct. Suffolk Cty Apr. 10, 2012) (summary judgment in favor of MTA granted because "[i]t is well settled, as a matter of law, that the functions of the MTA with respect to public transportation are limited to financing and planning") (internal quotations omitted).

[24] Numerous courts have concluded the Eighth Amendment has not been incorporated against the states.  "First, in the most recent case on the matter, the Supreme Court stated that the Clause had not been incorporated. . . . Second, two of the most respected treaties on constitutional law state that it has not been incorporated."  *See* NOWAK AND ROTUNDA § 14.2(a); CHEMERINSKY at 505; *Reyes v. N. Tex. Tollway Auth.*, 830 F. Supp. 2d 194, 207 (N.D. Tex. 2011).  By virtue of not being incorporated a "state-created entity . . . could not have violated it."  *Id.* at 208.

[25] *St. Vendor Project v. City of New York*, 10 Misc. 3d 978, 982 (Sup. Ct. NY Cty 2005) ("Eighth Amendment has been held inapplicable to . . . sanctions intended to secure compliance") (internal quotations omitted); *Kirsh v. City of N.Y.*, No. 94 Civ. 8489, 1995 U.S. Dist. LEXIS 8896, at *24 (S.D.N.Y. June 27, 1995) ("Eighth Amendment does not apply to sanctions intended to secure compliance . . . .").

tolls and fees "shall be dismissed" for specific enumerated bases set out in Section 1021.3(d) and "for other good cause shown." *Id.* at (d)(1)-(4). As several named Plaintiffs found, TBTA in fact substantially waives fees if not totally dismissed.

Courts have concluded that similar mechanisms in place to secure compliance are not subject to Eighth Amendment scrutiny. In *Board of Health Pub. Review Comm.*, for example, petitioners sought to hold fines and fees imposed by the Board of Health of the City of New York as excessive. *Bd. of Health Pub. Review Comm. v. NYC Bd. of Health of the City of N.Y.*, No. 100847/2013, 2014 N.Y. Misc. LEXIS 3970, at *1 (Sup. Ct. NY Cty Sept. 4, 2014). The Board of Health was authorized to "exercise all powers of a local health department set forth in law" and to "publish additional provisions . . . and may provide for the enforcement of the health code . . ." *2-3 (quoting NYC Charter §§ 551(a) and 558(b)). Health Code Section 3.11(a) also provided for a penalty "of not less than two hundred and not more than two thousand dollars for each violation . . . . Each such violation shall be a separate and distinct offense, and in the case of a continuing violation, each day's continuance thereof shall be a separate and distinct offense." *Id.* at *6. "[T]he fines are not a penalty . . . but, rather, are instituted to secure compliance . . . . The amount of the fines are not open to challenge . . . ." *Id.* at *24-25.[26]

## 2. Courts May Not Disturb the Fees At Issue

Since 1968, TBTA has used surplus toll revenue to support MTA's integrated public transportation network; by law, TBTA pays its operating expenses first and bondholders second, with any surplus then used to support public transit. N.Y. Pub. Auth. Law §§ 553(12), 569-c.

---

[26] *See also Kirsh*, 1995 U.S. Dist. LEXIS 8896, *23-24 (Excessive Fines Clause did not apply where property was placed in control of administrator pursuant to NYRPAPL § 778 because "sanctions intended to secure compliance" are not subject to Eighth Amendment scrutiny); *N.Y. State Fed'n of Taxi Drivers, Inc. v. City of New York*, 270 F. Supp. 2d 340, 343 (E.D.N.Y. 2003) (skeptical that fines imposed by the New York City Taxi and Limousine Commission are subject the Eighth Amendment); *Manbeck v. Town of Lewisboro*, No. 05 Civ. 4576 (CLB)(GAY), 2008 U.S. Dist. LEXIS 109123, 21 (S.D.N.Y. Mar. 4, 2008) (skeptical that administrative penalties assessed under town wetland law are subject to the Eighth Amendment).

Accordingly, courts have rejected attempts to challenge tolls.  In *Carey Transp. v. Triborough Bridge & Tunnel Authority*, 38 N.Y.2d 545 (1976), for example, a lower court's decision enjoining TBTA from charging higher tolls for special purpose buses was reversed.  "[T]he Legislature has granted an unlimited toll-fixing power to the Authority with explicit provision for a surplus, and . . . an expectation that at least a part of any surplus be used for subsidizing general mass transportation."  *Id.* at 552-53.  Though its broad power may be subject to correction, "[t]he courts are not . . . appropriate to make such correction . . . ."  *Id.* at 553.[27] Consistent with *Carey* the violation fees are not subject to challenge.

