UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON FARINA, CHARLES GARDNER, DOROTHY TROIANO, DELORIS RITCHIE and MIRIAN ROJAS on behalf of each of themselves and all others similarly situated, <br><br>                           Plaintiffs, <br><br>     vs. <br><br> METROPOLITAN TRANSPORTATION AUTHORITY, TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, NEW YORK STATE THRUWAY AUTHORITY, TRANSWORLD SYSTEMS, INC., ALLIANCEONE RECEIVABLES MANAGEMENT, INC., LINEBARGER GOGGAN BLAIR & SAMPSON, LLP and CONDUENT, INC., <br><br>                      Defendants. | **CASE NO.: 18-cv-01433-NRB** |

## PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...................................................................................................................1

FACTS ....................................................................................................................................4

I.   Background ........................................................................................................................4

II.  The Fees that Defendants Charged Plaintiffs ...................................................................6

    A.  Jason Farina...............................................................................................................6

    B.  Dorothy Troiano .......................................................................................................7

    C.  Charles Gardner.........................................................................................................7

    D.  Dolores Ritchie and the NYSTA's Amnesty Program ............................................8

    E.  Mirian Rojas .............................................................................................................9

ARGUMENT .........................................................................................................................10

I.   The Court Should Deny Defendants' Rule 12(b)(1) Motion............................................10

    A.  Rule 12(b)(1) Standard............................................................................................10

    B.  Plaintiffs Have Article III Standing ........................................................................11

        1.  Plaintiffs Have Suffered An Injury in Fact ......................................................11

        2.  Plaintiffs' Injuries Are Causally Related to Defendants' Misconduct..............12

II.  The Court Should Deny Defendants' Rule 12(b)(6) Motions ..........................................15

    A.  Rule 12(b)(1) Standard............................................................................................15

    B.  Plaintiffs State a Claim for Violating the Eight Amendment's Excessive Fines
        Clause........................................................................................................................16

        1.  The Relevant Penalty is the Cumulative Penalty, Not the Per-Violation Penalty ........17

        2.  The *Bajakajian* Factors Weigh in Favor of Unconstitutionality...................19

a.  The Essence of the Crime and Its Relation to Other Criminal Activity.............20

b.  Whether the Defendant Fits into the Class of Persons for Whom the
    Statute was Principally Designed....................................................................21

c.  Defendants Imposed the Maximum Fine ..........................................................21

d.  Defendants Are the Cause of Any Harm ..........................................................21

3.  Defendants' Arguments Fail ...................................................................................24

    a.  Plaintiffs' Claims Are Ripe for Judicial Review...............................................24

    b.  The Fees Defendants Imposed Are "Punishment" Subject to the Eighth
        Amendment.........................................................................................................25

    c.  Plaintiffs' Excessive Fines Claims Are Not Defeated by any Purported
        Failure to Exhaust "Procedural Rights" ............................................................27

    d.  Payment of Some of the Fees Does Not Defeat Plaintiffs' Claims .................28

    e.  Enactments of the State Legislature Are Not *Per Se* Constitutional.................28

    f.  The Additional Fines Were Not Avoidable ......................................................31

    g.  The Filed Rate Doctrine Does Not Apply.........................................................33

C.  Defendants Violated Plaintiffs' Procedural Due Process Rights  .....................................33

    1.  Defendants' Arguments Fails  .................................................................................37

        a.  Plaintiffs' Allegations Are Sufficiently Detailed, and No Outside Facts
            Are Permitted at this Stage ...............................................................................37

        b.  The Money Defendants Demand Through the Fines Are a Protected
            Property Right Under the Due Process Clause ...................................................37

        c.  Defendants Deprived Plaintiffs of Constitutionally Protected
            Property Rights ..................................................................................................39

        d.  Plaintiffs' Claims for Lack of Notice Do Not Require Exhaustion ..................40

        e.  It Is Irrelevant that Plaintiffs Eventually Received Some Notices.....................41

D.  The Court Should Not Dismiss Plaintiffs' Claim under the New York State
    Constitution ..................................................................................................................42

E.  Conduent Is a State Actor .............................................................................42

F.  Conduent Is Not Entitled To Qualified Immunity .........................................45

G.  Plaintiffs State a New York GBL § 349 Claim ..............................................46

    1.  Plaintiffs Allege Defendants Engaged in Consumer-Oriented Conduct Under
       New York GBL § 349 ...............................................................................47

    2.  Plaintiffs Allege Defendants' Conduct Was Likely to Deceive Reasonable
       Consumers Under New York GBL § 349 ................................................49

    3.  Plaintiffs Allege Defendants' Misconduct Injured Plaintiffs Under
       New York GBL § 349(h) ..........................................................................50

    4.  The Filed Rate Doctrine Does Not Bar Plaintiffs' NY GBL § 349 claims ................51

H.  Plaintiffs State a Claim for Breach of Contract ............................................52

I.  Plaintiffs State a Claim for the Breach of Implied Covenant of Good Faith and Fair
    Dealing ...........................................................................................................55

J.  Plaintiff State a Claim for Tortious Interference Against Conduct ..................57

K.  Plaintiff State a Claim for Unjust Enrichment ..............................................58

L.  The Port Authority's Motion to Dismiss Plaintiffs' Prayer for Punitive Damages
    Is Procedurally Improper ................................................................................60

M.  The Court May Exercise Jurisdiction Over Plaintiffs' State Law Claims Under
    the Class Action Fairness Act if Plaintiffs' Constitutional Claims Are Dismissed .........61

N.  Collective References to "Defendants" Provide Sufficient Notice...................62

III.  The Court Should Deny the Port Authority's Motion to Strike Plaintiffs' Class
    Allegations .......................................................................................................63

    A.  Rule 12(f) Standard........................................................................................63

    B.  The Court Should Not Strike Plaintiffs' Class Allegations.............................64

CONCLUSION....................................................................................................66

# TABLE OF AUTHORITIES

**Cases**

*Aghaeepour v. N. Leasing Sys. Sys., Inc.,*
No. 14-CV-5449, 2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015) ................................. 63

*Alaska Elec. Pension Fund v. Bank of Am. Corp.,*
175 F. Supp. 3d 44 (S.D.N.Y. 2016) ......................................................................... 11

*Arbuagh v. Y & H Corp.,*
546 U.S. 500 (2006) .................................................................................................. 62

*Arsberry v. Illinois,*
244 F.3d 558 (7th Cir. 2001) ................................................................................... 33

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................................... 15, 62

*Astra Oil Trading NV c. PRSI Trading Co. LP,*
No. 08 Civ. 10467 (NRB), 2009 WL 928672 (S.D.N.Y. Apr. 6, 2009) ..................... 10

*Atkinson v. B.C.C. Assocs., Inc.,*
829 F. Supp. 637 (S.D.N.Y. 1993) ........................................................................... 45

*Attorney-Gen. of State of N.Y. v. One Green 1993 Four Door Chrysler,*
217 A.D.2d 342 (1996). ........................................................................................... 16

*Austin v. United States,*
509 U.S. 602 (1993) .................................................................................................. 26

*Belfiore v. Procter & Gamble Co.,*
94 F. Supp. 3d 440 (E.D.N.Y. 2015) ....................................................................... 63

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................. 15

*Bennett v. Spear,*
520 U.S. 15 (1997) .................................................................................................... 13

*Berry v. N.Y. State Dep't of Taxation & Finance,*
No. 158919/2016 (Sup. Ct. NY Cty. June 12, 2017) ............................................... 32

*Bester v. Chicago Transit Auth.,*
676 F. Supp. 3d 833 (N.D. Ill. 1987) ....................................................................... 43

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,*
   448 F.3d 573 (2d Cir. 2006) ................................................................................ *54*

*Blandford Land Clearing Corp. v. Nat'l Union Fire Ins. Co.,*
   260 A.D.2d 86 (1st Dep't 1999) ............................................................................ 55

*Brody v. Vill. of Port Chester,*
   434 F.3d 121 (2d Cir. 2005), ................................................................................. 41

*Brown v. Ferrara,*
   No. 2:10-CV-00523-GZS, 2011 WL 1637928 (D. Me. Apr. 28, 2011) ..................... 44

*Brown v. Transurban USA Inc.,*
   144 F. Supp. 3d 809 (E.D. Va. 2015) .......................................................... 22, 32. 34

*Canon U.S.A., Inc. v. F & E Trading LLC,*
   No. 2:15-CV-6015 DRHAYS, 2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ......... 63

*Chapman v. United States,*
   500 U.S. 453 (1991) ............................................................................................. 30

*Cheffer v. Reno,*
   55 F.3d 1517 (11th Cir. 1995) .............................................................................. 24

*City of New York v. Golden Feather Smoke Shop, Inc.,*
   No. 08-CV-03966 CBA JMA, 2013 WL 3187049 (E.D.N.Y. June 20, 2013) ......... 19

*City of New York v. Milhelm Attea & Bros.,*
   No. 06-CV-3620 CBA, 2012 WL 3579568 (E.D.N.Y. Aug. 17, 2012) .................... 19

*Contractors Against Unfair Taxation Instituted on New Yorkers v. City of New York,*
   No. 93 CIV. 4718 (KMW), 1994 WL 455553 (S.D.N.Y. Aug. 19, 1994) ............... 38

*Conyers v. Rossides,*
   558 F.3d 137 (2d Cir. 2009) ................................................................................. 10

*Corsello v. Verizon New York, Inc.,*
   967 N.E.2d 1177 (N.Y. 2012) ............................................................................... 59

*Dalton v. Educ. Testing Serv.,*
   87 N.Y.2d 384 (1995) ........................................................................................... 55

*Demetre v. HMS Holdings Corp.,*
   127 A.D. 493 (N.Y. App. Div. 2015) ..................................................................... 56

*Denis v. Home Depot, U.S.A., Inc.,*
    No. 10-CV-3227 (ADS)(SIL), 2014 WL 66332486 (E.D.N.Y. Nov. 21, 2014) ....................... 60

*Deshawn E. by Charlotte E. v. Safir,*
    156 F.3d 340 (2d Cir. 1998)...................................................................................................... 11

*DiFolco v. MSNBC Cable, L.L.C.,*
    622 F.3d 104 (2d Cir. 2010)...................................................................................................... 16

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.,*
    100 N.Y.2d 525 (2003) .............................................................................................................. 28

*Dubin v. Cty. of Nassau,*
    277 F. Supp. 3d 366 (E.D.N.Y. 2017) ................................................................................. 26, 40

*Duff & Phelps, LLC v. Vitro S.A.B. de C.V.,*
    18 F. Supp. 3d 375 (S.D.N.Y. 2014 ........................................................................................... 10

*Edmonson v. Leesville Concrete Co.,*
    500 U.S. 614 (1991)................................................................................................................... 43

*Emilio v. Spring Spectrum L.P.,*
    68 F. Supp. 3d 509 (S.D.N.Y. 2014).......................................................................................... 63

*Endeavor Cap. Hold. Grp., LLC v. Umami Sustainable Seafood, Inc.,*
    No. 13 Civ. 4143 (NRB), 2014 WL 3897577 (S.D.N.Y. Aug. 7, 2014.................................... 16

*Estler v. Dunkin' Brands, In.,*
    16 Civ 932 (LGS), 2016 WL 5720814 (S.D.N.Y. Oct. 13, 2016) ............................................ 48

*Frye v. Lagerstrom,*
    15-cv-5348, 2016 WL 3023324 (S.D.N.Y. May 24, 2016). ..................................................... 52

*Fuller Landau Advisory SVCS v. Gerber Fin. Inc.,*
    17-CV-6027 (JPO), 2018 WL 3768035 (S.D.N.Y. Aug. 8, 2018) ........................................... 56

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,*
    8 F. Supp. 3d 467 (S.D.N.Y. 2014)............................................................................................ 50

*Gualandi v. Adams,*
    385 F.3d 236 (2d Cir. 2004 ....................................................................................................... 10

*Hard Rock Café Intern., (USA), Inc. v. Hard Rock Hotel, LLC,*
    808 F. Supp. 2d 552 (S.D.N.Y. 552)......................................................................................... 56

*Henry v. Warner Music Group Corp.*,
  No. 13-cv-5031, 2014 WL 1224575 (S.D.N.Y. Mar. 24, 2014) ................................................. 61

*Hudson v. United States*,
  522 U.S. 93 (1997) ................................................................................................................... 16

*Hyman v. Abrams*,
  630 F. App'x 40 (2d Cir. 2015) ................................................................................................ 45

*Idris v. City of Chicago, Ill.*,
  552 F.3d 564 (7th Cir. 2009) ................................................................................................... 38

*In O'Neil v. Vermont*,
  144 U.S. 323 (1892) ................................................................................................................. 17

*In re Elec. Books Antitrust Litig.*,
  No. 11 MD 2293 DLC, 2014 WL 2535112 (S.D.N.Y. June 5, 2014), ....................................... 30

*In re Intercept Pharm. Inc. Sec. Litig.*,
  No. Civ. 1123 (NRB), 2015 WL 915271 (S.D.N.Y. Mar. 4, 2015) ............................................ 15

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
  962 F. Supp. 2d 606 (S.D.N.Y. 2013) ...................................................................................... 58

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) ..................................................................................................... 64

*In re Zyprexa Prod. Liab. Litig.*,
  671 F. Supp. 2d 397 (E.D.N.Y. 2009) ...................................................................................... 18

*In re: Libor-Based Financial Instruments Antitrust Litig.*,
  11 MDL 2262 (NRB), 2016 WL 2851333 (S.D.N.Y. May 13, 2016) ......................................... 63

*Interested Underwriters at Lloyd's of London Subscribing to Policy No. 991361018 v. Church
  Loans and Inv. Trust*,
  432 F. Supp. 2d 330 (S.D.N.Y. 2006) ...................................................................................... 47

*Jackson v. Metro. Edison Co.*,
  419 U.S. 345 (1974) ................................................................................................................. 45

*Jones v. Flowers*,
  547 U.S. 220 (2006) ........................................................................................................... 34, 41

*Karlin v. IVF America, Inc.*,
  690 N.Y.S.2d 495 (N.Y. 1999) ................................................................................................. 47

*Learse v. ATC Healthcare Services,*
  No. 12 CIV. 233 (NRB), 2013 WL 1496951 (S.D.N.Y. Apr. 8, 2013). .................................... 15

*Kia P. v. McIntyre,*
  235 F.3d 749 (2d Cir. 2000) ........................................................................................ 43

*Kinkopf v. Triborough Bridge & Tunnel Auth.,*
  6 Misc. 3d 73 (2004) .................................................................................................. 48

*Kirsh v. City of New York,*
  No. 94 CIV. 8489 (RWS), 1995 WL 383236 (S.D.N.Y. June 27, 1995) ................................. 27

*Knight First Amendment Inst. At Columbia Univ. v. Trump,*
  302 F. Supp. 3d 541 (S.D.N.Y. 2018) ............................................................................ 12

*Koch v. Acker, Merrall & Condit Co.,*
  18 N.Y.3d 940 (N.Y. 2012) ......................................................................................... 47

*Korangy v. U.S. F.D.A.,*
  498 F.3d 272 (4th Cir. 2007) ...................................................................................... 26

*Kraebel v. Michetti,*
  No. 93 CIV. 4596, 1994 WL 455468 (S.D.N.Y. Aug. 22, 1994) ........................................... 24

*Kurtz v. Kimberly-Clark Corp.,*
  321 F.R.D. 482 (E.D.N.Y. 2017) .................................................................................. 51

*Leder v. Am. Traffic Sols. Inc.,*
  630 F. App'x 61 (2d Cir. 2015) .................................................................................... 28

*Locurto v. Safir,*
  264 F.3d 154 (2d Cir. 2001) ........................................................................................ 40

*Lugar v. Edmondson Oil Co.,*
  457 U.S. 922 (1982) ................................................................................................... 43

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................................................... 11

*Makarova v. U.S.,*
  201 F.3d 110 (2d Cir. 2000) ........................................................................................ 10

*Mazzola v. Roomster Corp.,*
  849 F. Supp. 2d 395 (S.D.N.Y. 2012) ........................................................................... 63

*Meghan Beard, Inc. v. Fadina,*
  82 A.D.3d 591 (N.Y. App. Div. 2011). ...................................................... 57

*Mills v. Polar Molecular Corp.,*
  12 F.3d 1170 (2d Cir. 1993)................................................................... 15

*Molina-Estrada v. Puerto Rico Highway Auth.,*
  680 F.2d 841 (1st Cir. 1982)................................................................ 43

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
  339 U.S. 306 (1950)............................................................................ 33

*Natt v. White Sands Condo.,*
  95 A.D.3d 848 (N.Y. App. Div. 2012) .................................................. 52

*Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
  710 F.3d 71 (2d Cir. 2013)................................................................... 13

*Naughright v. Weiss,*
  857 F. Supp. 2d 464 (S.D.N.Y. 2012).................................................. 15

*Nenninger v. Vill. of Port Jefferson,*
  509 F. App'x 36 (2d Cir. 2013), .......................................................... 39

*Nestle Waters N. Am., Inc. v. City of New York,*
  No. 15-CV-05189 (ALC), 2016 WL 3080722 (S.D.N.Y. May 25, 2016)................................ 38

*New Jersey Carpenters Health Fund,*
  288 F.R.D. 290 (S.D.N.Y. 2013) ......................................................... 64

*New York v. Feldman,*
  210 F. Supp. 2d 294 (S.D.N.Y. 2002).................................................. 47

