UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MIRIAN ROJAS, BRIAN OWENS and
KORISZAN REESE,

                            Plaintiffs,                        18-cv-1433 (PKC)

        -against-                            ORDER ON SEALING


TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY and THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY,

                            Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

           Plaintiffs and defendant Triborough Bridge and Tunnel Authority ("TBTA") have

filed unopposed motions to seal or redact portions of their filings made in connection with

defendants' motions for summary judgment.  (Docket # 183, 197, 213.)  As will be explained, all

of the materials that the parties propose to redact or seal are judicial documents with a strong

presumption of public access, and, with the exception of private information like personal

account numbers, they have not identified a higher, countervailing interest that weighs against

public access.  The sealing motions will therefore be granted in part and denied in part.

           A three-step analysis governs whether a filing may be submitted under seal or

with redactions.  First, a court determines whether the filing is a "judicial document"; second, it

determines the weight of the presumption of access afforded to the document; and third, the court

identifies and weighs factors "that legitimately counsel" against public access.  Mirlis v. Greer,

952 F.3d 51, 59 (2d Cir. 2020).  Sealing or redaction is warranted if the privacy interests of the

party resisting disclosure outweigh the presumption of access.  Id.

Judicial documents are materials that are "'relevant to the performance of the judicial function and useful in the judicial process . . . .'" Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")).  "[D]ocuments submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." Id. at 121.  Summary judgment filings should not remain under seal "absent the most compelling reason" or "absent exceptional circumstances" because the act of formal adjudication should be subject to public scrutiny.  Id. (quotation marks omitted).

The right of public access to a judicial document arises both from the First Amendment and common law.  Lugosch, 435 F.3d at 119-20.  In determining the First Amendment right to access, courts consider whether the documents have historically been open to the press and public and whether public access plays a significant and positive role in the judicial process.  Bernstein, 814 F.3d at 141.  The common law presumption of access is based on the general right of the public to inspect and copy judicial records and other documents, and predates the U.S. Constitution.  Id. at 142.

"Finding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 167 n.15 (2d Cir. 2013).  The right to access is not absolute, however, and the weight afforded to the presumption may vary, depending on the document's role in the judicial process.  Lugosch, 435 F.3d at 121.  When documents directly affect an adjudication or are used to determine the litigants' substantive legal rights, "the presumption of access is at its zenith" and can only be

overcome by "extraordinary circumstances." Bernstein, 814 F.3d at 142. "It is not, and should

not be, an easy matter to deny the public access to documents that are utilized in judicial

proceedings and form part of the basis of judicial decision-making, since the public is ordinarily

entitled to review such material in order to understand and evaluate the actions of the courts."

Newsday, 730 F.3d at 167 n.15.  When there is a strong presumption of access, as is the case

here, "'continued sealing of the documents may be justified only with specific, on-the-record

findings that sealing is necessary to preserve higher values and only if the sealing order is

narrowly tailored to achieve that aim.'" Brown v. Maxwell, 929 F.3d 41, 47 (2d Cir. 2019)

(quoting Lugosch, 435 F.3d at 124).

       Redaction may be appropriate to protect confidential information.  Amodeo II, 71

F.3d at 1047-48.  Courts must consider the "nature and degree of the injury" if information is

publicly disclosed.  Mirlis, 952 F.3d at 61.  Information should not be redacted merely because it

might harm a party's public reputation.  Sony Ericsson Mobile Commc'ns AB v. Delta Elecs.

Pub. Co. (Thailand), 2009 WL 959639, at *2 (S.D.N.Y. Apr. 8, 2009) (Jones, J.).  The privacy

interests of innocent third parties also "should weigh heavily in a court's balancing equation."

S.E.C. v. TheStreet.Com, 273 F.3d 222, 232 (2d Cir. 2001) (quotation marks omitted).

       The first and second steps of the sealing motions fall within the holding of

Lugosch: documents submitted in connection with a summary judgment motion are judicial

documents that are afforded a high presumption of public access.  Lugosch, 435 F.3d at 121.  In

this case, the presumption of public access is also strong because plaintiffs have challenged the

administration and calculation of certain fees demanded of public authorities under the Excessive

Fines Clause of the Eighth Amendment.  Further, many of the materials that the parties seek to

seal in full or redact played a direct role in the adjudication of the motion and are discussed in the Opinion and Order adjudicating plaintiffs' claims.