### 3.    Plaintiffs Do Not Allege The Fees Are Punitive

Plaintiffs' excessive fines claim must also be dismissed because Plaintiffs do not allege the fees are punitive.  In their June 28th letter, Plaintiffs claim a fee is subject to review if it "serves both remedial and punitive goals."  ECF No. 73.  Even if Plaintiffs were correct, they failed to allege that fees are "punitive."  Instead, they describe the fees as "administrative."[28]  *See also* 21 NYCRR § 1021.3(b) (describing "administrative fee, known as the toll violation fee").

---

[27] *See also D'Angelo v. Triborough Bridge & Tunnel Authority*, 106 A.D.2d 128 (1985) (order reversing the denial of TBTA's motion to dismiss in case involving toll rate increase); *NYPIRG Straphangers Campaign, Inc. v. Metro. Transp. Auth.*, 309 A.D.2d 127, 139 (1st Dep't 2003) (citing *Carey*, 38 N.Y.3d 545 and noting that "TBTA has 'unlimited toll-fixing power'" and "is free to conduct its affairs without judicial interference"); *Matter of Prometheus Realty Corp. v. NYC Water Bd.*, 30 N.Y.3d 639, 646 (2017) (reversing lower court order and noting that "case law holds that a utility has 'unfettered discretion to fix [rates] as it will'"); *Patterson v. Carey*, 41 N.Y.2d 714, 720 (1977) (invalidating State statute which rolled back a parkway toll because it interfered with rights of bondholders; "[s]ince the toll is the sole source of funds for bond repayment, any limitation on the authority's power to collect a toll . . . deprives the bondholders of an essential attribute of their contract"); *NYPIRG v. New York State Thruway*, 77 N.Y.2d 86 (1990) (citing *Patterson*, 41 N.Y.2d 714 and invalidating similar statute requiring Comptroller to supervise Thruway's toll increases); *Elmwood-Utica Houses, Inc. v. Buffalo Sewer Authority*, 65 N.Y.2d 489, 497 (1985) (Buffalo Sewer Authority rates classification held to be constitutional and noting that "the Legislature has conferred virtually unfettered power upon BSA").

[28] Compl., ¶¶ 157, 233, 238.  Cases on which Plaintiffs relied in their June 28, 2018 letter are not controlling and are dissimilar.  Plaintiffs in *Dubin v. Cty of Nassau*, 277 F. Supp. 3d 366 (E.D.N.Y. 2017), for example, "asserted that the DRF has a punitive purpose."  *Id.* at 403.  *See also von Hofe v. United States*, 492 F.3d 175, 182 (2d Cir. 2007) ("Section 881(a)(7) forfeitures deter and punish property owners who allow their property to facilitate a drug-related crime and therefore fall within the scope of the Excessive Fines Clause….[T]here is no question that the forfeiture of 32 Medley Lane, brought under 21 U.S.C. § 881(a)(7), is a fine."); *Korangy v. U.S. FDA*, 498 F.3d 272, 277 (4th Cir. 2007) ("Assuming that the penalties are at least partially punitive . . . we cannot conclude that penalties imposed are grossly disproportionate . . . ."); *Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804, 808-09 (D. Md. 2008) (no

### 4.      The Fees Can Be Avoided

The Eighth Amendment is inapplicable where, as here, "the offending individual has the power to mitigate the accrual of fines or penalties."[29]  Plaintiffs had, and continue to have, the power to avoid violation fees.  Plaintiffs using E-ZPass tags can avoid violation fees by using E-ZPass tags linked to funded accounts; Plaintiffs do not include a single allegation confirming that any were using E-ZPass tags linked to funded accounts and that, despite this, violation fees were assessed.  With respect to Tolls by Mail, Plaintiffs can avoid fees altogether by paying tolls – though Plaintiffs generally allege not timely receiving toll bills, records reflect the opposite.  Plaintiffs also have methods by which to challenge fees and negotiate the amounts, and which Plaintiffs Farina, Gardner, and Troiano in fact have taken advantage of.[30]  *See* Bressler Decl. ¶¶ 7, 11 & 16, Exs. 4, 7 & 11.