*Newell Recycling Co. v. U.S. E.P.A.,*
  231 F.3d 204 (5th Cir. 2000) ............................................................... 30

*Oneida Indian Nation of New York v. Madison Cty.,*
  665 F.3d 408 (2d Cir. 2011), ............................................................... 42

*O'Neil v. State of Vermont,*
  144 U.S. 323 (1892)............................................................................ 18

*Orlander v. Staples,*
  802 F.3d 289 (2d Cir. 2015)................................................................ 49

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
  647 N.E.2d 741 (N.Y. 1995)................................................................ 47

*Pappas v. Giuliani,*
  118 F. Supp. 2d 433 (S.D.N.Y. 2000)................................................ 27

*Parratt v. Taylor,*
  451 U.S. 527 (1981)........................................................................... 40

*Payton v. Rush–Presbyterian St. Luke's Med. Ctr.,*
  184 F.3d 623 (7th Cir.1999) ............................................................. 44

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986)........................................................................... 25

*Pharaon v. Bd. of Governors of Fed. Reserve Sys.,*
  135 F.3d 148 (D.C. Cir. 1998) .......................................................... 30

*Prince v. City of New York,*
  108 A.D.3d 114  (App. Div. 1st Dep't 2013) ................................... 26

*Pyskaty v. Wide World of Cars, LLC,*
  856 F.3d 216 (2d Cir. 2017)............................................................. 61

*Quinn v. Walgreen Co.,*
  958 F. Supp. 2d 533 (S.D.N.Y. 2013)............................................. 49

*Realty LLC v. Consulate of the State of Qater-New York,*
  No. 02-cv-0809, 2015 WL 5197327 (S.D.N.Y. Sept. 4, 2015) ............... 10

*Rocky Knoll Estates MHC, LLC v. C W Capital Asset Mgmt., LLC,*
  No. 14-CV-06097, 2015 WL 1632637 (W.D.N.Y. Apr. 13, 2015)........... 29

*Rosenzweig v. Transworld Sys. Inc.,*
  No. 16-00227, 2017 WL 3025557 (D.N.J. July 14, 2017) ..................... 54

*Ross v. Bank of America, N.A. (USA),*
  524 F.3d 217 (2d Cir. 2008)............................................................. 11

*Rothstein v. UBS AG,*
  708 F.3d 82 (2d Cir. 2013)............................................................... 12

*Rummel v. Estelle,*
  445 U.S. 263 (1980)........................................................................... 18

*Sanders v. Szubin,*
   828 F. Supp. 2d 542 (E.D.N.Y. 2011) ................................................................ 26

*Scott-Robinson v. City of New York,*
   No. 15-CV-09703 (NRB), 2016 WL 7378775 (S.D.N.Y. Dec. 15, 2016) ............................... 15

*Seril v. New York State Div. of Hous. & Cmty. Renewal,*
   205 A.D.2d 347 (1994) .............................................................................. 33

*Shechter v. Comptroller of City of New York,*
   79 F.3d 265 (2d Cir. 1996)......................................................................... 45

*Singh v. NYCTL 2009-A Trust,*
   14 Civ. 2558, 2016 WL 3962009 (S.D.N.Y. July 20, 2016), .......................................... 49

*Spagnola v. Chubb Corp.,*
   574 F.3d 64 (2d Cir. 2009).......................................................................... 29

*St. John's Univ., N.Y. v. Bolton,*
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) ................................................................ 59

*St. Pierre v. Retrieval-Masters Creditors Bureau,*
   No.15-2596(FLW)(DEA), 2017 WL 1102635 (D.N.J. Mar. 24, 2017) ..................................... 49

*St. Vendor Project v. City of New York,*
   10 Misc. 3d 978 (Sup. Ct. 2005).................................................................... 32

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
   538 U.S. 408 (2003)................................................................................ 23

*State v. United Parcel Serv., Inc.,*
   253 F. Supp. 3d 583 (S.D.N.Y. 2017)................................................................ 18

*Tobin v. Gluck,*
   11 F. Supp. 3d 280 (E.D.N.Y. 2014) ................................................................ 52

*Towers v. City of Chicago,*
   173 F.3d 619 (7th Cir. 1999) ...................................................................... 26

*Transportation Inc. v. Triborough Bridge and Tunnel Authority,*
   38 N.Y.2d 545 (1976)............................................................................... 31

*U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.,*
   741 F.3d 390 (4th Cir. 2013) ...................................................................... 18

*U.S. ex rel. Smith v. Gilbert Realty Co.,*
  840 F. Supp. 71 (E.D. Mich. 1993)......................................................... 19

*United States v. Bajakajian,*
  524 U.S. 321 (1998)............................................................................ 16

*United States v. State Tax Comm'n of Miss.,*
  412 U.S. 363 (1973)............................................................................ 29

*United States v. Trimble,*
  487 F.3d 752 (9th Cir. 2007) ................................................................ 30

*United States v. Varrone,*
  554 F.3d 327 (2d Cir. 2009)................................................................... 21

*United States v. Viloski,*
  814 F.3d 104 (2d Cir. 2016)............................................................... 17, 30

*Urbina v. Port Authority of New York,*
  15-cv-8647 (PKC), 2017 WL 3600424 (S.D.N.Y. Aug. 18, 2017) .......................... 60

*Vantone Group Limited Liability Co. v. Yangpu NGT Industrial Co., LTD. et al.,*
  No. 13-CV-7639, 2015 WL 4040882 (S.D.N.Y. July 2, 2015) .................................. 62

*Vogelfang v. Capra,*
  889 F. Supp. 2d 489 (S.D.N.Y. 2012)...................................................... 37

*Von Hofe v. United States,*
  492 F.3d 175 (2d Cir. 2007)................................................................. 26

*Walker v. City of Hutchinson, Kan.,*
  352 U.S. 112 (1956)............................................................................ 41

*Wemhoff v. City of Baltimore,*
  591 F. Supp. 2d 804 (D. Md. 2008) ......................................................... 26

*Wiener v. Unumprovident Corp.,*
  202 F. Supp. 2d 116 (S.D.N.Y. 2002)....................................................... 47

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,*
  473 U.S. 172 (1985)............................................................................ 28

Plaintiffs Jason Farina, Charles Gardner, Dorothy Troiano, Deloris Ritchie, and Mirian Rojas submit this memorandum of law in opposition to the separate motions of Defendants Metropolitan Transportation Authority ("MTA"), Triborough Bridge and Tunnel Authority ("TBTA"), New York State Thruway Authority ("NYSTA"), the Port Authority of New York and New Jersey ("Port Authority") (collectively, the "Authority Defendants"), and Conduent State & Local Solutions, Inc. ("Conduent").

## INTRODUCTION

Defendants have caught Plaintiffs and other drivers in New York completely off guard. Drivers have answered the phone or opened their mail to find that debt collectors have been retained to collect as much as $30,000 from them, for something they had not previously heard anything about at all – toll violations. The Authority Defendants operate the toll roads, bridges, and tunnels in and around New York City. They retained Conduent to operate those crossings and perform the billing for the recently-installed "cashless tolling" systems, better known as E-Z Pass and Tolls By Mail. But those systems have been fraught with problems and, as alleged in the Complaint, have imposed multiple fines on drivers without any prior notice, often leading to claims that a driver owes thousands of dollars in fines for toll crossing that should have cost a few dollars. Drivers are often finding out that the Authority Defendants have charged them with dozens of purported violations only *after* the Authority Defendants have referred the accounts to collections. Defendants have ignored drivers' rights to notice of violations and have reaped substantial rewards for it – Defendants induce drivers to accumulate more and more violations because Defendants wait weeks or months to inform drivers of the problem.

This action arises because the Authority Defendants, with Conduent's aid, have pushed to eliminate the congestion caused by toll gates and the now old-fashioned payment of tolls in cash.

They have switched entirely to cashless tolling, which means that drivers may drive on tolls road and bridges without even slowing down for toll payment. While this makes for faster travel, it also obscures the toll payment transaction. Drivers may use E-Z Pass to pay tolls and those drivers without E-Z Pass are supposed to be promptly billed by mail for the toll, with Defendants sending a notice to the registered owner of the vehicle. But Defendants have exploited the switch to cashless tolling to profit at the expense of unsuspecting drivers. No longer do drivers have traffic lights, screens, or an arm gate indicating to drivers that their E-Z Pass successfully paid the toll. Similarly, drivers are not told if their balance is low or if there is a problem with their E-Z Pass transponder. There are no indicators at all for drivers. Instead, if an E-Z Pass user passes through a cashless toll and there is a problem with the E-Z Pass tag, Defendants will charge the drivers a fine of $50 or $100 (depending on where the purported "violation" occurred) for every single toll. Defendants do not immediately notify the driver about the fine but instead wait to do so, allowing the fines to multiply each time the driver passes through another cashless tolling system.

Because Defendants removed the feedback indicators, drivers incurring a fine are no longer immediately told that they have an issue with their E-Z Pass account and are certainly not told that they have been fined. As a result, drivers may go through several toll collection points a day for weeks before Defendants tell them that there is an issue with their E-Z Pass. In this regard, drivers are entirely reliant on the notice of violation Defendants mail drivers whom Defendants believe have failed to pay a toll. Without the prompt delivery of these notices, drivers may incur tens of thousands of dollars in fines over a relatively short period.

The problem, and the core of Plaintiffs' Complaint, is that Defendants utterly failed to provide notice in a reasonable time and have caused drivers to exponentially accumulate fines.

Tolls By Mail users are even more dependent on the prompt delivery of notices. They are promised that they will be billed by mail, and there are fees for failing to pay within a set period from the date the toll is incurred. Defendants fail to timely send Tolls By Mail users the bills by mail, and instead those drivers receive the bills months later, often finding out for the first time that Defendants have imposed multiple $100 fees for "late payment" even though Defendants failed to bill them by mail during the period that they could have avoided late fees.

Despite the benefits of cashless tolling, Defendants have failed to timely notify users of their outstanding tolls and instead have profited by charging cashless toll users multiple "toll evasion" fines, a practice that is incredibly profitable for Defendants. These fines – which are entirely the result of Defendants' inadequate notice procedures – are contrary to protections provided in the United States and New York State Constitutions, New York State law, and the agreements that form the basis of the cashless tolling programs. Plaintiffs have suffered excessive and unnecessary fines because Defendants did not inform Plaintiffs that they had incurred a fine until Plaintiffs had incurred <u>dozens</u>. To address these wrongful fines imposed on them, Plaintiffs bring this action on a behalf of drivers who, like themselves, have found themselves suddenly and massively in debt and at the mercy of the Defendants and debt collectors hounding them for payment and threatening suspension of their vehicle registration.

Plaintiffs bring claims for (1) violating the Excessive Fines Clause of the U.S. and New York State Constitutions; (2) violating the Due Process Clause of the U.S. and New York State Constitutions; (3) violating NYGBL § 349; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) tortious interference of contract; and (7) unjust enrichment.

Defendants try, in their four separate motions to dismiss, to evade liability by reframing

the facts, ignoring Plaintiffs' allegations, and misstating the law. For the reasons stated below, the Court should deny Defendants' motions.

**FACTS**

## I.      Background

Plaintiffs bring this action on behalf of themselves and a Class of all similarly situated individuals and entities who have been improperly charged fees as a result of using New York's cashless toll systems (called "E-Z Pass" and "Tolls By Mail") for bridges, tunnels, and roads operated by the Authority Defendants. Consolidated Complaint at ¶ 1.[1] The claims are brought for those people who have been assessed unnecessary fines as a result of Defendants' inadequate notice procedures. Those Defendants operate and maintain bridges and tunnels in and around New York City, and for decades collected tolls using gates and tolls booths. ¶ 2. When a driver paid a toll, the driver paid in cash and the driver knew with certainty that it was paid. ¶ 56. When E-Z Pass was adopted in New York, drivers had the option to drive through the toll gates without physically handing over payment, but those drivers would receive immediate notification that the E-Z Pass paid the toll or whether there was an issue. *See* ¶¶ 159-60. An electronic display at the toll booth would flash that the toll had been paid or would alert the driver to a problem with the payment.

That changed in 2017, when the Authority Defendants switched many of the bridges and tunnels they operate to "cashless" toll collecting. ¶ 2. They dismantled the toll gates and booths and, importantly, removed the feedback indicators that informed drivers as to whether their toll transactions had successfully processed. *Id.* The Authority Defendants installed an automated system, using a combination of the E-Z Pass technology that they had previously used and

---

[1] All references to paragraphs within the Consolidated Complaint (ECF No. 44), will be referred to by "¶ __".

cameras mounted onto newly constructed overhead frames. *Id.* As the car passes through the frames (referred to as "gantries") with an E-Z Pass transponder, the system records the information about the car and processes a charge for toll. ¶ 58. If a vehicle is not linked to an E-Z Pass account, Defendants have instituted a Tolls By Mail system which takes a picture of the car and its license plate as the car passes through the cashless toll system on the road, bridge or tunnel. ¶ 60. The picture is used to identify the registered owner and then Defendants mail a bill for the toll to the vehicle owner. *Id.* Because of the complexities of dealing with a wholly electronic system, the Authority Defendants have delegated the operation of the cashless tolling system and its enforcement to Conduent. ¶ 62.

The E-Z Pass system and the Tolls By Mail system were supposed to eliminate long lines at toll booths, reduce pollution from idling vehicles, and allow the toll operators to shift personnel from collecting tolls into roles providing heightened security and safety to motorists. ¶ 61. These efficiencies have not been gained without costs. And those costs have fallen primarily on drivers, like Plaintiffs here, who bear the cost of Defendants' inability to keep up with the thousands of notices that they must send out: Defendants impose $50 or $100 fines on every purported toll violation even if Defendants do not inform drivers that there is an issue with their E-Z Pass until weeks or months later, often after dozens of unpaid toll fines accumulate into devastating penalties. ¶ 141-42. Drivers may rack up dozens more $100 fees before Defendants inform them of an issue, which benefits Defendants who charge more penalties as a result of the delays and the failure to provide the required notice. ¶ 140,143-45. A driver may incur dozens of $100 fees before receiving any notice. ¶ 143.

As a consequence of Defendants' high penalties and the lack of feedback indicators for drivers, hundreds or even thousands of drivers have outstanding penalties which have

snowballed into tens of thousands of dollars. Though Defendants shrug off these issues in their motion papers and try to blame the drivers, the inadequacy of their notices procedures has understandably been of great concern to them. Defendants have privately acknowledged the inadequacy of Conduent's notice procedures. ¶ 158. For instance, in a January 18, 2018 letter from the Executive Director of NYSTA to the General Manager of Transportation at Conduent, the Executive Director of NYSTA specifically expressed concern over the "lag time from [drivers] travel over the bridge to when they receive a bill." *Id.* He specifically requested that Conduent consider "designing an alternative communication option for customers." *Id.* Similarly, at a March 19, 2018, monthly meeting of the Triborough Bridge and Tunnel Authority Committee, "Commissioner [Mitchell H.] Pally asked how customers will know whether their E-Z Pass has a low balance or insufficient funds since ORT [Open Road Tolling] eliminated gates and driver feedback indicators." ¶ 159. Another committee member conceded that both E-Z Pass and Tolls By Mail users "are impacted by lack of driver feedback signage and the elimination of toll gates." ¶ 160. No solution was offered and nothing has been done to correct this issue even though Defendants continue to exploit the problem by charging the large, multiple fees without first notifying drivers. ¶ 159.

## II.     The Fees that Defendants Charged Plaintiffs

### A.     Jason Farina

Until 2017, Jason Farina never had any significant problem with his E-Z Pass tag or account. ¶ 83. However, on November 25, 2017, Farina began to receive notices from Defendants indicating that in October 2017 tolls had not been paid, and assessing charges for those tolls as well as fees of $100 for each unpaid toll. ¶ 68. In total, Defendants assessed Farina 61 purported violations, amounting to fees of $6,100. ¶ 74. Threatened with Defendants' ability

to ruin his credit, Farina paid a portion of the outstanding fees to the TBTA's debt collector, Transworld Systems, Inc. ¶¶ 80-81.

At all relevant times, the TBTA and Conduent would send notices to Farina more than 30 days after his vehicle incurred the charge for the toll, meaning that he had no notice about further toll charges and purported violations before being assessed the numerous $100 fees. ¶ 82.

### B.   Dorothy Troiano

Until 2017, Dorothy Troiano never had any significant program with her E-Z Pass tag or account. However, beginning in 2017, Troiano began to receive notices from the TBTA and Port Authority indicating that tolls had not been paid by her E-Z Pass account, and Defendants began assessing charges for those tolls as well as fees of $50 or $100 for each unpaid toll. ¶ 84. In total, Defendants assessed Troiano hundreds of purported violations, amounting to fees of more than $30,000. ¶ 20, 74. In February 2018, after Defendants and their agents threatened that Ms. Troiano's credit score would be ruined and her registration would be suspended, Troiano paid Defendants a portion of the outstanding fees. ¶¶ 90, 94, 98, 258.

At all relevant times, TBTA, Port Authority and Conduent would send notices to Troiano more than 30 days after her vehicle incurred the charge for the toll, meaning she had no notice about further toll charges and purported violations before being assessed the numerous $100 fees. ¶ 99.