As to the third step, the TBTA has not demonstrated a higher countervailing interest in the exhibits filed under seal at Exhibits 4 and 21 of the Bressler Declaration or Exhibit E to the Morales Declaration.  Exhibit 4 to the Bressler Declaration is the "Fee Matrix" used within the TBTA to assess whether and to what extent a toll violator's fines may be reduced. Exhibit 21 to the Bressler Declaration is a spreadsheet that lists information about plaintiff Owens's tolls, violations and fines, and the extent to which certain fines were dismissed or paid. These documents were central to the parties' dispute about the range of fines imposed by the TBTA and whether the TBTA imposed the maximum available fine on Owens.  They played an important role in the adjudication of the summary judgment motion and are useful to the public's monitoring and understanding the judicial process.  The TBTA urges that these documents should remain sealed because public disclosure "would undermine the purpose of the violation fees" and cause "interference with law enforcement activity . . . ."  (TBTA Sealing Mem. at 5.) But the fact that the TBTA exercised its discretion to vary from a maximum permissible fine was apparent throughout the motion papers, and an understanding of the fines paid by Owens was central to the Court's review of his claim under the Eighth Amendment.  The vague and abstract harms identified by the TBTA fall far short of the "extraordinary circumstances" warranting redaction.  Bernstein, 814 F.3d at 142; see also Lugosch, 435 F.3d at 120 ("'Broad and general findings . . . are not sufficient to justify closure . . .'") (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

For the same reason, the motion will be denied as to redacted portions of Exhibit E to the Morales Declaration.  Those redactions cover portions of the deposition transcript of

Anne Marie Bressler where she discussed the Fee Matrix and the Owens violation spreadsheet. Some of the redactions are innocuous on their face, such as testimony from Bressler that "we don't waive tolls.  Tolls must be collected."  (Bressler Dep. at 133.)  Other portions of the transcript relate to the TBTA's considerations for reducing fines and the administration of fine collection.  (Bressler Dep. 140, 151-58, 162, 164, 166, 172-73, 176-77, 184-89, 192, 211-12, 220-22, 235-36, 239-40, 263-72, 303-52.)  The TBTA has not articulated an interest that outweighs the strong presumption of public access to such information, and its motion will be denied as to Exhibit E of the Morales Declaration.

The TBTA describes Exhibit 3 to the Bressler Declaration as "budgeting calculations used to establish the cost of operating its cashless tolling program, which includes the costs associated with toll compliance and the revenue TBTA must generate from tolls to ensure proper maintenance and the safe and effective operations of its bridges and tunnels." (TBTA Sealing Mem. at 6.)  It asserts that the "governmental interest in ensuring the integrity of operations at TBTA's facilities would seriously be undermined by the disclosure of its cashless tolling budget analysis and financial projections."  (Id.)  The broad and general harms described by the TBTA do not defeat the presumption of access.  Lugosch, 435 F.3d at 120.  The TBTA does not explain how the integrity of its operations could be undermined by disclosure, and the TBTA's summary judgment motion placed squarely at issue the costs of toll compliance. Among other things, the document purports to calculate costs per violation notice in various years and breaks down different categories of toll violations each year.  (Bressler Dec. Ex. 3 at 9396.)  The imprecise harms described by the TBTA do not demonstrate "extraordinary circumstances" that warrant sealing.  Bernstein, 814 F.3d at 142.

The TBTA seeks to seal Exhibit 2 to the Bressler Declaration, a document of approximately 350 pages that is titled "TBTA System-Wide Open Road Tolling Environmental Assessment Form and Supplemental Studies" (the "Study").  In describing why Exhibit 2 ought to remain under seal, the TBTA states that it is charged with implementing congestion pricing policies in Manhattan's central business district.  (TBTA Sealing Mem. at 6-7.)  It asserts that congestion pricing and cashless tolling implicate similar environment concerns, and it claims that disclosure of the Study could interfere with or delay implementation of congestion pricing.  (Id. at 7.)  The TBTA does not meaningfully explain how the Study's disclosure presents a "grave risk" to the agency or how disclosure might affect the initiatives related to congestion pricing.  In its summary judgment motion, the TBTA pointed to environmental goals as context for the defendants' adoption of cashless-tolling policies.  The Court did not rely on contents of the Study in the motion's adjudication.  However, in weighing a sealing application, "the proper inquiry is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon." Brown, 929 F.3d at 50; see also id. at 48 ("we have expressly rejected the proposition that 'different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving [a] motion [for summary judgment].'") (quoting Lugosch, 435 F.3d at 123).  Accordingly, the document is afforded a high presumption of public access, and the TBTA has failed to identify a countervailing harm in its disclosure.  The TBTA's motion will therefore be denied as to Exhibit 2 to the Bressler Declaration.