### 5.      Plaintiffs' Rights to Challenge the Fees Have Not Been Infringed

Plaintiffs have several methods by which to challenge, and escalate, challenges to tolls and fees.  They include complying with instructions in Notices of Violation, challenging fees with TBTA, and ultimately the opportunity to challenge fees in an Article 78 proceeding.  21

---

discussion regarding whether defendant conceded or disputed whether citation was subject to the Eighth Amendment and concluding that it was not excessive).

[29] *St. Vendor Project*, 10 Misc. 3d at 982; *Kirsh*, 1995 U.S. Dist. LEXIS 8896 at *24; *Berry v. N.Y. State Dep't of Taxation & Fin.*, No. 158919/2016, 2017 N.Y. Misc. LEXIS 2440, at *21 (Sup. Ct. NY Cty June 12, 2017).

[30] Courts have taken similar mechanisms into account and concluded that fines are not subject to challenge.  *See e.g. Berry*, 2017 N.Y. Misc. LEXIS 2440, at *21 ("The record indicates the continued availability for plaintiff to apply for the Offer in Compromise Program . . . . These factors militate against a finding that the suspension . . . . constitutes a fine in violation of the U.S. and New York Constitutions."); *Seril v. N.Y.S. Div. of Hous. & Cmty Renewal*, 205 A.D.2d 347 (1st Dep't 1994) ("We reject petitioners' excessive fine claim, since it was, and continues to be, a matter of their own choice to do what is necessary to correct the conditions that led to the findings . . . ."); *Kirsh*, 1995 U.S. Dist. LEXIS 8896, at *24 ("The Kirshes' failure to demonstrate to the Housing Court that they should be restored full ownership of the property . . . precludes this Court from reviewing whether the continuation of 7A proceedings against the property constitutes an excessive fine.").

NYCRR § 1021.3(d)-(f).[31]  No Plaintiff alleges infringement or exhaustion of these mechanisms and their claim thus fails.[32]

### 6.    The Fees Are Not Grossly Disproportionate

Even if it were proper to subject the violation fees to Eighth Amendment scrutiny, Plaintiffs' claim fails because the fees are not grossly disproportionate to the gravity of the offense or the burdens placed upon TBTA revenue collection by toll violations[33] –fees of $50 or $100 secure compliance with payment of underlying tolls so that TBTA can satisfy its statutory mandate to collect sufficient revenue to meet the expenses of maintaining and operating TBTA's toll facilities, fulfilling its agreements with bond holders and providing support for the MTA's integrated transportation network.  Public Authorities Law §553(12).  Coupled with the ability to reduce fees, as several Plaintiffs here did, the fees are reasonable.

Similar fees have been held constitutional.  In a case involving charges for 157 separate toll violations with fees of between $50 to $500, one court noted:

> comparing the fine to the unpaid toll as the measure of
> proportionality inadequately accounts for the full nature of the
> harm caused by the alleged violations.  That comparison ignores
> the fact that repeated violations undermines a significant source of
> funding for the construction, maintenance and improvement of this
> region's transportation infrastructure . . . . Non-paying drivers add
> to congestion on the roadway to the detriment of toll-paying
> drivers.  Also, when some drivers repeatedly use the road without
> paying, others will be less willing to pay tolls.  Thus, toll violations
> undermine the value of the Dulles Toll Road to users as well as

---

[31] Upon receipt of a Tolls by Mail bill, individuals can challenge tolls.  Individuals (with Tolls by Mail or E-ZPass violations) can also challenge tolls and fees by following instructions in Notices of Violation.

[32] *Kirsh*, 1995 U.S. Dist. LEXIS 8896, at *23 ("The Kirshes have failed to state an imposition of excessive fines because they have not stated any infringement of their rights under state law to move in Housing Court to alleviate the imposition of penalties.").