### C.   Charles Gardner

At all relevant times, Gardner had an E-Z Pass tag and account and used it to drive from his home in Pennsylvania into New York. ¶ 100. However, as Defendants began instituting the cashless toll system in 2017, Gardner began to receive notices from TBTA and the Port Authority claiming that he owed hundreds of dollars for crossing New York's bridges and

tunnels. ¶ 101. Between October and December 2018, Gardner paid the outstanding tolls and a portion of the purported fees. ¶¶ 105-07, 258.

At all relevant times, Defendants the MTA, Port Authority, and Conduent would send notices to Gardner more than 30 days after his vehicle incurred the charge for the toll, meaning that he had no notice about further toll charges and purported violations before being assessed the numerous $100 fees. ¶ 108.

### D.     Dolores Ritchie and the NYSTA's Amnesty Program

Until November 2017, Dolores Ritchie never had any significant problems with Tolls By Mail. ¶ 109. Ritchie would drive through tolls, as instructed by signs, receive bills in the mail, and pay them. ¶ 110. In November 2017, however, Ritchie's car was impounded and NYSTA claimed that she owed $12,000 for unpaid tolls and penalties. ¶ 111.

In January 2018, NYSTA created a temporary amnesty program in recognition of the profound unfairness to drivers, like Ritchie, shouldering the burden of the shortcomings of NYSTA's own cashless tolling system. ¶ 113. Ritchie was able to pay $790 to clear her $12,000 debt, which included all tolls, fees, and penalties outstanding in late January 2018. ¶ 114. Importantly, NYSTA required her to pay some of the improper fees—despite its tacit recognition that those fees were not properly levied. *Id.*

Immediately after obtaining amnesty, Ritchie received more invoices with purported violations dating as far back as November 2017, each with a $100 penalty. ¶ 116. NYSTA claims Ritchie currently owes more than $420.00 to NYSTA and the MTA claims that Ritchie owes $108.50 to the MTA, including improper fees. ¶ 117. Ritchie had not been notified of the tolls before February 2018. Her first notice from Defendants nevertheless included $100 penalties. ¶ 118. Had Defendants properly notified Ritchie of payments due from tolls occurring between

November 2017 and the end of the amnesty program in February 2018, those tolls and fees would have been included in the amount she owed when she took advantage of the amnesty program. ¶¶ 119-20. Defendants' debt collectors continue to hound Ritchie for $420 despite the unmistakable illegitimacy of the fees and penalties. ¶ 122.

At all relevant times, Defendants NYSTA, the MTA and Conduent, would send notices to Ritchie more than 30 days after her vehicle incurred the charge for the toll, meaning that she had no notice about the toll charge before Defendants assessed the $100 fees. ¶ 123.

### E.   Mirian Rojas

Until April 2018, Mirian Rojas never had any significant problem with her E-Z Tag or account. ¶ 124. However, beginning in early April 2018, Rojas received several letters from the Port Authority indicating that she owed money for tolls and that a notice of enforcement action had been previously sent to her. No such notices had been sent to her though. ¶ 125

Ms. Rojas accessed her E-Z Pass account on April 10, 2018 and saw that the MTA and Port Authority had charged her with ten violations. ¶ 126 (citing Compl., Exh. 2). Ms. Rojas accessed her E-Z Pass account days later to find that the number of violations the MTA and Port Authority assessed against her had multiplied to 67 discrete occurrences on the road and bridges of TBTA and the Port Authority. ¶ 127 (citing Compl., Exh. 3). However, Defendants new charges did not take place after April 10, 2018, but instead supposedly took place as far back as October 2016—eighteen months earlier. ¶ 128. In total, Defendants claimed that Ms. Rojas owed more than $6,000. ¶ 130.

Defendants' debt collectors have attempted to collect the purported fees from Rojas, and although she has paid the amount outstanding in tolls ($347), she has not paid and continues to dispute the improper fees. ¶ 131. One of the Defendants' debt collectors informed Rojas that she

could not dispute her fees and must pay the total amount regardless of whether or not they are rightfully assessed against her. ¶ 133.

## ARGUMENT

I.      **The Court Should Deny Defendants' Rule 12(b)(1) Motion**[2]

A.      **Rule 12(b)(1) Standard**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." *Daniel v. Tootsie Roll Indus., LLC*, 17 Civ. 7541 (NRB), 2018 WL 3650015 (Aug. 1, 2018). In deciding both types of motions, "the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)).

Although courts "may consider evidence outside the pleadings, such as affidavits and exhibits" when deciding a Rule 12(b)(1) motion, *Duff & Phelps, LLC v. Vitro S.A.B. de C.V.*, 18 F. Supp. 3d 375, 382 (S.D.N.Y. 2014), "courts generally require that plaintiffs be given an opportunity to conduct discovery on . . . jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *1964 Realty LLC v. Consulate of the State of Qater-New York*, No. 02-cv-0809, 2015 WL 5197327, at *7 (S.D.N.Y. Sept. 4, 2015) (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004)); *see also Astra Oil Trading NV c. PRSI Trading Co. LP*, No. 08 Civ. 10467 (NRB), 2009 WL 928672, at *2 (S.D.N.Y. Apr. 6, 2009) ("[W]e find that the current record regarding plaintiff's principal

---

[2] After reviewing TBTA's arguments relating to the relationship between TBTA and MTA, Plaintiffs voluntarily dismiss all claims against the MTA.

place of business is simply too underdeveloped, conclusory and contradictory to permit any meaningful finding of fact at this time. We therefore grant defendant's application to conduct jurisdictional discovery to facilitate development of an adequate record regarding that issue.").

## B.     Plaintiffs Have Article III Standing

The Port Authority, the NYSTA, and the TBTA move to dismiss under Rule 12(b)(1), arguing that Plaintiffs lack standing under Article III of the United States Constitution. To have Article III standing, a plaintiff must show (1) "an injury in fact, which is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs establish each of these elements.

### 1.     Plaintiffs Have Suffered An Injury in Fact.

Plaintiffs have alleged that they have suffered an injury in fact under Article III. "'Injury in fact,' . . . 'is a low threshold,' which the Second Circuit has 'held need not be capable of sustaining a valid cause of action.'" *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 53 (S.D.N.Y. 2016) (quoting *Ross v. Bank of America, N.A.* (USA), 524 F.3d 217, 222 (2d Cir. 2008)). With respect to monetary losses, "[e]ven a small financial loss is an injury for purposes of Article III standing." *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (finding that the injury-in-fact requirement was satisfied by allegations of expenses incurred in buying soap). For injunctive and declaratory relief, a plaintiff "must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

Here, Defendants assessed thousands of dollars in fees against Plaintiffs stemming for purported toll violations, including $6,100 against Farina, more than $30,000 against Troiano, more than $12,000 against Ritchie, more than $6,000 against Rojas, and around $600 for Gardner. ¶¶ 20, 74, 93, 102-03, 111, 130. In turn, Plaintiffs paid at least some of the wrongfully assessed fees, and Plaintiff Ritchie paid costs associated with her car being impounded and also began making overpayments on every invoice to avoid future penalties. ¶¶ 77-80, 94, 258. Plaintiffs' financial losses constitute an injury in fact under Article III.

Likewise, Plaintiffs' outstanding fees and the likelihood of future harm establish an injury in fact necessary to pursue injunctive and declaratory relief. Currently, Defendants claim that Ritchie and Rojas owe outstanding fees, and as such, Ritchie and Rojas will continue to be subjected to aggressive collection efforts, including adverse credit reports, revocation of their vehicle registration, and seizure of their tax refunds. ¶ 5, 122, 132-33. For the rest of the Plaintiffs, based on the widespread deficiencies in Defendants' cashless toll system, there is a strong likelihood that Defendants will again assess improper and untimely fees against them. ¶¶ 151-62. Thus, Plaintiffs have established injuries in fact to pursue injunctive and declaratory relief.

### 2. Plaintiffs' Injuries Are Causally Related to Defendants' Misconduct

Plaintiffs' injuries share a causal relationship with Defendants' misconduct. To establish causation under Article III, the plaintiff's injury must 'be "fairly traceable" to the defendant's conduct. *Lujan*, 405 U.S. at 560-61. "The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Knight First Amendment Inst. At Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 558 (S.D.N.Y. 2018) (Buchwald, J.) (citing *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013)).

However, "[p]roximate causation is not a requirement of Article III standing[.]" *Id.* at 558 (citation omitted). The Supreme Court has noted that the Article III causation requirement is "relatively modest" at the pleadings stage, *Bennett v. Spear*, 520 U.S. 154, 169 (1997), and the fact that there is an intervening cause of the plaintiff's injury does not necessarily provide "a basis for finding that the injury is not 'fairly traceable' to the acts of the defendant." *Rothstein*, 708 F.3d at 92.

At this early stage of the case, Plaintiffs have met their relatively modest burden of establishing a causal connection between their injuries (outstanding and paid fees and other associated costs) to Defendants' conduct. Plaintiffs allege that Defendants' failure to implement effective procedures to notify E-Z Pass users of underfunded accounts and send timely and proper notices caused them to incur substantially more violations and fees than they otherwise would have. ¶¶ 151-62. In addition, Plaintiffs allege that Defendants' equipment routinely fails to read E-Z Passes, contributing to increasing violations and fees. ¶¶ 138-42. Plaintiffs' allegations thus establish causation under Article III.

NYSTA argues that Plaintiff Ritchie cannot establish causation under Article III because she caused her own injuries. NYSTA Br. at 6-10. NYSTA argument would have the Court prematurely determine who caused Plaintiff Ritchie's injuries. That is not the function of this type of motion and courts have found that "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *Natural Res. Def. Council, Inc.*, 710 F.3d at 85 (citing *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir.2000). "An injury is self-inflicted so as to defeat the causation necessary to establish standing . . . 'only if . . . the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Id.* (citing *Pierre*, 208 F.3d at 402). *Id.*

13

Applying these well-established standards, the NYSTA fails to break the causal chain between Plaintiffs Ritchie's injuries and NYSTA's misconduct. Although NYSTA attaches hundreds of pages of unauthenticated documents outside the pleadings to support its Rule 12(b)(1) motion, Ritchie details that she incurred more than $12,000 in fees and had her car impounded due to Defendant's failure to provide her with Tolls By Mail invoices, and that she was similarly assessed further violations in November 2017 without proper notice. ¶109-112. The NYSTA's documents, even if considered by the Court, cannot break the causal chain between Ritchie's injuries. In any event, Ritchie alleges that she received the notice regarding the November 2017 tolls in February 2018, at which point NYSTA had already imposed additional fees (which are still outstanding). ¶¶ 116-118.[3] This motion is not the vehicle to decide whether Ritchie or NYSTA will ultimately prevail.[4]

---

[3] The Port Authority and the TBTA make similar arguments in their Rule 12(b)(1), wrongly stating Plaintiffs are merely venting "public grievances or the refinement of jurisprudential standing," and that E-Z Pass users and Tolls By Mail participants are at fault for incurring violations. Port Authority Br. at 11; TBTA Br. at 8-10. However, Defendants' blame-shifting cannot break the causal chain between the systemic failings of the cashless toll systems and Plaintiffs' violations and fees, and all of the Plaintiffs have established causation for Article III purposes.

[4] Furthermore, a Court Order awarding monetary damages and injunctive and declaratory relief would redress Plaintiffs' injuries. *Lujan*, 504 U.S. at 560–61.

## II.     The Court Should Deny Defendants' Rule 12(b)(6) Motions[5]

### A.      Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) should be denied where a complaint states a claim for relief "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Scott-Robinson v. City of New York*, No. 15-CV-09703 (NRB), 2016 WL 7378775, at *2 (S.D.N.Y. Dec. 15, 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Kearse v. ATC Healthcare Services*, No. 12 CIV. 233 (NRB), 2013 WL 1496951, at *1 (S.D.N.Y. Apr. 8, 2013). In deciding the motion, "the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *In re Intercept Pharm. Inc. Sec. Litig.*, No. Civ. 1123 (NRB), 2015 WL 915271, at *4 (S.D.N.Y. Mar. 4, 2015) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]" *Naughright v. Weiss*, 857 F. Supp. 2d 464, 468 (S.D.N.Y. 2012) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).

"In evaluating a motion to dismiss under Rule 12(b)(6), the Second Circuit has held that a district court may consider the following materials: 'the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint,' as well as documents that are 'integral to the complaint[.]'" *Endeavor Cap. Hold.*

---

[5] Based on the Port Authority's arguments relating to N.Y. Unconsol. Law § 7107-7108, Plaintiffs voluntarily dismiss their state law claims against the Port Authority, including the First and Second Claims for Relief brought under the New York Constitution, the Fourth Claim for Relief brought under GBL § 349, the Fifth Claim for Relief for Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing, and the Seventh Claim for Unjust Enrichment. *See* Port Authority Br. at 22.

*Grp., LLC v. Umami Sustainable Seafood, Inc.*, No. 13 Civ. 4143 (NRB), 2014 WL 3897577, at *4 (S.D.N.Y. Aug. 7, 2014).[6] However, a court may only consider a document "integral" where "the complaint 'relies heavily upon its terms and effect,'" and even where a document could fairly be called integral, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### B.    Plaintiffs State a Claim for Violating the Eighth Amendment's Excessive Fines Clause

The Eighth Amendment bars excessive fines, including "excessive civil fines." *Hudson v. United States*, 522 U.S. 93, 103 (1997).[7] "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The Second Circuit has held that under *Bajakajian* there are several factors to be considered when determining excessiveness, including: (1) the essence of the crime and its relation to other criminal activity, (2) whether the defendant fits into the class

---

[6] "When documents outside the four corners of the complaint are presented in response to a Rule 12(b)(6) motion, 'a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting material.' The court is not obliged to convert the motion to dismiss into one for summary judgment but may, at its discretion, 'exclude the extraneous material and construe the motion as one under Rule 12(b)(6).'" *Endeavor Capital Holdings Grp., LLC*, 2014 WL 3897577, at *3.

[7] Article I, § 5 of the New York State Constitution also prohibits excessive fines. TBTA argues, in a footnote, that the Eighth Amendment of the U.S. Constitution might not apply to the states. But New York courts have found that it does. *See e.g.*, *Attorney-Gen. of State of N.Y. v. One Green 1993 Four Door Chrysler*, 217 A.D.2d 342, 345, 636 N.Y.S.2d 868 (1996). TBTA cites a Texas case which did not apply the Eight Amendment to a state tolling agency because it found the Eight Amendment, in contrast to New York courts, did not apply to the states. The Supreme Court granted certiorari on this issue on June 18, 2018. *See Timbs v. Indiana*, No. 17-1091. In any case, Plaintiffs bring their constitutional claims under both the United States and New York State Constitutions, the relevant clauses of which are in accord.

of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct. *United States v. Viloski*, 814 F.3d 104, 110 (2d Cir. 2016).

### 1. The Relevant Penalty is the Cumulative Penalty, Not the Per-Violation Penalty

The amount of fines imposed on Plaintiffs is grossly disproportionate to the gravity of the offense. Forgetting to fund an E-Z Pass does not merit thousands of dollars in penalties – a life changing amount for Plaintiffs. In the case of Tolls By Mail, the fees result entirely from Defendants' widespread failure to notify Plaintiffs of tolls due.

The principle flaw in Defendants' argument is that it isolates each violation without looking to the total fine imposed. In *O'Neil v. Vermont*, 144 U.S. 323 (1892), the defendant was convicted on multiple counts of unauthorized sale of liquor and sentenced to a fine of over $6,000 or, if he could not pay the fine, to hard labor for more than 54 years. A majority of the Supreme Court declined on procedural grounds to consider whether this sentence constituted cruel and unusual punishment. Justice Field would have held the sentence to be both cruel and unusual. He stated:

> The state may, indeed, make the drinking of one drop of liquor an offense to be punished by imprisonment, but it would be an unheard-of cruelty if it should count the drops in a single glass, and make thereby a thousand offenses, and thus extend the punishment for drinking the single glass of liquor to an imprisonment of almost indefinite duration. The state has the power to inflict personal chastisement, by directing whipping for petty offenses,—repulsive as such mode of punishment is,—and should it, for each offense, inflict 20 stripes, it might not be considered, as applied to a single offense, a severe punishment, but yet, if there had been 307 offenses committed, the number of which the defendant was convicted in this case, and 6,140 stripes were to be inflicted for these accumulated offenses, the judgment of mankind would be that the punishment was not only an unusual, but a cruel, one, and a cry of horror would rise from every civilized and Christian community of the country against it. It does not alter its character as cruel and unusual that for each distinct offense there is a small punishment, if, when they are brought together, and one punishment for the whole is inflicted, it

becomes one of excessive severity.

*O'Neil v. State of Vermont*, 144 U.S. 323, 340 (1892) (Field, J.) (dissenting). Though a dissent, Justice Field's opinion enunciated for the first time the principle that grossly disproportionate punishment violates the Eighth Amendment. *See Rummel v. Estelle*, 445 U.S. 263, 290 n.5 (1980) (Powell, J.) (dissenting).