The TBTA's motion is denied as to the redactions in its reply memorandum and its response to plaintiffs' statement filed under Local Civil Rule 56.1.  (Docket # 192, 209.)  The proposed redactions relate to the TBTA's "Fee Matrix" and the claimed expenses for collecting

unpaid tolls.  As discussed, these issues were central to the Court's adjudication of the TBTA's

motion and the TBTA has not identified a higher interest that weighs against public access to the

redacted portions of these filings.

   The TBTA's motion will be granted as to the redaction of confidential personal

information relating to the plaintiff Richard Owens and non-parties Frank Cerquin and Washoshe

Parham.   (See Bressler Dec. Ex. 5; Ex. 23 at 835-49, 850-51, 31; Docket # 210-1.)  The

redactions include individuals' E-ZPass account numbers, security questions, and even their

account PIN numbers.  The individuals' privacy interest in such information is high, and this

information does not assist the public in monitoring or understanding the judicial process.  The

redactions will therefore be maintained as to the account information of Owens, Cerquin and

Parham.  Similarly, to the extent that Exhibit 4 to the Bressler Declaration contains any

unredacted personal information about Owens, such as his phone number (see Ex. 4 at 9440),

that information may be redacted.

   Separately, plaintiffs filed a sealing motion as to portions of their opposition

papers.  (Docket # 197.)  The Court provisionally granted the motion.  (Docket # 205.)  Plaintiffs

seek to maintain redactions to the publicly filed versions of their opposition memo, their

response to the TBTA's Local Civil Rule 56.1 Statement and their own Rule 56.1 Statement.

The proposed redactions are made to evidence and argument relating to the TBTA's Fee Matrix

and the its expenses in collecting unpaid tolls.  For the reasons already discussed, the materials

are afforded a high presumption of public access.  In support of maintaining the redactions,

plaintiffs do not attempt to identify any higher interest that outweighs the presumption of access,

and instead point to the parties' stipulated protective order designating certain documents

"Confidential" or "Highly Confidential."  (Sweeny Dec. ¶ 8.)  However, the showing required in

connection with a sealing motion is significantly higher than the burden for obtaining a protective order in civil discovery.  See, e.g., Tropical Sails Corp. v. Yext, Inc., 2016 WL 1451548 (S.D.N.Y. Apr. 12, 2016) ("The proponent of the protective order bears the burden of demonstrating good cause for closure.  This burden 'is significantly enhanced with respect to judicial documents,' because a common law presumption of, and a qualified First Amendment right to, access attaches to judicial documents.") (Keenan, J.) (quoting Standard Inv. Chartered, Inc. v. FINRA, 347 Fed. App'x 615, 615 (2d Cir. 2009) (summary order)).  Plaintiffs otherwise rely on the arguments raised by the TBTA.  (Sweeny Dec. ¶ 11.)  For the reasons explained, the TBTA has not identified an interest in maintaining under seal the contents of the "Fee Matrix" or its expenses in collecting unpaid tolls.  Plaintiffs' sealing motion is therefore denied in its entirety.

Lastly, the filings of the Port Authority of New York and New Jersey ("Port Authority") contain certain redactions, but the Port Authority has not filed any sealing motion. Within fourteen days, the Port Authority shall show cause in writing why its summary judgment filings ought not be unsealed in their entirety.

CONCLUSION.

The sealing motions of plaintiffs and the TBTA are DENIED, with the exception of redactions to the personal information of plaintiff Owens and two non-parties.  (Bressler Dec. Ex. 5; Ex. 23 at 835-49, 850-51, 31; Docket # 210-1.)  Within seven days, plaintiffs and the TBTA shall publicly re-file all other sealed submissions in unredacted and unsealed form.

Within fourteen days, the Port Authority shall show cause in writing why its summary judgment filings ought not be unsealed in their entirety.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
March 14, 2022