[33] Under N.Y. Pub. Auth. Law § 553(5), toll evaders can also be issued summonses returnable at the New York City Traffic Violations Bureau, where they face a total penalty of up to $110 (fine of up to $25 with a surcharge of $85).

threaten the integrity of a toll-based funding mechanism as a means to meet transportation needs.[34]

C.   **Plaintiffs Do Not Have a Procedural Due Process Claim**

1.   **A Property Right Is Not At Issue**

Fees of $50 or $100 do not infringe on a property right.  *Krieger v. City of Rochester*, 42 Misc. 3d 753, 770 (Sup. Ct. Monroe Cty. 2013) ("[T]he modest $50 penalty is not so substantial as to infringe upon a person's private property rights.").  If a property right is even at issue, it is a "modest" one for which adequate procedures are in place.[35]

2.   **Adequate Procedures Are in Place And Plaintiffs Allege Notice**

Plaintiffs have failed to allege a procedural due process claim against either TBTA or MTA because adequate procedures are codified and repeated in toll bills as well as notices of violation.  A Notice of Violation may be disputed by "submitting a declaration of dispute to the authorized agent . . . ."  21 NYCRR § 1021.3(d).  The Rules and Regulations further provide that the violation and fee "shall be dismissed" if the individual or business provides a certification attesting to specific conditions, such as the individual or business not being the registered owner of the vehicle.  *Id.*  Additionally, the Rules and Regulations allow for dismissal "for other good cause shown."  *Id.*  If a Notice of Violation is challenged, "[t]he authorized agent shall send the owner a written determination of the declaration of dispute" and the owner has opportunities to dispute an unsatisfactory determination with TBTA and thereafter in court.  *Id.* at § 1021.3(f).

---

[34] *Metro. Wash. Airports Auth. v. Hagarty*, 92 Va. Cir. 307, 312 (Va. Cir. Court Fairfax Cty 2016); *see also St. Vendor Project*, 10 Misc. 3d at 983 (Sup. Ct. NY Cty 2005) (schedule increasing penalties imposed on street vendors to a maximum of $1,000 per violation not "grossly disproportionate to the gravity of the offenses, including recidivism.  Neither have they shown that the amounts of the fines are not reasonably related to the permissible goal of deterrence").

[35] *Dubin*, 277 F. Supp. 3d at 389 ("A $45 fee does not involve substantial property rights."); *Idris v. City of Chi.*, 552 F.3d 564, 566 (7th Cir. 2009) ("The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property interest so modest is a fundamental right.").

Codification of these procedures is sufficient[36] and similar procedures have been held to satisfy due process.[37]  Though the Rules and Regulations suffice, procedures and instructions for challenging violation fees were also included in the Notices of Violation, *which Plaintiffs allege receiving* (Compl., ¶¶ 68, 84, 102-104, 116-117, 125-129).[38]

### 3.    Remedies Have Not Been Exhausted

In addition to not having alleged compliance with instructions in the Notices of Violation, no Plaintiff has alleged exhaustion of remedies.  Consequently, their claims are not ripe.  *Dubin v. City of Nassau*, 277 F.Supp.3d 366, 390 (E.D.N.Y. 2017) (Plaintiffs failed to pursue "available and adequate pre-deprivation procedure that may have avoided the DRF injury that led to this lawsuit.  As a result, plaintiffs have not pled a procedural due process violation."); *Gardner v.*

---

[36] *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 600 (7th Cir. 2016) ("[T]he statute or regulation is adequate notice in and of itself as long as it is clear."); Section 1021.3 also makes clear that a vehicle owner "crossing a bridge or tunnel without paying the crossing charge . . . . commits a violation of toll collection regulations."  21 NYCRR § 1021.3(a).  Among other things, the Rules and Regulations disclose applicable violation fees of $50.00 or $100.00 based on the bridge or tunnel crossed.  *Id.* at § 1021.3(b).  Information is also available and easily accessible on the internet.  *See e.g.* http://www.mta.info/news-cashless-tolling-faq/2017/10/16/cashless-tolling-faq; http://web.mta.info/bandt/cashless/.

[37] *Van Harken v. City of Chi.*, 103 F.3d 1346, 1350 (7th Cir. 1997) (procedures constitutional where vehicle owner could pay fine or challenge ticket, and if challenge failed, seek judicial review); *Gardner v. City of Cleveland*, 656 F.Supp.2d 751, 759 (N.D. Ohio 2009) (due process satisfied where recipient of parking violation notices had ability to challenge through administrative proceeding and appeal finding to Court of Common Pleas); *Balaban v. City of Cleveland*, No. 1:07-cv-1366, 2010 U.S. Dist. LEXIS 10227, at *17 (N.D. Ohio Feb. 5, 2010) (no procedural due process claim where traffic camera program allowed for administrative hearing and appeal to courts); *Joiner v. Gasparilla Island Bridge Auth.*, No. 2:16-cv-467, 2016 U.S. Dist. LEXIS 175719, at *8-10 (M.D. Fla. Dec. 20, 2016) ("[o]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise" and holding that "an adequate state remedy exists" where plaintiffs could challenge forfeitures under toll system in Florida courts); *Pellegrino Food Prods. Co. v. City of Warren*, 136 F. Supp. 2d 391, 402 (W.D. Pa. Dec. 6, 2000) ("We dismiss Plaintiffs' procedural due process claims against the City Defendants.  As a matter of law in this Circuit, adequate due process is afforded when a state provides reasonable remedies to rectify a legal error by a local administrative body."); *Nestle Waters N. Am., Inc. v. City of New York*, No. 15-cv-05189-ALC, 2016 U.S. Dist. LEXIS 70694, at *30-31 (S.D.N.Y. May 25, 2016) (review process offered by Parking Violations Bureau and through Article 78 proceeding sufficient to satisfy procedural due process in case alleging defendant had a policy of issuing and enforcing jurisdictionally defective parking summonses).