Where, as here, the cumulative penalty vastly outweighs the amount of any actual damages, courts have deemed such penalties excessive. "The test is by no means onerous. A cumulative monetary penalty . . . will violate the Eighth Amendment proscription against excessive fines in the infrequent instance that it is grossly disproportional to the gravity of a defendant's offense." *U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 408 (4th Cir. 2013)).[8] In *In re Zyprexa Prod. Liab. Litig.*, 671 F. Supp. 2d 397 (E.D.N.Y. 2009), an action brought by Mississippi alleging that an antipsychotic drug was defective, the court rejected Mississippi's efforts "to obtain statutory penalties on a per-violation basis, in addition to actual damages sought, would result in a multibillion dollar cumulative penalty grossly disproportionate to both the injury Mississippi has suffered and the seriousness of [defendant drug company's] alleged misconduct." 671 F. Supp. 2d at 463. The court held that imposing statutory penalties on each violation ran afoul of the Excessive Fines Clause. *See also State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 692 (S.D.N.Y. 2017) ("The Supreme Court instructs that the aggregate penalties imposed by the various statutory schemes are properly analyzed according to the Eighth Amendment proportionality standard."); *City of New York v.*

---

[8] In sentencing, the Second Circuit considers the cumulative sentence where consecutive sentences are imposed in exceptional circumstances. *United States v. Golomb*, 811 F.2d 787, 791 (2d Cir. 1987). To the extent this sentencing standard applies, the fact that Plaintiffs unintentionally and unknowingly violated the law and continued to do so only because of Defendants' inadequate notice procedures renders this just such a circumstance.

*Milhelm Attea & Bros.*, No. 06-CV-3620 CBA, 2012 WL 3579568, at *32 (E.D.N.Y. Aug. 17, 2012) (noting that defendant conceded that statutory damages would "suggest an excessive penalty amount if the per violation measure were used."); *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-03966 CBA JMA, 2013 WL 3187049, at *38 (E.D.N.Y. June 20, 2013) (same).

In *U.S. ex rel. Smith v. Gilbert Realty Co.*, 840 F. Supp. 71 (E.D. Mich. 1993), the defendant was found liable for violating the False Claims Act by making seven false statements and endorsing 51 rent checks, which under the relevant contract constituted a false certification of non-receipt of additional rent. The penalties, in aggregate, violated the Eighth Amendment, where "[t]he amount that Defendant owes under the civil penalty provision if the statutory minimum of $5,000 per violation is assessed, is 58 times $5,000 = $290,000" and actual damages were less than $2,000. *Id.* at 74. But rather than adopting some mathematical proportion as a bright line for excessiveness, the court found the better approach was to "examine the nature of the conduct." *Id.* Looking to the check endorsements, the court stated,

> One does not normally expect a landlord to consider the terms of the rental agreement for an inexpensive residential apartment each time a rent check is cashed. The cashing of the rent check is a certification only as a result of the contract with the housing authority. While that is sufficient to impose liability under the statute, the Court finds the penalty for the cashing of the checks to be extremely harsh and unjust.

*Id.* at 75.

The Court should consider the fees assessed by Defendants on Plaintiffs in the aggregate, not piecemeal as if each instance was intentional and unrelated.

### 2.   The *Bajakajian* Factors Weigh in Favor of Unconstitutionality

Considering the *Bajakajian* factors, the nature of the conduct at issue here – failing to timely refill E-Z Pass balances – is extremely minor compared to the severity of the penalty. The

Plaintiffs have paid or owe thousands of dollars in fines accumulated over the short period of time between when their E-Z Pass balance ran out and when they received notice that they had been using an E-Z Pass unit that was unfunded, unread, or malfunctioning. Imposing the maximum $100-per-violation fees before even notifying users that they need to refill their account balance or contact customer service to ensure a properly working transponder is no doubt "extremely harsh and unjust." *U.S. ex rel. Smith*, 840 F. Supp. at 75. Permitting Defendants' inadequate notice procedures to aggravate the penalties imposed on Plaintiffs is contrary to the Constitution's protections. The conduct of Tolls By Mail user weighs even more heavily in favor of finding excessiveness. These drivers waited, as instructed, to receive their bill by mail while unknowingly racking up late fees because of Defendants' inadequate notice procedures.

### a.   The Essence of the Crime and Its Relation to Other Criminal Activity

Plaintiffs were convicted of no crime. Instead, Defendants imposed on Plaintiffs $50 or $100 civil fines. Conduent compares these fines to the civil penalty for evading New York City subway fare. Conduent Br. at 7. Plaintiffs discredited this comparison in their pre-motion letter, ECF No. 73 at 4 (June 28, 2018), and Conduent has offered nothing new here. Unlike the fine imposed on those who evade bus and subway fares, or any of the willful acts mentioned by Conduent in its footnote 11, Br. at 7, as one court explained, Plaintiffs "did not knowingly violate or intentionally fail to pay the toll. And in the most egregious set of allegations, Plaintiffs did not receive notice of the underlying toll violation until [months] after the initial violation. Therefore, Plaintiffs' allegations and factual circumstances are different from those of the individual who knowingly and repeatedly engages in prohibited conduct subject to penalty." *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 838–39 (E.D. Va. 2015)(rejecting a

similar argument and upholding claims brought under the Excessive Fines Clause challenging late fees on tolls where plaintiffs alleged defendant had not timely issued notices). Here, as in *Brown*, Plaintiffs were unaware that there were issues with their E-Z Pass or Tolls By Mail accounts.

### b. Whether the Defendant Fits into the Class of Persons for Whom the Statute was Principally Designed

Tolls By Mail users, like Ritchie, are not within the class of person the relevant statutes were meant to regulate because the statutes requires drivers to act in response to toll bills received. Ritchie did not receive bills for specific tolls until fines had already been imposed. E-Z Pass Plaintiffs are, however, within the class the statutes were meant to regulate.

### c. Defendants Imposed the Maximum Fine

Defendants imposed the maximum fine on Plaintiffs every single time Plaintiffs went through a toll. Conduent suggests that Plaintiffs *could* have been fined and imprisoned under certain sections of the New York Penal Code under which Plaintiffs were not charged. Br. at 8. It does not cite any case which a court considers uncharged crimes – especially where no there is no allegation of criminal conduct. Conduent does not cite any case where uncharged civil violations are considered either. In the case on which Conduent relies entirely, *United States v. Castello*, 611 F.3d 116, 123 (2d Cir. 2010), the court looked to "the top of the Guidelines" – but it looked to the "top of the [Sentencing] Guidelines" for the crime which the defendant had been not only charged but also for which the defendant had been convicted. *See also, e.g.*, *United States v. Varrone*, 554 F.3d 327, 329 (2d Cir. 2009) (Sotomayor, J.) (considering only the "maximum authorized under the applicable statute and sentencing guideline"). Plaintiffs have found no case in this Circuit or elsewhere in which a court considered penalties for a violation that had not been charged. Nor has any Defendant cited one. Moreover, Defendants' references

to New York Public Authorities Law §§ 361 and 553 are even less relevant because, while they permit the NYSTA and the TBTA to promulgate regulations with penalties including imprisonment, no party contends that any such regulation was in fact promulgated, let alone for non-payment of tolls. Given that Defendants repeatedly fined Plaintiffs the maximum amount under the applicable statute, this factor weighs heavily in favor of a finding of unconstitutionality.

Defendants' incorrect argument that the tolls should be measured against the *greatest possible charges* that could have been (but were not) brought against Plaintiffs is the only ground upon which Conduent challenges the applicability of *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 838 (E.D. Va. 2015), which held fines on tolls to be grossly disproportional in violation of the Excessive Fines Clause. *See* Conduent Br. at 12, n.21. The other Defendants do not address *Brown* in the context of Plaintiffs' Eight Amendment claim.

### d.  Defendants Are the Cause of Any Harm

The cumulative fines imposed on Plaintiffs – and even the $100 per-violation fines themselves – are arbitrary and excessive in comparison to the harm caused. Plaintiffs unknowingly owed tolls. But Defendants' wholly inadequate notice procedures caused Plaintiffs to unknowingly fail to pay their tolls. Were Defendants seriously concerned about "toll evasion," as they claim to be, they would return the signs indicating whether the E-Z Pass paid, whether there were insufficient funds, or whether there is some other problem with their E-Z Pass. Or they could send text message alerts or emails when an E-Z Pass balance is running low or reaches zero. Instead, Defendants are profiting from the fees they charge "toll evaders" and are content to allow fees for non-payment of tolls to stack up until they finally reveal to drivers that their E-Z Pass balances are in the negative.

Defendants' failures to provide notice to Tolls By Mail users are even worse. Drivers cannot be said to have caused any harm when they are informed they will be billed by mail and receive a bill months later which includes $100 fines for nonpayment. Defendants' notice procedures are the root of the problem they claim to be deterring with their $100 fines. As such, Defendants' imposition of dozens of these fines on unknowing drivers is arbitrary, does not serve the purposes of the statute, and is excessive in comparison to the "wrongful" conduct of Plaintiffs and the Class.

Fining Plaintiffs thousands of dollars for violations they unknowingly committed as a result of Defendants' insufficient notice procedures constitutes a penalty grossly disproportionate to the offense. The Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) is instructive. In that case, the Court held that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." 538 U.S. at 417. The fines at issue were many times that constitutionally suspect limit. Conduent makes much of the fact that *State Farm* found that the fines were unconstitutionally excessive under the Due Process Clause rather than the Eighth Amendment. Conduent Br. at 11. But the test for punitive damages under *State Farm* and the *Bajakajian* test are functionally similar. The Supreme Court even noted that "Although these awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding. This increases our concerns . . ." 538 U.S. at 416. Here, the fines at issue are not criminal in nature and Plaintiffs "have not been accorded the protections applicable in a criminal proceeding."

23

Conduent's attempt to distinguish *State Farm* by framing it as a case about notice falls flat. This case, too, is about notice. Defendants did not timely notify Plaintiffs of either amounts owed for Tolls By Mail or insufficient funds in their E-Z Pass accounts.

### 3. Defendants' Arguments Fail

#### a. Plaintiffs' Claims Are Ripe for Judicial Review

As a threshold matter, Plaintiffs' excessive fines claims are ripe. Conduent, alone, raises this issue for the first time its motion, Br. at 9, despite an opportunity to do so in its pre-motion letter. Conduent argues that Plaintiffs' claim is not ripe because there has been no finding of liability, and it relies on two cases where plaintiffs challenged statutory schemes that allow for the possibility of fines. First *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995) actually supports the ripeness of Plaintiffs' claim. It states that an Eighth Amendment challenge becomes ripe upon the "imposition, or immediately impending imposition, of a challenged punishment or fine." 55 F.3d at 1523. Appellants in that case sought a *pre-enforcement* review of an act under which they "urged that they <u>may be</u> arrested and convicted . . . and, if so, that they <u>may be</u> subject to the maximum imprisonment and civil penalties." *Id.* at 1524 (emphasis added). Plaintiffs here do not challenge toll fees in the abstract or the mere possibility of fees. Defendants actually imposed fees onto Plaintiffs and their challenge is therefore ripe, even under the standard cited by Conduent. The other case Conduent relies on, *Kraebel v. Michetti*, No. 93 CIV. 4596 (JSM), 1994 WL 455468, at *11 (S.D.N.Y. Aug. 22, 1994) was a *pro se* case similarly "challenging the fact that it was possible to be charged enormous fines."

To the extent that Conduent intends to suggest that a fine is not "imposed," under the rule dictated in *Cheffer*, until liability is found, the *Kraebel* court draws a clear distinction between the imposition of a fine and the finding of liability: "Plaintiff concedes that <u>no fines</u>

have been imposed against the property and that no enforcement proceedings are pending against her. She also concedes that no liability for fines has been determined and no judgment has been awarded." *Kraebel*, 1994 WL 455468, at *11. Without question, fines have been imposed on Plaintiffs here. Their claims are therefore ripe. Indeed, Conduent – on the same page – suggests that Plaintiffs should have instead brought an Article 78 proceeding, which requires a final determination. CPLR § 7801(1).

### b. The Fees Defendants Imposed Are "Punishment" Subject to the Eighth Amendment

Imposing thousands of dollars of fines on Plaintiffs for tolls that went unpaid because of Defendants' systemic failures[9] to notify drivers violates the Excessive Fines Clause. Defendants argue that the Excessive Fines Clause does not apply because the fees are not punitive but rather meant to secure compliance and prevent toll evasion. MTA Br. at 12-13; Port Authority Br. at 12; Conduent Br. at 10-11; NYSTA Br. at 10. This argument is premised on a misunderstanding of the law and Defendants have ignored the controlling law cited by Plaintiffs in their pre-motion letter.

To determine whether the Excessive Fines Clause applies, the Court must decide if the fee "may be characterized, at least in part, as 'punitive'" or if, on the other hand, the fee is

---

[9] In a footnote, Br. at 11, n.3, the Port Authority restates an argument it made in a footnote of its pre-motion letter that Plaintiffs have not alleged facts sufficient for a *Monell* claim. The Port Authority did not address the counter-arguments Plaintiffs made in their pre-motion letter at all, and thus the Court should find the Port Authority waived this argument. Regardless, as discussed in Plaintiffs' pre-motion letter, *Monell* does not apply because the Port Authority is a joint venture between the states of New York and New Jersey – not a municipality. Second, even if *Monell* would apply to the claims against the Port Authority, Plaintiffs have thoroughly alleged that the conduct challenged was a policy, practice, or custom of Defendants. *See e.g.*, ¶¶ 137-168; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (*Monell* "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality"). Plaintiffs bring this case as a proposed class action because Defendants systemically fail to notify drivers of tolls and fees.

"purely remedial," that is, "intended not to punish the defendant but to compensate the Government for a loss or to restore property to its rightful owner." *Dubin v. Cty. of Nassau*, 277 F. Supp. 3d 366, 401 (E.D.N.Y. 2017).[10] Indeed, even if a fee serves both remedial and punitive goals, it will not fall outside the Clause's purview so long as it can be explained as serving *in part* to punish. *Austin v. United States*, 509 U.S. 602, 618 (1993). Defendants argue here that the $100 per-toll-fees are merely intended to "secure compliance" and that they are "critical to deterring toll evasion." Port Authority Br. at 12. But the Supreme Court has said that "a civil sanction that cannot fairly be said <u>solely</u> to serve a remedial purpose, but rather can only be explained as also serving either retributive or <u>deterrent purposes</u>, is punishment[.]" *Austin v. United States*, 509 U.S. 602, 610 (1993) (emphasis added). As Defendants concede, the fees can be explained as serving deterrent purposes and the fees are not meant to "compensate the [state] for a loss or to restore property to its rightful owner," meaning that the fees are, at least in part, "punishment" subject to the limitations of the Eighth Amendment. Not a single Defendant

---

[10] *See also von Hofe v. United States*, 492 F.3d 175, 182 (2d Cir. 2007); *Korangy v. U.S. F.D.A.*, 498 F.3d 272, 277 (4th Cir. 2007) (assuming that Food and Drug Administration "penalties [were] at least partially punitive and thus subject to the Eighth Amendment," but "conclud[ing] that [the] penalties imposed [were not] grossly disproportionate to the gravity of the offense"); *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999) (holding that "fines imposed by the City under the ordinances at issue here [were] not solely remedial" and therefore were subject to Eighth Amendment); *Sanders v. Szubin*, 828 F. Supp. 2d 542, 553 n.8 (E.D.N.Y. 2011) (observing that defendants conceded that administrative sanctions imposed by Office of Foreign Assets Control were "at least in part, punitive and thus [ ] properly considered within the ambit of the Eighth Amendment's prohibition of 'excessive' fines"); *Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804, 809 (D. Md. 2008) ("Since this [$16] late payment penalty is clearly meant to punish, it is subject to the Excessive Fines Clauses."); *Prince v. City of New York*, 108 A.D.3d 114, 966 N.Y.S.2d 16, 20 (App. Div. 1st Dep't 2013) (in a case challenging a mandatory sanitation fine, "reject[ing] the City's contention that the Excessive Fines Clause does not apply to the civil penalty at issue here" because "[a]lthough Eighth Amendment claims often arise in the criminal context, civil fines may also fall within reach of the amendment," and "[t]he relevant inquiry is not whether the fine arises in the civil or criminal context, but whether the fine constitutes punishment" (collecting cases)).

attempted to explain why this controlling language from *Austin* does not apply, despite Plaintiffs having made this argument in their pre-motion letter. *See* ECF No. 73 at * 3 (June 28, 2018).

TBTA was the only Defendant that attempted to address the above authority cited by Plaintiffs in their pre-motion letter, and the best TBTA could do was argue that Plaintiffs did not allege that the fees were "punitive" because in three isolated sentences of their 267-paragraph complaint, Plaintiffs refer to the fees as "administrative fees". TBTA Br. at 14, n. 28. Aside from the fact that Plaintiffs put the term in quotations, Compl. at ¶ 233, quoting Defendants' use of the term in the notices of violation and the E-Z Pass contract itself, the whole of Plaintiffs' Complaint cannot be understood to allege that the fees were not "punishment." Plaintiffs' sufficiently alleged punishment – using variations of the term "penalty" more than 50 times in the Complaint.

### c.   Plaintiffs' Excessive Fines Claims Are Not Defeated by any Purported Failure to Exhaust "Procedural Rights"

Conduent argues, Br. at 9-10, that the Excessive Fines clause does not apply because Plaintiffs "failed to exhaust all of their procedural rights," suggesting that they should have pursued an Article 78 proceeding instead. An Article 78 proceeding is not, however, an administrative remedy. Moreover, Conduent has not cited any administrative right that Plaintiffs failed to avail themselves. Importantly, there is no exhaustion requirement in bringing a section 1983 claim. *Pappas v. Giuliani*, 118 F. Supp. 2d 433, 442–43 (S.D.N.Y. 2000) (Buchwald, J.), *aff'd*, 290 F.3d 143 (2d Cir. 2002) ("The Supreme Court has made plain that it will not substantially obstruct access to the federal courts for § 1983 actions by imposing exhaustion or other common law procedural impediments absent clear Congressional intent.").