[38] "[A]lthough due process does not require actual notice, actual notice satisfies due process - - so long as that notice 'apprises [a party] of the pendency of the action and affords [it] an opportunity to respond.'"  *Oneida Indian Nation v. Madison County*, 665 F.3d 408, 429 (2d Cir. 2011).

*City of Cleveland*, 656 F. Supp. 2d 751, 760 (N.D. Ohio 2009) (procedural due process claim

barred where plaintiff did not "pursue the post-deprivation process offered under state law.").[39]

### D.    Plaintiffs Fail to State a GBL §§ 349-350 Claim

#### 1.    Toll Collection Is Not a Consumer-Oriented Transaction

Numerous courts have determined that toll collection is not consumer-oriented as a

matter of law.  *See, e.g., Kinkopf*, 6 Misc. 3d 73, 74 (2d Dep't 2004); *St. Pierre v. Retrieval-*

*Masters, Inc.*, No. 15-2596 (FLW) (DEA), 2017 U.S. Dist. LEXIS 42875, at *25 (D.N.J. Mar.

24, 2017), *aff'd, St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17-1731 and 17-

1941, 2018 U.S. App. LEXIS 21908 (3d Cir. Aug. 7, 2018); *Yazo v. Law Enforcement Sys.*, No.

CV 08-03512 DDP (AGRx), 2008 U.S. Dist. LEXIS 93345, at *9 (C.D. Cal. Nov. 7, 2008)

("…the Court cannot conclude that the obligation to pay [tolls] arose out of a consensual

consumer transaction….").  Because toll collection is by judicial definition not consumer-

oriented, the Plaintiffs' cause of action under GBL §§ 349-350 must be dismissed.

#### 2.    TBTA and MTA Did Not Materially Mislead Plaintiffs

The Complaint also fails to allege that any notice or communication from TBTA or MTA

was materially misleading in any way, requiring dismissal of Plaintiffs' claim.[40]  Rather than

being misled, Plaintiffs even relied upon the information set forth in the notices regarding when

and where plaintiffs incurred each toll and the amount when drafting the Complaint.  *Id.* ¶¶ 70,

---

[39] To the extent Plaintiffs' claim is premised on the theory that a grace period was required before a violation fee was assessed, the theory fails.  Though Tolls by Mail users in fact were given a grace period, as are E-ZPass users under a pilot program, lack of a grace period is not a procedural due process violation.  *See e.g. Cochran v. Ill. State Toll Highway Auth.*, No. 14-CV-9145, 2015 U.S. Dist. LEXIS 39734, *9 (N.D. Ill. Mar. 27, 2015) ("Cochran . . . was given more process than was required: he was given a grace period for each missed toll").

[40] *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (dismissal of GBL § 349 claim warranted where notice is deemed adequate); *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244 (KPF), 2014 U.S. Dist. LEXIS 94004, at *22 (S.D.N.Y. July 9, 2014) ("Where a defendant 'fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff,' an action under GBL § 349 will not lie"); *Sands v. Ticketmaster-New York*, 207 A.D.2d 687, 687-88 (1st Dep't 1994) (dismissing GBL claim because allegedly "excessive" fees were disclosed).

86, 102, and 137.  The notices, moreover, set forth the procedures for disputing any of the information in the notices and Plaintiffs concede that they took advantage of the processes to resolve their fees at a substantial discount.  *See, e.g.*, Compl. ¶¶ 71-72, 78-79 (Farina), ¶¶ 84, 89 (Troiano), ¶¶ 101-107 (Gardner), ¶¶ 116-118 (Ritchie), ¶¶ 125, 132 (Rojas); Bressler Decl. ¶¶ 7, 11 & 16, Exs. 4, 7 & 11.