Conduent cites only one case – *Kirsh v. City of New York*, No. 94 CIV. 8489 (RWS), 1995 WL 383236 (S.D.N.Y. June 27, 1995) – a takings case in which the court held that "[u]ntil

[plaintiffs] obtain a 'final decision,' denying them of their property without just compensation, their takings claim for the rental of their apartment and dispossession of their personal property is not ripe for adjudication." *Id.* at *7. The court there did not consider exhaustion and therefore it does not support Conduent's argument. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 173 (1985) ("While there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action, the question whether administrative remedies must be exhausted is conceptually distinct from the question whether an administrative action must be final before it is judicially reviewable.").

### d.  Payment of Some of the Fees Does Not Defeat Plaintiffs' Claims

Conduent argues, Br. at 10, that the voluntary payment doctrine defeats Plaintiffs' section 1983 claims for violation of the Excessive Fines Clause. The voluntary payment doctrine is an affirmative defense to common law claims and does not apply to Section 1983 claims for the same reasons exhaustion is not a requirement of section 1983 claims. *Pappas*, 118 F. Supp. 2d at 442–43 ("The Supreme Court has made plain that it will not substantially obstruct access to the federal courts for § 1983 actions by . . . common law procedural impediments absent clear Congressional intent."). The unreported case that Conduent relies on, *Leder v. Am. Traffic Sols. Inc.*, 630 F. App'x 61 (2d Cir. 2015), involved an appealed of the dismissal of a section 1983 claim alleging a violation of substantive due process and an unjust enrichment claim. The court only considered the voluntary payment doctrine in analyzing the unjust enrichment claim. *See generally*, 630 F. App'x 61. The other case Conduent cites, *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526, 790 N.E.2d 1155, 1156 (2003), explained that voluntary payment is a "common-law doctrine" and held that it applied to plaintiff's *fraud* claims.

28

Even if the doctrine applied to 1983 claims, it would not apply here. First, Plaintiffs are "not required to preemptively plead facts refuting the voluntary payment doctrine." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009). Second, "Courts have held that the voluntary payment doctrine does not apply when a party makes payments under economic duress or compulsion, *e.g.,* when a party must make payment or face the loss of possession of its property." *See e.g.*, *Rocky Knoll Estates MHC, LLC v. C W Capital Asset Mgmt., LLC*, No. 14-CV-06097, 2015 WL 1632637, at *2 (W.D.N.Y. Apr. 13, 2015). Plaintiffs have alleged facts showing that payments were made under duress, including that their credit scores were at risk and that their cars would be impounded and their registration suspended if they did not pay. ¶¶ 5, 13, 77, 80, 81, 87, 98, 111, 216. Indeed, each notice threatened that non-payment could result in registration suspension. Defendants' outrageous and inflated demands for thousands of dollars above the missed tolls amounted to nothing less than coercion, compelling drivers to pay lesser, but still substantial, amounts under threat of legal action. Moreover, Plaintiffs have consistently disputed the fines, ¶¶ 78, 89, 103, 132, and did not make a truly voluntary payment. *United States v. State Tax Comm'n of Miss.*, 412 U.S. 363, 368 n.11 (1973) ("The payments of the markup were obtained only by coercion; they were paid under protest; and thus they hardly can be said to have been voluntary.").

**e.  Enactments of the State Legislature Are Not *Per Se* Constitutional**

Conduent contends that Plaintiffs may not seek constitutional review of any penalties imposed so long as those penalties are "within the limits set by the applicable statute and regulations." Conduent Br. at 4; *see also* TBTA Br. at 13-14. But such a principle would eliminate *any* constitutional review of penalties, no matter how excessive: Penalties that exceed statutory maximums can be invalidated on state law grounds, and all other penalties would pass

constitutional muster. The Second Circuit has rejected the same argument that Conduent and TBTA make, noting instead that "legislatures have the primary responsibility—<u>subject, of course, to constitutional constraints</u>—for 'determining the types and limits of punishments for crimes.'" *United States v. Viloski*, 814 F.3d 104, 113 (2d Cir. 2016) (quoting *Bajakajian*, 524 U.S. at 336) (emphasis added). Grossly disproportionate punishments run afoul the Constitution whether or not they were approved or conceived by a state legislature. "When a person has been convicted of a crime, including a traffic offense, the court generally may impose 'whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.'" *United States v. Trimble*, 487 F.3d 752, 754 (9th Cir. 2007) (quoting *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

The Fifth Circuit case Conduent relies on for the dubious proposition it propounds, *Newell Recycling Co. v. U.S. E.P.A.*, 231 F.3d 204 (5th Cir. 2000), did not cite any authority except for *Pharaon v. Bd. of Governors of Fed. Reserve Sys.*, 135 F.3d 148, 155 (D.C. Cir. 1998), which is a case upholding a fine only where it was <u>both</u> "proportional to [the defendant's] violation and well below the statutory maximum." 135 F.3d at 157. The fine in *Newell* was likewise "only about 10% of the maximum fine." *Newell Recycling Co.*, 231 F.3d at 210. The other case Conduent cites, *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 DLC, 2014 WL 2535112, at *11 (S.D.N.Y. June 5, 2014), fails for the same reason – the court cites and applies *Newell Recycling Co.* in a single sentence, without further explanation. Moreover, the court there rejected the Excessive Fines argument for several reasons independent of the argument Defendants here assert under *Newell Recycling Co. See* 2014 WL 2535112, at *11.

Nor does TBTA's citation to *Carey Transportation Inc. v. Triborough Bridge and Tunnel Authority*, 38 N.Y.2d 545 (1976) apply here. There the court held that TBTA could classify vehicles and charge different tolls for different classes "so long as there is not involved any of the invidious discriminations condemned by statute or Constitution, or some utterly arbitrary discrimination not related to economic considerations or some accepted public goal." *Carey Transp., Inc.*, 38 N.Y.2d at 550. Plaintiffs have alleged that Defendants' notice procedures cause drivers to incur excessive and arbitrarily imposed fines and that those procedures are contrary to law. TBTA, nor any of the Defendants, have been granted by the state legislature to violate the law.

Defendants have imposed the maximum fine on Plaintiffs for every violation. And every violation (every violation after the first for E-Z Pass users) is the result of Defendants' deficient notice procedures – which are *not* within the "within the limits set by the applicable statute and regulations." Conduent Br. at 4.

### f.   The Additional Fines Were Not Avoidable

Defendants argue next that the Excessive Fines Clause does not apply because they claim Plaintiffs could have avoided the fines by paying the tolls when then they were due. This amounts to nothing more than a denial of Plaintiffs' allegations. Plaintiffs allege that Defendants did not notify Plaintiffs of Tolls By Mail payment due until sometimes months after, at which point Defendants added fees for nonpayment, and that Defendants did not notify E-Z Pass users that there were issues with their E-Z Pass accounts or transponders until Defendants imposed dozens of fines. *See, e.g.*, ¶¶ 151-162. Although Defendants seem to concede that they should have notified Plaintiffs and Class members of toll payments due before imposing additional fees, Defendants did not do so and any assertion to the contrary is an issue better resolved after

31

discovery. *See, e.g.*, ¶¶ 151-62, 194. Without notice of any problem, Plaintiffs could not have known that there were even any charges to avoid.

Both Conduent (Br. at 11, n.19) and TBTA (Br. at 15, n.29) rely on *St. Vendor Project v. City of New York*, 10 Misc. 3d 978, 983, 811 N.Y.S.2d 555 (Sup. Ct. 2005), which is distinguishable from this case because the vendors there became "accustomed to violating the law and paying low penalties as a cost of doing business." The same goes for *Berry v. N.Y. State Dep't of Taxation & Finance*, No. 158919/2016 (Sup. Ct. NY Cty. June 12, 2017), in which plaintiff had his driver's license revoked because he could not afford to pay his taxes. In other words, the vendors in *St. Vendor Project* and the plaintiff in *Berry* knowingly and willfully violated the law. That is not the case here. *See Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 838–39 (E.D. Va. 2015) ("Plaintiffs' allegations and factual circumstances are different from those of the individual who knowingly and repeatedly engages in prohibited conduct subject to penalty.").

Nor are there set procedures in place to mitigate the severity of fines, as TBTA suggests (Br. at 15, n.30). The only case TBTA cites to support its argument that such procedures are even relevant is *Berry v. N.Y. State Dep't of Taxation & Finance*, No. 158919/2016 (Sup. Ct. NY Cty. June 12, 2017), in which there was a <u>formal</u> "compromise program." Here, TBTA offers drivers no recourse aside from sending the accounts to collections and having debt collectors attempt to extract some of the money purportedly owed. The only Defendant that did offer an "Amnesty Program" was NYSTA and it was short-lived and will not help Plaintiffs or the putative Class going forward. The other cases TBTA cites in a footnote do not apply because, for Plaintiffs, it is not "a matter of their own choice to do what is necessary to correct the conditions that led" to their fines. TBTA Br. at 15, n. 30 (quoting *Seril v. New York State Div. of Hous. & Cmty.*

*Renewal*, 205 A.D.2d 347, 613 N.Y.S.2d 157 (1994)). The fines have been imposed and simply correcting the condition that led to the fine – that is, paying the tolls – will not placate Defendants or, especially, the collection agencies they have retained to collect the fines.

### g.  The Filed Rate Doctrine Does Not Apply

The filed rate doctrine does not apply here. The filed rate doctrine "is based both on historical antipathy to rate setting by courts, deemed a task they are inherently unsuited to perform competently, and on a <u>policy of forbidding price discrimination by public utilities and common carriers</u>, . . . which is to say <u>the terms of sale that the carrier has filed with the agency that regulates the carrier's service</u>." *Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001) (Posner, J.) (emphasis added). No rates have been filed here. The only private entity, Conduent, does not create or file rates. The cases Conduent relies on are against "regulated entities." Conduent is not such an entity. Nor are the state agency Defendants – they are regulators themselves, and they did not set or approve the fines either. The state legislature did. Conduent's filed rate argument is off base and should be rejected.

### C.  Defendants Violated Plaintiffs' Procedural Due Process Rights

Before depriving Plaintiffs of a protected property interest—their money[11]—Defendants were required to provide notice and an opportunity to be heard. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Defendants' notice procedures were inadequate and were not followed. ¶ 194. Defendants assessed fees of up to $100 for every toll Plaintiffs went through without informing Plaintiffs that they were incurring these serious fines. Failing to timely notify Plaintiffs that their E-Z Pass did not have sufficient funds or had one of several other possible problems, enabled Defendants to charge Plaintiffs dozens of fees. ¶¶ 82, 99, 108, 123, 128-29;

---

[11] Additionally, Plaintiff Ritchie's car was impounded. ¶ 111.

194. Moreover, Defendants never notified Plaintiffs of some purported violations, *see e.g.*, ¶¶ 11, 125-130, and in most instances when Plaintiffs did receive notice it was months after the fact. Defendants designed their system so that notice would only be provided *after* fees and penalties had snowballed, leading to bills Plaintiffs could not pay and to the threat of destroyed credit and suspension of their vehicle registration. ¶ 5.

Despite knowing that drivers were unaware of the fines being imposed, Defendants took no steps to effect reasonable notice procedures. *See, e.g.*, *Jones v. Flowers*, 547 U.S. 220, 230 (2006) ("the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice"). This is especially egregious because Defendants have Plaintiffs' email addresses and phone numbers and could have notified them immediately. ¶ 195. "Quite simply, Plaintiffs challenge the adequacy of [Defendants'] notice because there is no immediate notification that a toll violation has occurred." *Brown*, 144 F. Supp. 3d at 839 (denying motion to dismiss procedural due process claim on similar facts).

Only NYSTA dared to attempt to distinguish *Brown v. Transurban USA Inc.*, 144 F. Supp. 3d 809 (E.D. Va. 2015), despite Plaintiffs having mentioned it several times in their pre-motion letter. ECF No. 73 (June 28, 2018). Plaintiffs in *Brown* sued a private company, Transurban, contracted by the state to maintain and operate high-occupancy toll ("HOT") lanes. 144 F. Supp. 3d at 817. Transurban "collect[ed] HOT lane tolls through the use of an E–ZPass transponder mounted on the inside of the vehicle's windshield, which is linked to the driver's bank account or credit card; no cash toll booths are offered and instead, an E–Z Pass transponder is required." *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 817 (E.D. Va. 2015). Like in New York, failure to pay constituted a violation of Virginia law and was subject to penalties. *Id.*

at 818. The plaintiffs alleged "that at the time he or she entered the HOT lanes, no indication was given that the E–ZPass was unread or maintained an insufficient balance." *Id.* at 820. Plaintiffs eventually received a notice of the toll violations with fines and administrative fees, but only after fees had snowballed from additional violations. The Court found the that plaintiff stated a due process claim because:

> Plaintiffs are not challenging the constitutionality of the statutory scheme. Instead, Plaintiffs take issue with Transurban's implementation and enforcement, and argue that Transurban's procedures violate Plaintiffs' constitutional rights. At this stage, Plaintiffs' allegations in this regard are sufficient. Quite simply, Plaintiffs challenge the adequacy of Transurban's notice because there is no immediate notification that a toll violation has occurred. Additionally, aside from lacking immediate notice, Plaintiffs have alleged that at times, Transurban provides *no* subsequent notice of unpaid toll amounts before assessing excessive penalties and fees.

144 F. Supp. 3d at 839. The court held that even though the procedures for an opportunity to be heard were sufficient, the inadequate notice alleged would violate due process.

Here, as in *Brown*, the Authority Defendants have contracted with a private company to maintain and operate their toll lanes. Here, too, Plaintiffs challenge the notice procedures for purported violations for the nonpayment of tolls. Similarly, "Plaintiffs allege that they had *no* knowledge or immediate notice of the underlying toll violation. . . . [and] that they did not knowingly violate or intentionally fail to pay the toll." *Id.* at 838. Here, also as in *Brown*, Plaintiffs "challenge the adequacy of [Defendants'] notice because there is no immediate notification that a toll violation has occurred." *Id.* at 839. Furthermore, Plaintiffs here have also alleged that Defendants often provide "*no* subsequent notice of unpaid toll amounts." *Id.* (emphasis in original); s*ee also, e.g.*, ¶¶ 125-129. As such, Plaintiffs have stated a due process claim against Defendants for failing to provide constitutionally adequate notice.

NYSTA's attempt to distinguish *Brown* misses the mark and, at best, serves only to underscore the extent to which *Brown* applies to the other Defendants. First, NYSTA claims that *Brown* should not apply because it relates only to E-Z Pass and claims against NYSTA are only for Tolls By Mail. However, the Complaint alleges, at length, that Tolls By Mail notices are not sent until months after. That is sufficient to state a claim under the reasoning of *Brown*. NYSTA also argues that plaintiffs in that case were not "habitual, scofflaw toll violators" but rather the victims of a "mechanical glitch." But Ritchie alleges that she did not receive notices until the maximum fines had already been assessed. In fact, she did not believe she owed anything until she suddenly learned in November 2017 that she owed $12,000 in tolls and fines. ¶¶ 109-111. That, indeed, suggests a mechanical glitch, which is supported by NYSTA's exhibits, declarations, and exhortations that it sent Ritchie notices.[12] NYSTA also argues that Transurban was unable to rebut "plausible allegations" that it failed to send notices. NYSTA Br. at 20. It is unclear why NYSTA thinks the *Brown* plaintiffs' allegations were plausible while the allegations here are not. Nevertheless, Transurban could not rebut allegations in the complaint because it was a motion to dismiss and it would have been improper to consider any such rebuttal evidence. While NYSTA does not credibly distinguish *Brown*, the only ways that it managed to even try were specific to Plaintiff Ritchie and the Tolls By Mail program – and would not have any bearing on *Brown*'s application to the claims brought by the other Plaintiffs regarding the E-Z Pass program.

---

[12] Whether or not NYSTA honestly believes it sent the notices or not is irrelevant at this stage of the proceedings, because Plaintiffs' allegations are to be taken as true.

### 1. Defendants' Arguments Fail

#### a. Plaintiffs' Allegations Are Sufficiently Detailed, and No Outside Facts Are Permitted at this Stage

Defendants improperly attempt to get around Plaintiffs' pleadings. Instead of arguing that Plaintiffs' allegation are not legally sufficient to state a claim, for instance, the Port Authority ignores the core of Plaintiffs' 267-paragraph Complaint and denies that Plaintiffs even alleged that they did not timely receive notice. The Complaint is, however, replete with such allegations. ¶¶ 4, 67-68, 82-84, 96, 99, 103, 110-111, 116-120, 125-129, 141, 142, 145, 150, 152-160, 194. The Port Authority then suggests that Plaintiffs should have detailed when each purported violation occurred and what date they eventually received the notice. But 9(b) pleading is not required for Plaintiffs' due process claim and Plaintiffs have sufficiently pleaded that they received notices at least 30 days after the purported violations, allowing dozens of additional violations and $100 fines to rack up. By failing to notify Plaintiffs that there was an issue with their E-Z Pass, Defendants violated Plaintiffs' due process rights by continuing to fine them for each toll crossing.