In their June 28, 2018 letter, Plaintiffs contend that the notices were misleading because "Defendants misrepresented the true amount owed" by "sending notices to Plaintiffs that included fees that accumulated only through Defendants' failure to notify Plaintiffs sooner after their first purported violation."  (ECF No. 73 at 7-8.)  Plaintiffs, however, were not entitled to a grace period for E-ZPass and Tolls by Mail violations.  With regard to E-ZPass, Plaintiffs were on notice by virtue of 21 NYCRR § 1021.3(a) and their E-ZPass Terms and Conditions that violation fees would be imposed if an invalid E-ZPass tag is used to cross a toll facility.  In the case of Tolls by Mail, registered vehicle owners received two toll bills prior to receiving Notices of Violation and being assessed violation fees.  Furthermore, there is no legal requirement that some form of post-violation notice *precede* assessment of a violation fee like those at issue here. Moreover, even conceding *arguendo* that the notices were "so untimely that [they] failed to serve [their] purpose," ECF No. 73 at 8, and would not qualify them as "deceptive" within the meaning of GBL §§ 349-350.  *See Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 961, 598 N.Y.S.2d 761, 762 (1993).[41]

---

[41] TBTA and MTA join in and adopt the arguments of the other Defendants on this issue, including that Plaintiffs failed to allege injury as a result of deceptive conduct.  In further support, TBTA and MTA submit *Ovitz v. Bloomberg L.P.*, 18 N.Y.3d 753, 760 (2012) (affirming dismissal of GBL § 349 claim for lack of injury).

### E.       Plaintiffs' Breach of Contract Claim Must be Dismissed

To state a cause of action for breach of contract, a plaintiff must allege: (1) existence of a contract; (2) its performance under the contract; (3) defendant's failure to perform; and (4) damages. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017). Plaintiffs cannot recover under this theory because their obligation to pay TBTA tolls and violation fees arises out of operation of law, not contract. Moreover, Plaintiffs have not alleged an "E-ZPass Contract" with TBTA or MTA or that either breached such "E-ZPass Contract."

### 1.       Plaintiffs' Obligation to Pay Tolls Arises From Statute, Not Contract

TBTA's Rules and Regulations impose liability for tolls and violation fees upon the vehicle's registered owner, not the account holder who may have an E-ZPass Contract. 21 NYCRR §1021.3(a). But even if the owner and the account holder are the same person, it is well-settled that "a covenant to do what one is already under a legal obligation to do is not sufficient consideration" for a contract. *Blandford Land Clearing Corp. v. Nat'l Union Fire Ins. Co.*, 260 A.D.2d 86, 94 (1st Dep't 1999).   Public Authorities Law § 553 authorizes TBTA to make rules and regulations for the establishment and collection of tolls and fees, which have the force of law. *See Allstate Ins. Co. v. Rivera*, 12 N.Y.3d 602, 608 (2009).  TBTA Rules and Regulations condition use of TBTA's bridges and tunnels upon payment of prescribed tolls. 21 NYCRR §§ 1020.7, 1023.7.  They also establish toll rates and violation fees and even include a regulation requiring that motorists obey and comply with provisions of any posted sign, including those advising that tolls will be billed by mail. 21 NYCRR §§ 1020.8, 1021.1, and 1021.3.  Plaintiffs have not alleged any consideration other than tolls and fees, which are a statutory obligation. The breach of contract claim thus fails for lack of consideration.[42]

---

[42] *See Blandford Land Clearing Corp.*, 260 A.D.2d at 94 ("If anything, the independent obligation imposed by operation of law defeats" the alleged contract."); *Yazo*, 2008 U.S. Dist. LEXIS 93345, at *7 ("Because these are

### 2.    No Claim Premised on Alleged "E-ZPass Contract"

#### a.    *No Plaintiff Alleges an E-ZPass Contract with TBTA or MTA*

Unlike the Public Authorities Law and TBTA regulations, which establish toll rates and violation fees, the "E-ZPass Contract" merely consists of Terms and Conditions, *i.e.*, the terms and conditions of one's use of an E-ZPass tag to pay tolls.  The Terms and Conditions state that New York-based E-ZPass accounts "will be assigned to" either TBTA, Port Authority, or NYSTA, and an accountholder's "Agreement is with that particular agency."  Compl. ¶¶ 21-22.  Though the obligations at issue arise out of operation of law and were imposed upon vehicle owners, not E-ZPass account holders, the breach of contract claim also fails because no Plaintiff alleges a valid E-ZPass agreement with TBTA or MTA.