Moreover, the Court should disregard the exhibits and declarations that Defendants attempt to use to contradict Plaintiffs' allegations. *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 512 (S.D.N.Y. 2012) (refusing to consider documents that contradict plaintiff's allegation that she was not provided notice). Defendants' arguments based upon those documents go far beyond the permissible scope of a motion to dismiss.

#### b. The Money Defendants Demand Through the Fines Are a Protected Property Right Under the Due Process Clause

Port Authority, TBTA, and Conduent argue also that $50 or $100 fines do not infringe on a property right protected by due process. That is not the law. *See e.g. Contractors Against*

*Unfair Taxation Instituted on New Yorkers v. City of New York*, No. 93 CIV. 4718 (KMW), 1994 WL 455553, at *4 (S.D.N.Y. Aug. 19, 1994) ("Plaintiffs plainly have a property interest in the money allegedly exacted [by] defendants for payment of fines for traffic violations"). Nor are Plaintiffs just complaining about $50 or $100. Defendants waited to notify Plaintiffs of their purported violations until after Plaintiffs had amassed dozens of fees – thousands of dollars – certainly enough to merit procedural protection from Defendants' arbitrary conduct.

NYSTA acknowledges that the fines are subject to the Fourteenth Amendment, Br. at 12, though it contends the fees deserve only minimal protection. And unlike the cases cited by NYSTA, [13] Plaintiffs here have been assessed *dozens* of $100 fines, totaling thousands of dollars each. The cases NYSTA cites finding that the denial of small sums of money require less process only supports Plaintiffs' position that more (or, rather, timelier) process is required here where Plaintiffs stand to lose thousands of dollars if they are not promptly notified of issues with their E-Z Pass or of tolls due in the Tolls By Mail program.

Conduent argues that there was no deprivation because there is no grace period for E-Z Pass users. Br. at 12-13. First, that contention is not relevant. Plaintiffs claim that they were deprived of due process because Defendants did not notify Plaintiffs of any issues with their E-Z Pass until dozens of fines had accumulated. Second, Conduent cites no case supporting its assertion that (what Conduent views as) a contractually agreed upon deprivation is no deprivation at all. Third, to support its argument that the contract provides "no grace period,"

---

[13] NYSTA, Br. at 12, n.17, improperly relies on *Idris v. City of Chicago, Ill.*, 552 F.3d 564, 566 (7th Cir. 2009) and *Nestle Waters N. Am., Inc. v. City of New York*, No. 15-CV-05189 (ALC), 2016 WL 3080722, at *11 (S.D.N.Y. May 25, 2016) where the courts discussed the relevant $90 and $98 fines in the context of *substantive* due process – not procedural due process – and questioned whether plaintiff had a "fundamental right" in the $90 and $98 for substantive due process purposes. Plaintiffs here do not bring a substantive due process claim. Those cases do not apply.

Conduent uses an *altered* quotation from *Plaintiffs' Complaint* as if it came from the "E-Z Pass Terms and Conditions." Br. at 13. Conduent had to invent a contractual provision to support its argument that there is no grace period. Though it cites several provisions suggesting that E-Z Pass users must fund their accounts, Plaintiffs do not challenge this. Plaintiffs contend only that Defendants must promptly notify Plaintiffs should those accounts run negative. This, too, is supported by the contract. *See infra* II(H)-(I)

### c. Defendants Deprived Plaintiffs of Constitutionally Protected Property Rights

Plaintiffs each paid or owe fines to Defendants. Conduent claims that Plaintiffs have not been deprived of a property interest because Defendants had not obtained a judgment against any of the Plaintiffs. Br. at 13. To support its position Conduent points to the notices, entitled "Notice of Violation Enforcement Impending Collection/Legal Action." *Id.* First, Defendants sent each Plaintiff's unpaid tolls and fines to collections, just as threatened. Second, each Plaintiff has either paid fines or still owes fines. Third, in the single case that Conduent relies on, *Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 38 (2d Cir. 2013), the court held that the claim was not ripe where the defendant village threatened to enforce a tax lien on plaintiff's property when both parties agreed that "no such lien ever was placed on his property." 509 F. App'x at 39. As such, there was no "final, definitive position" of the defendant village to challenge and no "real and immediate threat of official action" to establish a justiciable case. *Id.* Here, on the other hand, Defendants had a "final, definitive position" and they took action: they sent notices stating "payment is required," *see e.g.*, Christensen Decl., Exhibit 6 at *3 (of 160), and "This is your final notice and the remaining payment in full is due immediately," and threatened "referral to a collection agency, imposition of additional fees and charges and/or suspension of your vehicle

registration[.]" *see e.g.*, Fausti Decl. Exh B at \*1. Defendants' attempts to collect dozens of fines were no mere threat.

### d.  Plaintiffs' Claims for Lack of Notice Do Not Require Exhaustion

Defendants also reframe Plaintiffs' claim to argue that it fails because Plaintiffs did not avail themselves of all available procedures. Due process entitled Plaintiffs to both notice and an opportunity to be heard. Plaintiffs do not challenge the procedures relating to the opportunity to be heard. Plaintiffs instead argue that Defendants did not timely notify Plaintiffs and thereby caused Plaintiffs to continue to amass more purported violations, when timely notice would have greatly reduced the harm to Plaintiffs by granting them an opportunity to fix whatever problem precipitated the fee. It is timely notice, not necessarily more procedural rights to challenge the fees, that Plaintiffs contend would have prevented them harm.

The cases on which Defendants rely do not support their argument. Conduent cites, Br. at 16, n.32, *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001), in which the Second Circuit found an Article 78 proceeding met the requirements of due process, 264 F.3d at 174, but did not address the issue here, where Plaintiffs allege that *notice* was deficient and untimely. The same fault lies in the application of *Dubin v. Cty. of Nassau*, 277 F. Supp. 3d 366, 387 (E.D.N.Y. 2017), which TBTA relies on, Br. at 18. The plaintiff there challenged only the "unfair adjudication process" – not the notice procedures. It is not the case here, as it was in *Dubin*, that Plaintiffs are challenging procedures of which they did not take advantage.

Conduent wrongly relies also on *Parratt v. Taylor*, 451 U.S. 527 (1981), in which "the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure" and where "[t]here [was] no contention that the procedures themselves [were] inadequate nor [was] there any contention that it was practicable for the State

to provide a predeprivation hearing." 451 U.S. at 543. Plaintiffs here challenge Defendants'
notice procedures and believe that providing more timely notice would be practicable.

One case that Conduent cites, *Brody v. Vill. of Port Chester*, 434 F.3d 121 (2d Cir. 2005),
contradicts its argument and supports Plaintiffs' due process claim. In that case, the plaintiff
claimed that, in the taking of his property, the defendant's notice was inadequate and that the
opportunity to be heard was insufficient. The court held that while the hearing provided under
the statute was sufficient, the notice was nevertheless insufficient under the Due Process clause.
Here, Plaintiffs do not challenge the opportunity to be heard but rather contend that Defendants'
notice procedures are inadequate and deprived Plaintiffs of their property. This, as in *Brody*, is
enough to state a claim.

### e.   It Is Irrelevant that Plaintiffs Eventually Received Some Notices

Plaintiffs did not receive the timely notice they are entitled to under the Fourteenth
Amendment. Due Process requires that notice be reasonable in the circumstances. The Supreme
Court has explained that the "notice required will vary with circumstances and conditions."
*Jones v. Flowers*, 547 U.S. 220, 227 (2006) (quoting *Walker v. City of Hutchinson, Kan.*, 352
U.S. 112, 115 (1956)). The mere fact that Plaintiffs eventually received some of the notices does
not overcome the fact that Defendants waited weeks or months to do so, and imposed $100 fines
on Plaintiffs every time they used a toll road during that period. That additional harm could have
been abated through a reasonable notice system, like the one the Authority Defendants had used
for years to alert drivers as to whether their E-Z Pass transactions processed successfully before
transitioning to an entirely cashless tolling system. It is unreasonable in the circumstances to
withhold notice of low or negative account balances that can cause fines to quickly balloon into
the tens of thousands of dollars. ¶¶ 194-95. "Plaintiffs' allegations in this regard are sufficient.

Quite simply, Plaintiffs challenge the adequacy of [Defendants'] notice because there is no immediate notification that a toll violation has occurred." *Brown*, 144 F. Supp. 3d at 839. As in *Brown*, Plaintiffs were harmed by Defendants' unnecessary delay in notifying them of issues with their E-Z Pass accounts. Conduent cites a case, *Oneida Indian Nation of New York v. Madison Cty.*, 665 F.3d 408, 429 (2d Cir. 2011), which states that a plaintiff challenging the *method* of notice would have no due process claim if notice were actually received. Plaintiffs here challenge the *timeliness* of notice.

### D. The Court Should Not Dismiss Plaintiffs' Claim under the New York State Constitution

Conduent and NYSTA argue that Plaintiffs' § 1983 claims should be dismissed insofar as they are premised on violations of the New York State Constitution. Those Defendants cite cases for the proposition that a "violation of state law is not cognizable under § 1983." Conduent Br. at 17; NYSTA Br. at 22. But this argument misses the mark because Plaintiffs bring their New York State constitutional claims separately. Plaintiffs only use the vehicle of § 1983 to bring claims under the United States Constitution, not claims under the New York Constitution. Should the 1983 claim fail,[14] Plaintiffs will still have separate claims under the corresponding clause of the New York State Constitution.

### E. Conduent Is a State Actor

Conduent is a state actor delegated the statutory authority granted to NYSTA, TBTA, MTA, and the Port Authority. It is well-established that when private entities act to enforce state statutes or otherwise act under color of state law they may be sued under 42 U.S.C. § 1983 for

---

[14] For instance, if the Supreme Court in *Timbs v. Indiana*, No. 17-1091, finds that the Excessive Fines Clause is not incorporated into the Fourteenth Amendment and does not apply to the States, Plaintiffs should be allowed to proceed with their Excessive Fines claim under the New York State Constitution.

violating the federal constitutional or statutory rights of the plaintiffs. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). "I]n determining whether a particular action or course of conduct is governmental in character" courts may consider, among other things in light of the circumstances, (1) 'the extent to which the actor relies on governmental assistance and benefits"; (2) "whether the actor is performing a traditional governmental function"; and (3) "whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 621–22 (1991). Moreover, the Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Lugar*, 457 U.S. at 941 (1982). This Circuit holds that "the actions of private entities may be considered to be infused with 'state action' if those private parties are performing a function public or governmental in nature and which would have to be performed by the Government but for the activities of the private parties." *Kia P. v. McIntyre*, 235 F.3d 749, 757 (2d Cir. 2000).

Plaintiffs' Complaint states a straightforward case of state action under these standards. The Authority Defendants have delegated the traditional governmental functions of traffic enforcement and toll collections to Conduent. *Bester v. Chicago Transit Auth.*, 676 F. Supp. 3d 833, 838 (N.D. Ill. 1987) ("The toll road case is relatively easy because building and maintaining the roads, and indeed the toll road, has been a government function since ancient ages."), *aff'd* 887 F.2d 118 (7th Cir. 1989); *Molina-Estrada v. Puerto Rico Highway Auth.*, 680 F.2d 841, 846 (1st Cir. 1982) ("[W]e can think of few private corporations that operate toll roads, this factor makes the Authority's functions look all the more [as a] traditional" government function). Moreover, the injury Plaintiffs complain of has been "aggravated in a unique way by the

incidents of governmental authority." *Edmonson*, 500 U.S. at 622. That is, Defendants' lack of timeliness in notifying Plaintiffs of purported violations caused additional fines.

The defendant in *Brown v. Transurban* made the same argument that Conduent makes here and, after careful consideration, the court rejected it. 144 F. Supp. 3d at 833-36. It held that "the operation of, and enforcement of laws on, roads and public highways, including toll roads, is a function traditionally reserved to the state." *Id.* at 835-36. It found additional support in the fact that Transurban was performing the role of the police officer in enforcing toll violations and "[u]ndeniably a police officer acting within the scope of her official duties is a state actor." *Id.* at 836 (citing *Payton v. Rush–Presbyterian St. Luke's Med. Ctr.,* 184 F.3d 623, 629 (7th Cir.1999) ("[I]f the state cloaks private individuals with virtually the same power as public police officers, and the private actors allegedly abuse that power to violate a plaintiff's civil rights, that plaintiff's ability to claim relief under § 1983 should be unaffected.")).

Even if the Court considers toll roads as outside traditional state functions—which they are not—this case is about law enforcement and the imposition of fines, which are without question powers traditionally exclusively reserved to the state. *Brown v. Ferrara*, No. 2:10-CV-00523-GZS, 2011 WL 1637928, at *6 (D. Me. Apr. 28, 2011) ("Butler is susceptible to a Section 1983/Fourth Amendment claim because he was a state actor when he issued Brown a traffic ticket for driving with an expired inspection sticker."); *Hoekstra v. City of Arnold, Mo.*, No. 4:08CV0267 TCM, 2009 WL 259857, at *17 (E.D. Mo. Feb. 3, 2009) (denying motion to dismiss against private company ATS operating and enforcing city's red light camera program and holding "Plaintiffs' allegations regarding ATS's actions under its contract with City are sufficient to demonstrate that ATS may be a state actor for purposes of the § 1983 claims . . .

arising out of the enactment and enforcement of the Red Light Camera Ordinance, an ordinance focused on traffic regulation.").

Conduent is not just a private company merely operating in a heavily regulated industry, like the defendant in *Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974), on which Conduent relies. Conduent is enforcing the law on the State's behalf. Moreover, *Atkinson v. B.C.C. Assocs., Inc.*, 829 F. Supp. 637 (S.D.N.Y. 1993), on which Conduent also relies, is distinguishable: "BCC [the contractor] only counts TBTA's money; it does not collect it. Counting money is traditionally performed by private banks, not the government, and therefore differs from public functions." 829 F. Supp. at 649. Here, not only does Conduent collect money for the Authority Defendants, it also enforces the traffic laws, a clear public function traditionally held exclusively by the State.[15]

## F.    Conduent Is Not Entitled To Qualified Immunity

Conduent is not entitled to qualified immunity at this stage of the proceedings. "Usually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted," *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015). The affirmative defense of qualified immunity requires that "First, the defendant must show that the conduct of which the plaintiff complains falls within the scope of the defendant's official duties. . . . Second, the defendant must demonstrate that his alleged conduct did not violate one of the plaintiff's clearly established statutory or constitutional rights." *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 268–69 (2d Cir. 1996). Conduent does not meet this standard.

---

[15] In addition to enforcing the toll evasion statutes, Conduent also enforces the speed limits. *See* ¶ 152.

Conduent has failed to "demonstrate that the *specific acts at issue* were performed within the scope of their official duties." 79 F.3d at 270. (emphasis in original). Nor could it, based on the face of the Complaint alone. It claims without support that it was acting at the direction of the state authorities. The Complaint alleges otherwise. The Authority Defendants provided "strict performance standards for notifying drivers." ¶ 152. The Authority Defendants directed that Conduent notify drivers, in most instances, within a few days. *Id.* The gravamen of the Complaint is that Defendants and, in particular, Conduent utterly failed to notify drivers for months of purported violations. The Complaint alleges that the Executive Director of NYSTA wrote to Conduent and specifically expressed concern over the "lag time from [drivers] travel over the bridge to when they receive a bill." ¶ 158. Conduent cites this letter as somehow supporting qualified immunity when it, in fact, signals that Conduent had strayed far from the scope of its duties.

Moreover, notice is fundamental to due process. By failing to notify Plaintiffs of purported violations, Conduent cannot say that it "did not violate one of the plaintiff's clearly established statutory or constitutional rights." 79 F.3d at 268.

The Court should not dismiss Plaintiffs' claims against Conduent at this early stage based on qualified immunity.

### G.    Plaintiffs State a New York GBL § 349 Claim

Plaintiffs allege all the elements of a New York Deceptive Trade Practices Act ("NYDTPA") claim. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349. The New York Court of Appeals has indicated that the NYDTPA should be liberally construed to provide "needed authority to cope with the numerous, ever-changing types of false

46

and deceptive business practices which plague consumers in [the] State." *Karlin v. IVF America, Inc.*, 690 N.Y.S.2d 495, 498 (N.Y. 1999); *see also New York v. Feldman*, 210 F. Supp. 2d 294, 300-01 (S.D.N.Y. 2002) ("As indicated by the statute's 'expansive' language, [G.B.L.] 349 was intended to be broadly applicable, extending far beyond the reach of common law fraud.") (collecting cases). To state a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012). Justifiable reliance is not required. *Id.* at 941-42.

### 1. Plaintiffs Allege Defendants Engaged in Consumer-Oriented Conduct Under New York GBL § 349

Plaintiffs allege Defendants' misconduct was consumer-oriented. The "consumer oriented" element of GBL § 349 requires that the plaintiff allege that the defendant's acts or practices "potentially affect similarly situated consumers," *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995), or put differently, that the defendant's acts or practices have "a broader impact on consumers at large." *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 120 (S.D.N.Y. 2002) (Buchwald, J.). Furthermore, courts have found that a defendant's repeated use of standardized agreements or boilerplate language, like the E-Z Pass Agreements and Notices of Violation here, "are significant in showing that challenged actions are consumer oriented," particularly where disparate bargaining power is involved. *Interested Underwriters at Lloyd's of London Subscribing to Policy No. 991361018 v. Church Loans and Inv. Trust*, 432 F. Supp. 2d 330, 332-35 (S.D.N.Y. 2006) (collecting cases).