#### b.    *Plaintiffs Fail to Allege Breach of the E-ZPass Contract*

The Complaint generally claims "[t]he contract does not allow Defendants to charge Plaintiffs with administrative fees of $100 for using a properly installed transponder connected to a funded EZ Pass account which is simply not read."  Compl., ¶ 224.  No Plaintiff, however, alleges actually having a properly installed transponder linked to a funded TBTA E-ZPass account.  *Id.* at ¶¶ 67-133.  Any claim that "Defendants . . . breached the contract by adding fees and penalties for late payments for tolls which Defendants had not previously invoiced" is not supported by the E-ZPass Terms and Conditions or governing law, which make it an immediate violation to try to pay a toll with an E-ZPass tag that is invalid because the account is in negative

---

fines imposed as a result of a statutory violation, they were not incurred through a consensual transaction."); *St. Pierre*, 2017 U.S. Dist. LEXIS 42875, at *25-31 (requirement to pay tolls is an "obligation [that] arises out of operation of law" and "it is of no moment that Plaintiff had an Agreement with E-ZPass . . . since that Agreement is not the source of the obligation"); *Davis v. Joseph J. Magnolia, Inc.* 640 F. Supp. 2d 38, 44 n.4 (D.D.C. 2009) ("The Court [] rejects defendant's position . . . that its commitment to pay all costs of arbitration supplies consideration for the arbitration policy [because] defendant was already obligated by law to pay all costs of arbitration . . . ."); *Moreno-Avalos v. City Hall of Hammond*, No. 2:13-CV-347-TLS, 2015 U.S. Dist. LEXIS 10944, *14-15 (N.D. Ind. Jan. 30, 2015) (lack of consideration for agreement where defendants did not "receive[] a legal benefit from the agreement [as] Defendants' effort to enforce local ordinances was [] a legal right to which they were already entitled").

balance.  *Id.* at ¶ 136; 21 NYCRR § 1021.3(a)(1).  Additionally, nothing in the Terms and Conditions or any regulation requires TBTA to send an "invoice" or prohibits TBTA from assessing fees immediately, without a "grace period."    Because no Plaintiff alleged a contract with TBTA or MTA, or that TBTA or MTA breached that contract, they fail to state a claim.[43]

### F.    **Plaintiffs' Unjust Enrichment Claim Fails**

To state an unjust enrichment claim, Plaintiffs must plead: (1) defendant was enriched, (2) at plaintiff's expense, and (3) it is against equity and good conscience to permit defendant to retain what is sought to be recovered.  *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481, 787 N.Y.S.2d 49 (2d Dep't 2004).[44]  Plaintiffs' claim is defective for at least four separate reasons.

First, it is duplicative of defective tort and breach of contract claims.  "Courts in the Second Circuit have recognized that 'an unjust enrichment claim cannot survive where it simply duplicates or replaces, a conventional contract or tort claim."  *Alce v. Wise Foods, Inc.*, 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009, at \*29-30 (S.D.N.Y. Mar. 27, 2018).  *See also Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

---

[43] *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).  *See also Posner v. Minnesota Mining & Mfg. Co.*, 713 F. Supp. 562, 563-64 (E.D.N.Y. 1989) (dismissing breach of contract claim under the more lenient standard for *pro se* plaintiffs where "[a]lthough the existence of a contract is alleged, plaintiffs fail to set forth any specific information as to when the agreement was made, the terms of the agreement upon which liability is predicated, or any other evidence supporting formation of an agreement"); *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 U.S. Dist. LEXIS 11245, at \*3-5 (S.D.N.Y. Aug. 12, 1993) (denying breach of contract claim where plaintiff failed to plead the existence of a contract between the parties, alleged only that the lenders "agreed to advance funds," and failed to plead the terms of the contract).
To the extent Plaintiffs allege TBTA or MTA violated the implied covenant of good faith and fair dealing (*see* Compl. ¶ 230), that allegation is not entitled to any deference. *Twombly*, 550 U.S. at 555 ("…courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations omitted).  Moreover, because Plaintiffs have not pled any distinct facts distinguishing their claim for breach of contract from an implied covenant claim, any claim for breach of the implied covenant would have to be dismissed as duplicative.  *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012); *EFG Bank AG v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 94 (S.D.N.Y. 2018) (dismissing implied covenant claims because they "add[ed] nothing to the mix").
[44] *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) ("The essential inquiry . . .  is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered").