Here, Defendants offer E-Z Passes to consumers throughout New York State pursuant to the standardized terms and conditions of the E-Z Pass Agreement. ¶¶ 134-35. Farina, Troiano, Gardner, and Rojas, like many other New Yorkers, voluntarily entered the E-Z Pass Agreements with the Port Authority, the TBTA, and NYSTA. ¶¶ 67, 83, 100, 124. The Tolls By Mail Program likewise affects thousands of New Yorkers, like Ritchie, who use bridges and tunnels without an E-Z Pass. ¶¶ 109-10. Defendants (through Conduent) issued Notices of Violation containing standardized and deceptive language to thousands of drivers. ¶ 173. Therefore, Defendants' misconduct "potentially affects" thousands of similarly situated E-Z Pass account holders pursuant to the E-Z Pass Agreements, as well thousands of drivers who participate in the Tolls By Mail Program, and at this stage of the case, Plaintiffs allege that Defendants' acts or practices were "consumer-oriented" under GBL § 349. *See Oswego*, 647 N.E.2d at 744.

Defendants mainly rely on *Kinkopf v. Triborough Bridge & Tunnel Auth.*, 6 Misc. 3d 73, 74 (2004) to argue that their acts or practices are not "consumer-oriented," but rather arise from "legislative[] mandate." *E.g.*, Port Authority Br. at 17. At the outset, in the fourteen years since *Kinkopf*, it has been cited only three times, and it is not binding on this Court. More importantly, entering into the E-Z Pass agreements was not imposed by law but rather was a voluntary, consumer-oriented decision by Plaintiffs. Defendants' delinquent notices negatively affect consumers at large and therefore are within the scope of GBL § 349, especially when considering the broad remedial purpose of GBL §349. *See Karlin*, 690 N.Y.S.2d at 498 ("These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad") (collecting cases).[16]

---

[16] Defendants' other cases are likewise distinguishable. In *Estler v. Dunkin' Brands, In.*, 16 Civ 932 (LGS), 2016 WL 5720814, at *2 (S.D.N.Y. Oct. 13, 2016), the plaintiffs GBL § 349 claim largely failed because the plaintiffs did not pursue the exclusive remedy for the refund of

### 2. Plaintiffs Allege Defendants' Conduct Was Likely to Deceive Reasonable Consumers Under New York GBL § 349

Plaintiffs also allege conduct likely to deceive reasonable consumers. "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Orlander v. Staples*, 802 F.3d 289, 300 (2d Cir. 2015). Omissions, particularly "where the business alone possesses material information that is relevant to the consumer and fails to provide [the] information," can also form the basis of liability. *Oswego*, 647 N.E.2d at 745. Courts take a holistic approach to the purported deceptive business practice to determine whether a materially misleading act has been alleged under New York's consumer protection statutes. *See Sims v. First Consumers Nat. Bank*, 758 N.Y.S.2d 284, 286 (1st Dep't 2003) ("The gist of plaintiffs' deceptive practices claim is that the typeface and location of the fee disclosures, combined with high-pressure advertising, amounted to consumer conduct that was deceptive or misleading . . . ."). Importantly, "whether a particular act or practice is deceptive is usually a question of fact." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013).

In this case, Plaintiffs allege that Defendants issued notices that included fees that accumulated only through Defendants' failure to notify Plaintiffs sooner after their first purported violation, and that the notices misrepresented the true amount owed and falsely and arbitrarily blamed Plaintiffs for the systematic shortcoming of cashless tolling in New York. ¶¶

---

improperly collected sales taxes set forth in N.Y. Tax Law §§1139-1140. In *Singh v. NYCTL 2009-A Trust*, 14 Civ. 2558, 2016 WL 3962009, at *11 (S.D.N.Y. July 20, 2016), among other reasons, the plaintiff's GBL § 349 claim failed because it arose "in the context of foreclosure litigation." Finally, *St. Pierre v. Retrieval-Masters Creditors Bureau*, No.:15-2596(FLW)(DEA), 2017 WL 1102635, at *7 (D.N.J. Mar. 24, 2017) involved claims under the Fair Debt Collection Practices Act, not GBL § 349. Here, on the other hand, Plaintiffs' claims were consumer-oriented because they largely involve their voluntary decision to enter into the E-Z Pass Agreement and Tolls By Mail Program.

212-16. Defendants also falsely portrayed initial notices as follow-up notices. ¶¶ 118, 127-28, 216. Likewise, the E-Z Pass Agreement and signs placed in the approach to toll plazas indicate Plaintiffs would receive notice, but the notice they received was so untimely that it failed to serve its purposes. Because "the price of the [tolls were] inflated as a result of the defendants' deception," Plaintiffs have alleged a deceptive act or practice under GBL § 349. *See Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014).

Conduent and the TBTA miscast Plaintiffs' allegations to argue that the Defendants did not engage in deceptive practices under GBL § 349. Conduent Br. at 22-23; TBTA Br. at 19-20. More specifically, Conduent and TBTA argue that the notices sent to the Plaintiffs included no materially misleading information. *Id.* However, contrary to those arguments, Plaintiffs allege that "Defendants falsely blamed Plaintiffs for the . . . fees, claiming that that they were due to insufficient account balances, late payments, failure to register an [E-Z Pass] tag, or any other number of reasons," but in reality, the fees rapidly accumulated due to Defendants' failure to properly notify drivers. ¶¶ 213-216. Therefore, Plaintiffs allege Defendants' deceptive practices under GBL § 349, and the Court should reject Conduent's and TBTA's assertion otherwise.

### 3. Plaintiffs Allege Defendants' Misconduct Injured Plaintiffs Under New York GBL § 349(h)

GBL § 349(h) allows "any person who has been injured . . . to recover his actual damages or fifty dollars, whichever is greater," and "the court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damage up to one thousand dollars, if the court finds the defendant willfully or knowingly violated [GBL § 349]." N.Y. GBL § 349(h). *Oswego*, 647 N.E.2d at 745. ("A plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm.").

Plaintiffs allege actual injury under GBL § 349, and they are alternatively entitled to statutory damages under GBL § 349(h). *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 526 (E.D.N.Y. 2017) ("[S]tatutory damages under section 349(h) are available on a class basis in federal court[.]"). Each of the Plaintiffs paid fees wrongly assessed against them by Defendants or they were the subject of collection actions by Defendants. ¶¶ 77, 94, 108, 120-21, 129-32, 258. Plaintiff Ritchie further alleges that, in addition to being assessed more than $12,000 in fees by NYSTA, her car was impounded. ¶ 111. Plaintiffs' out-of-pocket payment of improper fees and related costs constitute actual damages under GBL § 349 and also allow for statutory damages.[17]

### 4.   The Filed Rate Doctrine Does Not Bar Plaintiffs' NY GBL § 349 Claims

Conduent and the NYSTA argue that the filed rate doctrine bars Plaintiffs' GBL § 349 claim. Conduent Br. at 23. However, as discussed above, the filed rate doctrine does not apply to Defendants' fines because there was no rate filed by Conduent or any other Defendant. *See* § II.B.3.g., *supra*. Furthermore, Plaintiffs challenge the amount of the fines for purposes of their Excessive Fines claim, but for their other claims, including their GBL § 349 claim, Plaintiffs' challenge focuses on Defendants' failure to provide proper notice, failing to act in accord with the rights set forth in the E-Z Pass Agreement, and—for Conduent in particular—failing to comply even with the standards set forth by the New York tolling agencies. ¶¶ 152-53.

---

[17] Conduent asserts that Plaintiffs were not damaged under GBL ¶ 349 because "[n]one of the Plaintiffs alleges that a notice misled them to pay an undisclosed fee or another other amount." Conduent Br. at 23. Conduent's argument relates more closely to the second element of a GBL § 349 claim, *i.e.* whether Defendants' practices were likely to mislead a reasonable consumer, not whether Plaintiffs suffered injury under GBL § 349(h). In any event, Plaintiffs allege that Defendants have engaged in deceptive acts or practices under GBL § 349 through misrepresentations contained in the E-Z Pass Agreement and other notices. ¶¶ 213-16.

The cases on which Conduent relies all challenge the rates themselves, including whether the rates were reasonable or included impermissible "kickbacks." *See Rothstein v. Balboa*, 794 F.3d 256, (2d Cir. 2015) (Plaintiffs allege that the amounts billed by GMAC were inflated because they did not reflect hidden "rebates" that GMAC received from Balboa through a 'kickback scheme.'"). Here, however, the filed rate doctrine (to the extent it even applies) does not bar Plaintiffs' claims because Plaintiffs largely contest Defendants' failure to provide proper notice, which deviates significantly from that which was contemplated by the regulating agencies. *See, e.g.*, 21 NYCRR 1021.3(c).

### H.    Plaintiffs State a Claim for Breach of Contract

Plaintiffs state a claim for breach of contract against Defendants TBTA, NYSTA, and the Port Authority. To allege a claim for breach of contract, "a plaintiff must prove four elements: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Frye v. Lagerstrom*, 15-cv-5348, 2016 WL 3023324, at *4 (S.D.N.Y. May 24, 2016) (Buchwald, J.). "When interpreting a contract [under New York law], the 'intention of the parties should control and the best evidence of intent is the contract itself.'" *Tobin v. Gluck*, 11 F. Supp. 3d 280, 288 (E.D.N.Y. 2014). But when a provision is ambiguous—*i.e.*, "reasonably susceptible of more than one interpretation," the provision should be construed against the drafter, particularly in adhesion contracts where the plaintiff played no role in drafting or negotiating the contract. *Natt v. White Sands Condo.*, 95 A.D.3d 848, 943 (N.Y. App. Div. 2012).

Here, the E-Z Pass Agreement constitutes a valid, enforceable contract between Plaintiffs and Defendants TBTA, NYSTA, or the Port Authority, which Defendants breached. ¶¶ 221-23 ("[Y]our account will be assigned to one of the above-mentioned agencies, and your Agreement

is with that particular agency.").[18] Under the express terms and conditions of the E-Z Pass Agreement, Defendants can only refer Plaintiffs and other drivers to collection agencies, impose additional fees or charges, or seek to suspend registrations after a failure to respond to Notices of Violation. ¶ 136 (citing E-Z Pass Agreement, § 5(c)). Because Defendants failed or greatly delayed providing Notices of Violation, Plaintiffs could not have responded, and imposing additional fees and charges upon subsequent bridge crossings—as well as collection agency referrals and registration suspensions—violated the express terms and conditions of the E-Z Pass Agreement. ¶¶ 151-62. Likewise, Defendants' equipment failure resulted in violations despite the use of valid, funded E-Z Passes, and in those instances, E-Z Pass users received no indication that their E-Z Passes had not been read until they received a delayed Notice of Violation. ¶¶ 137-42. Defendants have therefore violated their contractual obligations, and Plaintiffs allege all elements of a breach of contract claim. At the very least, Defendants' contractual obligation to provide notice is ambiguous, making Plaintiffs' claim unsusceptible to Defendants' motions.

Contrary to NYSTA's and Conduent's argument, there is a valid, enforceable contract for the Tolls By Mail program. NYSTA Br. at 24. "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy[,]"and acceptance "of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited and required by the offer." Restatement (Second) of Contracts § 33(2), § 50(1). "A contract implied in fact may result as an inference from the facts and

---

[18] The Port Authority and the TBTA argue that Plaintiffs fail to allege a contractual relationship, relying on language in the E-Z Pass Agreement stating an E-Z Pass user's account will be assigned to either the Port Authority, TBTA, or NYSTA. ¶¶ 21-22. But at this stage of the litigation, where all reasonable inferences should be made in the Plaintiffs' favor, the Court should assume that each Plaintiff's E-Z Pass Agreement was assigned to the relevant Defendant. Furthermore, "[r]egardless of which agency each Plaintiff was assigned, they were treated similarly because all agencies delegated the opertation of [E-Z] to Conduent." ¶ 223.

circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention[.]" *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey*, Inc., 448 F.3d 573, 582 (2d Cir. 2006).

Here, when drivers approach a cashless toll, they are notified that they will be billed by mail for the toll in a given amount. Signs relaying that there is a toll, the amount of the toll, and that bills would be mailed constitute the bridge operator's offer and the terms of the offer for the Tolls By Mail contract, which drivers, like Ritchie, accept by crossing the relevant bridge. ¶¶ 235-37. The Parties' consistent course of conduct created an implied-in-fact contract that Defendants breached by failing to timely and properly bill participants through the mail and including unjustified administrative fees. ¶¶ 111-12, 116-21, 238-39 ("Defendants have failed to timely send out bills and have included administrative fees for the nonpayment of tolls."). Thus, Ritchie alleges the terms of an implied contract which NYSTA breached.

In addition, Defendants cannot sidestep their contractual obligations by arguing that Plaintiffs are required to pay tolls by the operation of law. TBTA Br. at 21. Under the E-Z Pass Agreement, Defendants were obliged to provide proper and timely notice and to assess violations under appropriate circumstances, and they did not. The fact that New York law and the E-Z Pass Agreement both create rights and duties pertaining to tolling does not nullify the E-Z Pass Agreement. Defendants' cited cases concern other claims or the adequacy of consideration to form a contract and have no applicability to Plaintiffs' properly stated breach of contract claim.[19]

---

[19] *St. Pierre* involved FDCPA claims, not breach of contract claims. 2017 WL 1102635, at *7. Similarly, *Rosenzweig v. Transworld Sys. Inc.*, No. 16-00227, 2017 WL 3025557 (D.N.J. July 14, 2017) involved claims other than breach of contract, including claims brought pursuant to the FDCPA. *Id.* at *1. *Blandford Land Clearing Corp. v. Nat'l Union Fire Ins. Co.*, 260 A.D.2d 86,

## I.      Plaintiffs State a Claim for the Breach of Implied Covenant of Good Faith and Fair-Dealing

Plaintiffs also state a claim for breach of the implied covenant of good faith and fair dealing against the Port Authority, NYSTA, and the TBTA. Under New York law, "a covenant of good faith and fair dealing in the course of contract performance" is "[i]mplicit in all contracts." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (citation omitted). The implied covenant "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[,]'" and where the contract contemplates the exercise of discretion, the implied covenant "includes a promise not to act arbitrarily or irrationally[.]" *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (N.Y. 1995). "The elements of a claim of breach of the implied covenant are similar to causes of action for breaches of duties of care, in that it requires the existence of a duty, breach of that duty, causation, and damages." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (citation omitted).

In this case, the E-Z Pass Agreement contains an implied covenant that Defendants will timely notify E-Z users of potential violations. ¶¶ 230-33. By failing to notify Plaintiffs and other drivers of their purported violations until weeks or months after the fact, Defendants prevented Plaintiffs from timely paying or disputing their tolls and fees, and instead, caused Plaintiffs to incur improper and excessive fees that accumulated only due to Defendants' delay in sending notices in the first instance. *Id.* Indeed, Defendants' conduct impeded Plaintiffs' performance of the contract. ¶ 230. Additionally, Plaintiffs provided Defendant the right to receive updated information regarding their credit cards from the issuing bank or their bank accounts from their

---

94 (1st Dep't 1999) involved an analysis of an insurance company's obligation to pay subcontractors under a bond pursuant to New York Lien Law. *See* TBTA Br. at 21 n.42.

bank. ¶ 232. Rather than exercise this authority, Defendants charged Plaintiffs $100 fines. Therefore, Defendants abused their discretion or acted arbitrarily, and Defendants' misconduct constitutes a breach of the implied covenant of good faith and fair dealing.

NYSTA and TBTA wrongly argue that Plaintiffs' breach of the implied covenant claim should be dismissed as duplicative of Plaintiffs' breach of contract claim. NYSTA Br. at 24 n. 36; TBTA Br. at n.43. First, Plaintiffs' breach of contract claim advances a different theory – that Defendants imposed "additional fees or charges" on Plaintiffs before they failed to respond, in violation of Paragraph 5(c) of the Agreement. Plaintiffs' implied covenant claim is based on their failure to provide notice and failure to receive updated financial information. Defendants' cannot contend that completely different and separate theories of liability are duplicative of Plaintiffs' contract argument under Paragraph 5(c) of the Agreement.[20]

Second, courts often refuse to dismiss breach of the implied covenant claims as duplicative of breach of contract claims on a motion to dismiss, particularly where the alleged misconduct may not be covered by express contract language or falls under an ambiguous contractual provision. *Demetre v. HMS Holdings Corp*., 127 A.D. 493, 493 (N.Y. App. Div. 2015) (reversing the dismissal of a claim for breach of the implied covenant claim and stating that the dismissal was inconsistent with the trial court's finding that the allegedly breached provision was ambiguous); *see also Hard Rock Café Intern., (USA), Inc. v. Hard Rock Hotel, LLC*, 808 F. Supp. 2d 552, 567-68 (S.D.N.Y. 552) ("[W]here the existence or meaning of a

---

[20] Unlike this case, Defendants' supporting authority involved breach of the implied covenant claims duplicating the plaintiffs' breach of contract claims. *See Fuller Landau Advisory SVCS v. Gerber Fin. Inc.*, 17-CV-6027 (JPO), 2018 WL 3768035, at *6 (S.D.N.Y. Aug. 8, 2018) ("Because 'the conduct and resulting injury alleged' in the second cause of action for breach of the covenant of good faith and fair dealing 'are identical to those alleged in the first ... cause[ ] of action alleging breach of contract,' the second cause of action must be dismissed as duplicative.); *Fleischer v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (same).

contract is in doubt, a party may plead a claim for breach of the covenant of good faith and fair dealing in the alternative."). The Court should not conclude that Plaintiffs' implied covenant claim duplicates their breach of contract claim without further development of the record. At a minimum, Defendants' obligation to provide notice is ambiguous. Thus, even if Defendants did not breach the express terms of the E-Z Agreement (they did), Defendants may still be liable for failing to meet their implied obligation to provide timely notice to obtain additional fees from Plaintiffs and other Class members. ¶¶ 230-233. Those allegations state a claim for breach of the implied covenant standing alone or as an alternative to Plaintiffs' breach of contract claim, and the Court should not dismiss either claim.