Second, the Complaint contains no factual allegations supporting that TBTA or MTA was enriched at any Plaintiffs' expense.  By law, all amounts collected are used to maintain the infrastructure of the tunnels, bridges and roadways operated by those entities, to repay bondholders and to fund mass transit programs in the New York metropolitan area.  N.Y. Pub. Auth. Law §§ 553(12), 569-c.  Third, TBTA is authorized to establish tolls and violation fees. Id. at § 553(12); 21 NYCRR §§ 1021.1, 1021.3.  Conduct which is sanctioned by law cannot be the subject of an unjust enrichment claim.[45]

Fourth, the "voluntary payment…doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law.*" Leder v. Am. Traffic Solutions, Inc.*, 630 F. App'x 61, 63 (2d Cir. 2015).  The unjust enrichment claim in *Leder* alleged that Nassau County and the company that managed the County's red light camera equipment "improperly shortened the time of yellow lights in order to generate revenue when drivers were forced to run red lights, which violations were caught by traffic cameras and resulted in tickets being issued."  *Id.* at 62.  The *Leder* Court held that the voluntary payment doctrine required dismissal of the unjust enrichment claim.  That was so even though "Leder maintains that she was unaware that Nassau County's yellow-light time violated state law when she paid the fine that purportedly 'enriched' defendants" because "she does not allege any lack of knowledge as to the nature of the fine or the reason for its imposition.  Neither does she allege any fraud or mistake of law."  *Id.* at 63-64.  Here too, each Plaintiff knew the nature of the fine and the reason for its imposition when he or she paid it.

---

[45] *See, e.g.*, *Angus Partners LLC v. Walder*, 52 F. Supp. 3d 546, 571 (S.D.N.Y. 2014); *Janes v. Triborough Bridge & Tunnel Auth.*, 977 F. Supp. 2d 320, 342 (S.D.N.Y. 2013), *aff'd*, 774 F.3d 1052 (2d Cir. 2014); *Guthart v. Nassau County*, 55 Misc. 3d 827, 828, 834 (Sup. Ct. Nassau Cty 2017).

IV.   __CONCLUSION__

As a threshold matter, Plaintiffs lack Article III standing because they caused their own injuries when using invalid E-ZPass tags and ignoring Tolls by Mail bills.  Even if they alleged an Article III injury, Plaintiffs have not and cannot allege that it was traceable to MTA because MTA does not operate TBTA's tunnels and bridges.  Additionally, Plaintiffs do not have an excessive fines claim because the fees are not subject to challenge, are not punitive in nature, they could have been avoided, and Plaintiffs' rights to challenge the fees have not been infringed.  Similar fees, moreover, have been held constitutional.  Nor do Plaintiffs allege a procedural due process claim as a property right is not at issue and, even if one were, more than sufficient process was given.  Plaintiffs fail to allege a GBL §§ 349-350 claim because consumer-oriented conduct is not at issue and Plaintiffs were not misled.  And their breach of contract claim fails because a contract is not at issue.  Their unjust enrichment claim likewise fails because it is duplicative of their deficient claims.  MTA and TBTA respectfully urge the Court to dismiss the Consolidated Complaint with prejudice.


Dated September 14, 2018

Respectfully submitted,

/s/ *Esteban Morales*
Joshua Briones                                                     Todd Rosenbaum
Esteban Morales                                                   MINTZ, LEVIN, COHN, FERRIS,
MINTZ, LEVIN, COHN, FERRIS,                        GLOVSKY AND POPEO, P.C.
  GLOVSKY AND POPEO, P.C.                          666 Third Avenue, 25th Floor
2029 Century Park East                                     New York, NY 10017
Suite 3100                                                           Tel:  (212) 935-3000
Los Angeles, CA 90067                                    *TFRosenbaum@mintz.com*
Tel:  (310) 586-3200
*JBriones@mintz.com*                                     *Attorneys for Defendants*
*EMorales@mintz.com*                                    *Metropolitan Transportation Authority and*
                                                                          *Triborough Bridge and Tunnel Authority*