### J.    Plaintiff State a Claim for Tortious Interference Against Conduent

Plaintiffs state a claim for tortious interference claim against Conduent. A claim for tortious interference with contract requires: "(1) the existence of a valid contract; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach of that contract; and (4) damages." *Meghan Beard, Inc. v. Fadina*, 82 A.D.3d 591, 592 (N.Y. App. Div. 2011). "Improper intentional interference is generally shown by a tortfeasor 'inducing or otherwise causing a third person not to perform' his contractual obligations to the plaintiff." *Shepard Ind., Inc. v. 125 East 57th Street, LLC*, 1999 WL 728641, at *5 (S.D.N.Y. Sept. 17, 1999).

In this case, TBTA, NYSTA, and the Port Authority delegated to Conduent the responsibility to carry out the terms of the E-Z Pass Agreement and the Tolls By Mail Program. ¶¶ 49-55 ("At all relevant times, Defendant Conduent mailed the bills and notices to Plaintiffs and Class members for the [E-Z] Pass and Tolls By Mail Fees"). By failing to timely notify Plaintiffs and the Class of purported violations in order to create additional fees and penalties,

and by assessing fees where no violation had occurred, Conduent caused the TBTA, NYSTA, and the Port Authority to breach their contractual obligations. ¶¶ 49-55, 245. Defendants themselves have recognized the inadequacy of Conduent's notice procedures, including the Executive Director of the NYSTA, who expressed concern "over the lag time from [drivers'] travel over the bridge to when they receive a bill." ¶ 158.[21] Plaintiffs thus allege the elements of a tortious interference claim against Conduent, and the claim should not be dismissed.

### K.      Plaintiffs State a Claim for Unjust Enrichment

Plaintiffs state a claim for unjust enrichment against Defendants. The elements of an unjust enrichment claim are: (1) a defendant was enriched; (2) at a plaintiff's expense; (3) under such circumstances that equity and good conscience demand defendant not retain what is sought to be recovered. *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 962 F. Supp. 2d 606, 629 (S.D.N.Y. 2013) (Buchwald, J.) (citation omitted).[22]

Here, Plaintiffs allege Defendants knowingly assessed excessive fees and charges without proper notice, and in some instances, where there drivers had functioning, funded E-Z Passes. ¶¶ 137-162. Plaintiffs have paid wrongfully assessed fees, and Defendants knowingly or recklessly received and retained wrongful benefits and funds from Plaintiffs and members of the class. ¶ 258. Under such circumstances, equity demands Defendants return Plaintiffs funds, and a claim for unjust enrichment is alleged.

---

[21] Conduent opposes Plaintiffs' tortious interference claim by arguing that there was no underlying breach of contract. Conduent Br. at 25. But despite what Conduent argues, a breach of contract occurred when Defendants failed to comply with their express or implied contractual obligation to provide timely notices of violation to Defendants. ¶¶ 136.

[22] Although the Port Authority briefly addresses a claim for money had-and-received, Plaintiffs have not included a claim a claim for money had-and-received in the Complaint. *See* ¶¶ 255-67.

Contrary to Defendants' arguments, it is premature to dismiss the unjust enrichment claim based on the existence of a contract or as duplicative of other claims. Plaintiffs' claims may not be covered by express terms of the contract, and under Fed. R. Civ. P. 8(d), Plaintiffs are allowed to plead claims in the alternative. *See St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183-84 (E.D.N.Y. 2010) ("At the pleadings stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims.").

Defendants support their argument that Plaintiffs' unjust enrichment claim is duplicative with case law that follows from *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177 (N.Y. 2012). In *Corsello*, the New York Court of Appeals found that a claim for unjust enrichment was duplicative of a claim for inverse condemnation because, to the extent the plaintiffs' claim for inverse condemnation failed or succeeded, the plaintiffs' claim for unjust enrichment failed or succeeded. *Id.* at 1185. In other words, the plaintiffs' claim for unjust enrichment was redundant as it had no possibility of succeeding if Plaintiffs' other claims failed.

However, unlike the unjust enrichment claim in *Corsello*, Plaintiffs' claim for unjust enrichment in this case does not hinge on the outcome of their other claims, *i.e.*, the claim for unjust enrichment can survive if any defects warrant dismissing their other claims. Unjust enrichment encompasses a broad array of inequitable conduct, not only governmental conduct which violates the excessive fines or due process clause. Due to these key differences, Plaintiffs' unjust enrichment claim is not duplicative of their other claims, and the Court should reject an overly-broad reading of *Corsello*.

Finally, Plaintiffs claims are not barred by the voluntary payment doctrine. It is well-established that payments are not voluntary when made due to fraud or mistake of law or fact, or while under duress, including "where payments were necessary 'in order to preserve [the

plaintiff's property or protect his business interests.'" *U.S. Bank Nat Ass'n v. PHL Variable Ins. Co*., 2014 WL 2199428, at 10-11. Here, in addition to the possibility of further fines and penalties, Plaintiffs were threatened with registration suspension, seizure of tax refunds, and other severe consequences if they did not immediately pay the excessive and improper fees. ¶ 5. Defendants' debt collectors also represented that they were authorized to collect—and Plaintiffs could not dispute—the impermissible fees. ¶¶ 204. Based on those allegations, Plaintiffs did not voluntarily pay the improper fees at issue, but did so in order to protect vital property interests. Under such circumstances, the voluntary payment doctrine does not apply.

### L.   The Port Authority's Motion to Dismiss Plaintiffs' Prayer for Punitive Damages Is Procedurally Improper

The Port Authority's mistakenly treats Plaintiffs' prayer for relief in the form of punitive damages as a separate claim for relief and argues for dismissal under Rule 12(b)(6). Port Authority Br. 22-23. But a request for punitive damages is not a claim for relief, and courts generally find motions to dismiss or strike requests for punitive damages improper at the pleadings stage. *Denis v. Home Depot, U.S.A., Inc.*, No. 10-CV-3227 (ADS)(SIL), 2014 WL 66332486, at *6 (E.D.N.Y. Nov. 21, 2014) (collecting cases). And while courts have denied requests for punitive damages against the Port Authority in other cases, the issue has never been conclusively settled by the Second Circuit, and at least one court has found that a plaintiff could pursue punitive damages against the Port Authority at trial. *Kondakjian v. Port Authority of New York and New Jersey*, No. 94 Civ 8013(AGS)(DFE), 1996 WL 280799, at *1 (S.D.N.Y. May 24, 1996) (citing *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30); *see also Urbina v. Port Authority of New York*, 15-cv-8647 (PKC), 2017 WL 3600424, at *6 (S.D.N.Y. Aug. 18, 2017) ("Though the Second Circuit has never addressed the issue of whether punitive damages are permitted against the Port Authority . . . .").

**M.** **The Court May Exercise Jurisdiction Over Plaintiffs' State Law Claims Under the Class Action Fairness Act if Plaintiffs' Constitutional Claims Are Dismissed**

NYSTA contends that Plaintiffs' state law claims should be dismissed if Plaintiffs' federal claims are dismissed. NYSTA Br. at 22. However, if the Court dismisses Plaintiffs' constitutional claims, the Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). ¶ 16. Generally, CAFA jurisdiction exists where the amount in controversy exceeds $5,000,000 (exclusive of interest and costs), there are 100 or more potential class members, and there is minimal diversity. 28 U.S.C. § 1332(d)(2)(5). To determine whether minimal diversity exists under CAFA, the citizenship of all class members, including proposed class members, is considered. *Henry v. Warner Music Group Corp.*, No. 13-cv-5031, 2014 WL 1224575, at *1 n.1 (S.D.N.Y. Mar. 24, 2014) ("Defendants are incorporated under the laws of Delaware and their principal place of business is in New York. Minimal diversity nonetheless exists because the putative class includes citizens from states other than New York.") (internal citations omitted).

In this case, Defendants imposed tens of millions of dollars of untimely and improper fees on thousands of motorists using the cashless tolling system. ¶¶ 6, 12, 19. Moreover, Plaintiffs allege (and Defendants do not contest) minimal diversity: Plaintiff Gardner is citizen of Pennsylvania, and Conduent is a citizen of New York and New Jersey for diversity purposes. ¶¶ 19, 49. The Court may also reasonably infer that many other out of state drivers are putative class members due to the broad scope of the Defendants' cashless tolling system. ¶¶ 12, 15, 170, 173. As a result, Plaintiffs properly allege all elements of CAFA, and CAFA provides an alternative basis for the Court to exercise jurisdiction over Plaintiffs' claims. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) ("[W]e recognize a rebuttable

presumption that the face of the complaint is a good faith representation of the amount in controversy.").[23]

## N.    Collective References to "Defendants" Provide Sufficient Notice

Citing only *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), NYSTA makes a one-paragraph argument that Plaintiffs engaged in impermissible group pleading. Br. at 21. Rule 8, however, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. And "nothing in Rule 8 prohibits collectively referring to multiple defendants were the complaint alerts defendants that identical claims are asserted against each." *Vantone Group Limited Liability Co. v. Yangpu NGT Industrial Co., LTD. et al.*, No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015)   (permitting   allegations   against   24 defendants collectively). NYSTA seems to concede that not *all* of Plaintiffs' allegations are group-pled. It picks out Plaintiffs' allegations concerning faulty gantries that fail to read E-Z Pass units. Plaintiffs have specifically pleaded that they "do not (and cannot) know when Defendants' equipment fails to read their E-Z Pass" and that "they were treated similarly because all the agencies [the Authority Defendants] delegated the operation of E-Z Pass to Conduent." ¶¶ 139, 223.

Because "[i]t is very clear that where the [Complaint] includes an allegation against '[] Defendants,' that allegation is made identically against each of the [] Defendants." *Canon*

---

[23] The Court also retains discretion to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. *Arbuagh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("When a court grants a motion to dismiss for failure to state a federal claim, as the Court has here, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."). 28 U.S.C. §367 allows a court to decline to exercise supplemental jurisdiction over state-law claims if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. 1367. Here, the statutory factors favor retaining jurisdiction.

*U.S.A., Inc. v. F & E Trading LLC*, No. 215CV6015DRHAYS, 2017 WL 4357339, at *8 (E.D.N.Y. Sept. 29, 2017); *see also Aghaeepour v. N. Leasing Sys. Sys., Inc.*, No. 14-CV-5449, 2015 WL 7758894, at *4 (S.D.N.Y. Dec. 1, 2015) (allowing group pleading because "the Complaint in the instant case contains numerous allegations pleaded with specificity as to particular defendants").

## III. The Court Should Deny the Port Authority's Motion to Strike Plaintiffs' Class Allegations

### A. Rule 12(f) Standard

Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[c]ourts rarely grant motions to strike pursuant to Federal Rule of Civil Procedure 12(f)." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y.2015); *Emilio v. Spring Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014). That is particularly true in the class action context because a Rule 12(f) motion "requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore*, 94 F. Supp. 3d at 447 (internal quotation marks omitted); *see also In re: Libor-Based Financial Instruments Antitrust Litig.*, 11 MDL 2262 (NRB), 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (To succeed on a motion to strike class allegations, the defendant must "demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery.") (citation omitted, modifications in original); *Mazzola v. Roomster Corp.,* 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) ("[D]etermination of whether

23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination.").

### B.   The Court Should Not Strike Plaintiffs' Class Allegations

The Port Authority makes the precise type of premature and undeveloped arguments concerning potential class certification that courts routinely reject when deciding whether to strike class allegations under Rule 12(f). The Port Authority ignores the vast majority of the Complaint and wrongly asserts that Plaintiffs fail to allege commonality, that their claims are typical of the claims of the Class, and that they are adequate class representatives. Port Authority Br. at 19-20.[24] However, each of Plaintiffs' claims involves a common set of allegations arising from improper and excessive fees that they were assessed following Defendants' failure to provide timely notice of potential violations. ¶¶ 67-133. Furthermore, the Complaint amply details that Defendants' actions have had a widespread and similar effect on drivers throughout New York State and includes numerous allegations that Conduent fails to provide notice within the time frame called for by internal performance standards and that Defendants have recognized that the elimination of toll gates and driver feedback signage, along with the lag time between travel and billing, has negatively impacted drivers. ¶¶ 151-62. At this early stage of the litigation, Plaintiffs allege that their claims are suitable for class treatment, and the Court should not conclude that class certification would be impossible from the face of the Complaint.

---

[24] The Port Authority also argues that Plaintiffs fail to allege the "implied requirement that the class be ascertainable." Port Authority Br. at 20. The Port Authority ignores that the Second Circuit recently clarified the ascertainability doctrine to require only that "a class be defined using objective criteria that establish a membership within definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264-65 (2d Cir. 2017), *petition for cert. filed*, *Petrobras v. Universities Superannuation Scheme Limited*, No. 17-644 (filed on Nov. 1, 2017). Here, Plaintiffs' allegations meet that standard at the pleadings stage, and to the extent the proposed class is too broad, Plaintiffs can narrow their definition at the class certification stage of the case following appropriate discovery. *New Jersey Carpenters Health Fund*, 288 F.R.D. 290, 295-96 (S.D.N.Y. 2013).

Instead, given well-established standards, the Court should allow the proceedings to unfold in an ordinary fashion and address the propriety of class certification only after the parties have had discovery and the opportunity to fully brief the issue. *See* Fed. R. Civ. P. 23(c)(1)(A) (2003 Committee Notes) (emphasizing the importance of a measured and deliberate decision on the certification of a proposed class). The Port Authority cannot meet its heavy burden on a motion to strike by simply suggesting that Plaintiffs plead "conclusory allegations," Port Authority Br. at 19, particularly where there are a number of complex factual and legal issues for the parties to unravel, including Defendants' internal practices and procedures for providing notice to E-Z Pass and Tolls By Mail users, and whether Conduent adhered to performance standards or properly executed its responsibility to administer the terms of the E-Z Pass Agreement and the Tolls By Mail Program. *See* ¶ 245.[25]

Accordingly, the Court should deny the Port Authority's motion to strike.

---

[25] The Port Authority's cited authority does not call for Plaintiffs' class allegations to be struck. For instance, in *Goldberg. v. Merrilly Lynch, Pierce, Fenner & Smith, Inc.*, No. 97 CIV. 8779(RPP), 1998 WL 321446 (S.D.N.Y. June 18, 1998), the plaintiff amended his complaint to include tenuous class claims after the Court had dismissed some of the claims in his original complaint and ordered that the remaining ones be arbitrated. *Id.* at *1. In finding that the plaintiff failed to meet the pleading requirements of Rule 23, the Court stated that it was "apparent that the class action complaint . . . was being used to increase plaintiff's bargaining position" at arbitration. *Id.* at *9. Likewise, in *Davidson v. Yeshiva Univ.*, 555 F. Supp. 75 (S.D.N.Y. 1982), the plaintiff, who was acting *pro se*, did not "even not move for certification of his lawsuit as a class action," but the Court nevertheless "read his allegations to include a motion for class certification." The Court denied the implied motion because, unlike the plaintiffs in this case, the plaintiff there failed to plead that any other person with a similar claim existed, among other infirmities. *Id.* at 77-78. Finally, in *O'Connell v. Teachers Coll.*, 63 F.R.D. 638, 638 (S.D.N.Y. 1974), the plaintiff actually moved for class certification, whereas in this case, the Plaintiffs have only filed the Complaint including the class allegations.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should deny Defendants' Rule 12 motions.

Dated: October 22, 2018

Respectfully submitted,

By:____/s/ Stephen J. Fearon, Jr._____
        Stephen J. Fearon, Jr
**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
Raymond N. Barto
Paul v. Sweeny
32 East 57th Street
12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
        raymond@sfclasslaw.com
        paul@sfclasslaw.com

**LAW OFFICE OF JOSEPH SANTOLI**
Joseph Santoli
340 Devon Court
Ridgewood, New Jersey 07450
Telephone:  (201) 926-9200
Facsimile:  (201) 444-0981
Email: josephsantoli@aol.com

**Attorney for Plaintiffs and the Proposed Class**

66

<u>**CERTIFICATE OF SERVICE**</u>

I, Stephen J. Fearon, Jr., hereby certify that on October 22, 2018, I caused the foregoing

Consolidated Opposition to Defendants' Motions to Dismiss to be served via the CM/ECF

system upon all counsel of record.

/s/ Stephen J. Fearon, Jr.
Stephen J. Fearon, Jr
**SQUITIERI & FEARON, LLP**
32 East 57th Street
12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com

Joseph Santoli
LAW OFFICE OF JOSEPH SANTOLI
340 Devon Court
Ridgewood, New Jersey 07450
Telephone:  (201) 926-9200
Facsimile:   (201) 444-0981
Email: josephsantoli@aol.com

**Attorneys for Plaintiff and the Proposed Class**

67